**United States District Court**
**Western District of Texas**
**Austin Division**

| | |
|---|---|
| Leila Green Little, *et al.*,<br>    Plaintiffs,<br>v.<br>Llano County, *et al.*,<br>    Defendants,<br>and<br>The State of Texas,<br>    Intervenor-Defendant. | Case No. 1:22-cv-424-RP |

---

**Joint Motion to Dismiss**

---

A person must be immediately threatened with harm to bring a claim for injunctive relief, and he must have an actual stake in the lawsuit they bring. Further, no process is due a person unless some actual or threatened government action invades (or would imminently invade) a property right or liberty interest. The Plaintiffs' claims fail on each of these measures: They lack standing to sue, many of their claims are moot, and they have no liberty or property interest in the purported wrong that they claim to be trying to right. Furthermore, the purported violation of their free-speech rights is not actionable curtailment, but speech by the government itself that is not subject to the fetters they seek to impose.

The Court lacks subject-matter jurisdiction over the Plaintiffs' claims, which at any rate do not state a claim upon which relief can be granted. For both those reasons the Court should dismiss the complaint with prejudice.

## I. Background

As alleged in the Plaintiffs' Complaint, Dkt. No. 1, which the Court must at this point take as true, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), the facts are these:

The Defendants—Llano County, the members of its commissioners court and its Library Advisory Board, and the director of the county's library system—"initiated a coordinated censorship campaign" in the summer of 2021 to remove books from the Llano County libraries containing ideas with which the Defendants disagree. Complaint, Dkt. No. 1, ¶ 37–38. That August, picture books that depicted nudity and revolved around bodily functions were removed from the shelves (and placed in an office filing cabinet) in response to complaints from the community that the books were inappropriate. *Id.* ¶¶ 43, 51. The books were. *Id.* A couple of months later, some books in the children's sections of the libraries were relocated to the adult sections due to complaints that they were inappropriate. *Id.* ¶ 53.

In November, Defendant Bonnie Wallace sent an email to Defendant Ron Cunningham, the Llano County Judge, with a spreadsheet of every book on a list compiled by State Representative Matt Krause's that was also currently held by the Llano County Library System. *Id.* ¶¶ 58, 62. Cunningham forwarded that email to Defendant Amber Milum, the head of the county's library system,  and directed her to remove "all books that depict any type of sexual activity or questionable nudity." *Id.* ¶ 63. Cunningham also ordered an indefinite suspension of new book purchases. *Id.* ¶ 64. In response, Milum removed several books from the libraries' shelves. *Id.* ¶ 67. Around this time, the County terminated access to OverDrive, a collection of over 17,000 digital books and audiobooks, because two of the identified books were available there and there was no mechanism to remove or restrict access to individual books on the platform. *Id.* ¶ 78–79.

The library system was closed, by a vote of the commissioners court, from December 20–23 to review of the "appropriateness" of the books in the teen and children's sections. *Id.* ¶ 75. Defendant Rochelle Wells stated that the review was devoted to removing books that contained pornographic content and that Representative Krause's list would help with the review. *Id.* ¶ 76.

The former library board was dissolved by a vote of the commissioners court in January 2021 and replaced by the current Library Advisory Board. The commissioners court appointed Defendants Gay Baskin, Rhonda Schneider, Bonnie Wallace, and Rochelle Wells, whom the Plaintiffs characterize as "political appointees," to the new Advisory Board. *Id.* ¶¶ 98–99, 107. This was done to task new members with amending library policies, such as those on book collection and removal, and present those updated policies to the commissioner's court for approval. *Id.* ¶ 106. Like the former library board, the Advisory Board held its meetings in public, but it soon chose to hold them in private. *Id.* ¶ 113–20.

The Plaintiffs have now sued, claiming that the Defendants violated rights protected by the First Amendment and the Fourteenth Amendment's Due Process Clause. They allege that the Defendants:

- Engaged in viewpoint discrimination by removing books containing ideas with which they disagree, *id.* ¶¶ 139–48;

- Violated due-process rights by removing books and terminating access to OverDrive without the Plaintiffs' having an opportunity to be heard, *id.* ¶¶ 149–52; and

- Violated their due-process rights by holding Advisory Board meetings in private, *id.* ¶¶ 153–56.

## II. The Court lacks subject jurisdiction and should dismiss under Rule 12(b)(1).

A court must dismiss a suit for lack of subject-matter jurisdiction when, as here, it lacks the statutory or constitutional authority to adjudicate the case. Fed. R. Civ. P. 12(b)(1). *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A lack of standing is one ground for such a dismissal. *See, e.g.*, *Block v. Texas Bd. of Law Examrs.*, 952 F.3d 613, 616–17 (5th Cir. 2020); *Moore v. Bryant*, 853 F.3d 245, 248–49 (5th Cir. 2017). Plaintiffs, "as the parties asserting federal subject-matter

jurisdiction, bear the burden of proving that its requirements are met." *See Willoughby v. U.S. ex rel. U.S. Dept. of the Army*, 730 F.3d 476, 479 (5th Cir. 2013).

## A. The Plaintiffs' complaints are about past harm and therefore do not grant standing.

Requests for equitable relief implicate the standing test for "imminent" (as opposed to "actual") injuries. Under that test, plaintiffs "must show a continuing or threatened future injury to themselves." *Stringer v. Whitley*, 942 F.3d 715, 721 (5th Cir. 2019). The threat must be "certainly impending;" "allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Intl. USA*, 568 U.S. 398, 409 (2013) (cleaned up). The threat, that is, must be "real and immediate[.]" *Deutsch v. Annis Enters., Inc.*, 882 F.3d 169, 173 (5th Cir. 2018) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). An allegation about "past exposure to illegal conduct, by itself, does not evince a present case or controversy and thus cannot establish standing." *Machete Prodns., L.L.C. v. Page*, 809 F.3d 281, 288 (5th Cir. 2015) (citing *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)).

Similarly, when plaintiffs complain that a defendant's action will prevent them from acting in the future, they do not have standing to sue unless they allege "concrete and imminent plans[.]" *See, e.g.*, *Machete Prodns.* 809 F.3d at 288. "'[S]ome day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992).

The Plaintiffs fail both of these tests, alleging neither an immediate threat nor a definite intention to act. No Plaintiff has alleged a specific plan to access books to which they no longer have access through the County's library system. Nor has a Plaintiff alleged a specific intention to attend future Advisory Board meetings. There are allegations that some Plaintiffs were denied access to a few books and

OverDrive in the past, *see* Compl. ¶¶ 47, 136–37, but "past exposure" is not enough. *See, e.g.*, *Machete Prodns.*, 809 F.3d at 288. Without concrete and imminent plans to check out a no-longer-shelved book or attend an Advisory Board meeting, the Plaintiffs do not satisfy Article III's standing requirements. They have alleged no such plans; they therefore lack standing, and their complaint must be dismissed.

**B.   Plaintiffs' claims related to OverDrive are moot.**

The Plaintiffs' OverDrive-related claims are moot because they "are no longer 'live;'" that is, the Plaintiffs "lack a legally cognizable interest in the outcome." *Yarls v. Bunton*, 905 F.3d 905, 909 (5th Cir. 2018). As the Plaintiffs admit, the County cancelled its contract with OverDrive before this lawsuit was even filed; there is no access to grant even if this case were successful. Because the Plaintiffs no longer have a legally cognizable interest in the outcome of their OverDrive-related claim, there is not a case or controversy within the meaning of Article III, and the Court lacks jurisdiction. *Id.*

**1.   The closure of the forum moots the claims.**

The First Amendment applies to government-created public forums, even when the government "was not required to create the forum in the first place." *Perry Educ. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 45 (1983). But the Constitution does not require governments to "indefinitely retain" those forums. *Id.* Indeed, a "government has an inherent right to control its property, which includes the right to close a previously open forum," *DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.*, 196 F.3d 958, 970 (9th Cir. 1999), and it "may close the fora whenever it wants." *Currier v. Potter*, 379 F.3d 716, 728 (9th Cir. 2004). *See also Rhames v. City of Biddeford*, 204 F. Supp. 2d 45, 50–51 (D. Me. 2002) ("[T]he First Amendment does not prevent a city from deciding not to open a public access

channel in the first place or to close it later."). Because there is no right to a public forum in the first place, fully closing a forum generally moots First Amendment claims relating to that forum. *Compare Rosebrock v. Beiter*, 788 F. Supp. 2d 1127, 1144 (C.D. Cal. 2011) ("Because Defendants have closed the forum, Plaintiff's request for equitable relief is moot."), *with Demmon v. Loudoun Cnty. Pub. Sch.*, 342 F. Supp. 2d 474, 479 (E.D. Va. 2004) (claims were not moot because the forum was not "sufficiently closed") (quotations omitted).

This conclusion properly aligns the incentives of governments: Jurisprudence would discourage creating new forums if each one is treated like a permanent fixture, subject to time-consuming lawsuits and costly judicial remedies. Allowing governments to fully close forums, on the other hand, reduces the anticipated cost of opening them; rather than avoid creating such a forum out of a fear of future liability, governments are encouraged to experiment with creating various forums appropriate to each of their communities. The result is not less speech, but more.

**2.    The Plaintiffs admit that mootness is not a litigation posture.**

Courts are skeptical of defendant-induced mootness because of the risk of posturing—attempting to escape litigation while intending to engage in the same conduct once the case is dismissed. *Bunton*, 905 F.3d at 910. But such skepticism is significantly lessened in the context of voluntary governmental cessation. *Id*. Public officials are presumed to act in "good faith because they are public servants, not self-interested private parties." *Id.* at 910–11. Thus, absent evidence to the contrary, courts "assume that formally announced changes to official governmental policy are not mere litigation posturing." *Id.* at 911 (quotations omitted).

There are no concerns about litigation posturing here. The Plaintiffs admit that: (1) the County started closing OverDrive months before this lawsuit was filed;

(2) the County closed this forum due to its lack of control over it, as opposed to its concern about future litigation; and (3) this closure was "permanent," as opposed to an on-off circuit that could be reconnected after a dismissal. Compl. ¶¶ 78–97. Having made these admissions, they understandably do not allege the contrary. This case is moot, and it should be dismissed.



The Plaintiffs lack of standing, and at least one of their claims is moot. The Court lacks subject-matter jurisdiction, and this suit should therefore be dismissed.

## C.  The Plaintiffs' claims regarding certain extraneous conduct are similarly jurisdictionally barred.

Though not pleaded as such in their claims for relief, various of the Plaintiffs' allegations could be read as stating a basis for such claims. Yet even if one were to read them that way, those claims would be barred because the Plaintiffs lack standing to bring them:

- The Plaintiffs allege that children's books and young adult books were moved "to the adult section of the library." Compl. ¶ _. This does not impair the Plaintiffs' right to access; they are all "*adult* residents of Llano County." *Id.* ¶ 1 (emphasis added). Having suffered no injury, they lack standing.

- The Plaintiffs complain about a "moratorium on all new book purchases." *Id.* ¶ 42. But they do not identify which books the County would have purchased, and they would have read, but for this moratorium. *Cf. Amnesty Intl.*, 568 U.S. at 413 ("[W]e have been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment."). They therefore lack standing.

- The Plaintiffs cite actions taken against a former librarian and former library board members, who are non-parties. Compl. ¶ 42. Yet they do not allege the basic elements of third-party standing needed to pursue claims on these individuals' behalf. *See, Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004) (detailing third-party standing requirements). They therefore lack standing.

**III. The complaint does not state a claim on which relief can be granted and
should be dismissed under Rule 12(b)(6).**

Even if the Plaintiffs' had standing, their complaint would not state a claim
upon which the Court court grant relief. Their First Amendment claim fails because
they are challenging government speech. Their due-process claims fail because
they allege no protected liberty or property interest that implicates due process
concerns.

Because the Plaintiffs do not state a claim upon which relief can be granted,
the Defendants and the State are entitled to dismissal. *See* Fed. R. Civ. P. 12(b)(6).
"To survive a motion to dismiss, a complaint must contain sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.
Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,
570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual
content that allows the court to draw the reasonable inference that the defendant
is liable for the misconduct alleged." *Id.* Although a complaint does not need
"detailed factual allegations" to survive a Rule 12(b)(6) motion, a plaintiff must
provide more than "labels and conclusions, and a formulaic recitation of the
elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

**A. The Plaintiffs do not state a First Amendment claim because they challenge
not an abridgement of speech, but government speech.**

The Plaintiffs do not state a claim under the First Amendment because they
are challenging government speech to which the First Amendment does not apply.

When government speaks, it is not barred by the Free Speech Clause from
determining the content of what it says. *Pleasant Grove City v. Summum*, 555 U.S.
460, 467–468 (2009). That freedom in part reflects the fact that the democratic
electoral process is the first and foremost check on government speech. *See Bd. of
Regents of Univ. of Wisc. Sys. v. Southworth*, 529 U.S. 217, 235 (2000). Thus,

government statements (and government actions and programs that take the form of speech) do not normally trigger the First Amendment rules designated to protect the marketplace of ideas, in which the government is as entitled to participate as the citizens that grant it sovereignty. *See Johanns v. Livestock Mktg. Assn.*, 544 U.S. 550, 559 (2005).

The Supreme Court has recognized that public libraries should be afforded "broad discretion" in making content and collection decisions. *See U.S. v. Am. Library Assn., Inc.*, 539 U.S. 194, 205 (2003). The forum principles traditionally used to examine First Amendment claims "are out of place" in that context, *see id.*, where the government speaks through its selection and exclusion of books. *See PETA, Inc. v. Gittens*, 414 F.3d 23, 28 (D.C. Cir. 2005). An analogous example is *Gittens*, in which a government commission called for "Party Animals" to display at an art exhibit and accepted submissions only of donkeys and elephants. *Id.* at 25–26. The D.C. Circuit explicitly analogized the commission's determination of which submissions to accept and display to a public library's decisions on which books appear on its shelves:

> As to the message any elephant or donkey conveyed, this was no more the government's speech than are the thoughts contained in the books of a city's library. It is of no moment that the library owns the books, just as the District of Columbia owned the donkeys and elephants. Those who check out a Tolstoy or Dickens novel would not suppose that they will be reading a government message. But in the case of a public library, as in the case of the Party Animals exhibit, there is still government speech. With respect to the public library, the government speaks through its selection of which books to put on the shelves and which books to exclude.

*Id.* at 28. After all, as the Supreme Court has held, a "public library does not … collect books in order to provide a public forum for the authors of books to speak;" it does so, rather, "to facilitate research, learning, and recreational pursuits by

furnishing materials of requisite and appropriate quality." *Am. Library Assn.*, 539 U.S. 206. To do, their "staffs necessarily consider content in making collection decisions and enjoy broad discretion in making them." *Id.* at 205–06. *See also Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.*, 473 U.S. 788, 805 (1985) ("The Government did not create the CFC for purposes of providing a forum for expressive activity.")

So too here, where the Plaintiffs challenge government speech: the County's decisions regarding which books should be on shelves of the County's libraries. The First Amendment allows government officials the discretion to decide what the government will say. *See Summum*, 555 U.S. at 467–68. The Free Speech Clause does not permit the Plaintiffs' to use their disagreement with that speech to strangle it. The Plaintiffs have not stated a legally cognizable claim, and it should be dismissed.

**B. The Plaintiffs do not state a due-process claim because they do not allege a protected property or liberty interest.**

The Plaintiffs' due-process claims, which they pursue under two theories, should also be dismissed. First, Plaintiffs claim their due process rights were violated when the County removed books and terminated access to OverDrive without giving them notice and an opportunity to be heard. Compl. ¶¶ 150–53. Subsumed within that is the claim that they have a due-process right to appeal the removal and termination decisions. *Id.* ¶ 154. Second, Plaintiffs claim that their due process rights were violated by Defendants' alleged failure to comply with the Texas Open Meetings Act. *Id.* ¶ 155–58. Their claims fail under either theory.

1.   **Plaintiffs allege no deprivation of a protected liberty or property interest.**

The Plaintiffs' claim that their due-process rights were violated by the removal of books and termination of OverDrive access fails because they have no protected property interest in public library books and audiobooks.

"The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.' Only after finding the deprivation of a protected interest do [courts] look to see if the State's procedures comport with due process." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (2000) (citations omitted). A property interest within the ambit of the Fourteenth Amendment must be "more than an abstract need or desire" or "a unilateral expectation;" rather, the plaintiff "must, instead, have a legitimate claim of entitlement to" the thing he claims is being denied to him. *Blackburn v. City of Marshall*, 42 F.3d 925, 936 (5th Cir. 1995) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). Property interests are not created by the Constitution; rather, they stem from independent sources such as state statutes, local ordinances, existing rules, contracts, or explicit understandings. *Id.* at 936–37. "[T]he sufficiency of the claim of entitlement must be decided by reference to state law." *Bishop v. Wood*, 426 U.S. 341, 344 (1976).

The Plaintiffs here assert no such deprivation. They cannot point to an authority giving them a legitimate claim of entitlement to access certain books on library shelves or through a county-contracted audiobook storage service. The Second Circuit, in *Bicknell v. Vergennes Union High School* in the context of school libraries, held as much. 638 F.2d 438, 442 (2d Cir. 1980). The *Bicknell* plaintiffs challenged a school board's decision to remove one book from the school's library and place another on a restricted shelf. *Id.* at 440–41. As in this case, the plaintiffs brought both First Amendment and due process claims. *Id.* The Court (as this Court

should do here) rejected both sets of claims, explaining that the due-process claim failed because the plaintiffs lacked a sufficient particularized and personal interest:

> Whatever deprivation of rights can result from the removal of books from a school library, it is not the sort of deprivation that entitles a student or librarian to a hearing before that removal takes place. The nature of the deprivation that triggers due process protections has been a subject of much debate. It is generally agreed, however, that the deprivation must involve some particularized and personal interest on the part of the person asserting the right. The right [asserted here] is not of that nature….

*Id.* at 442 (internal citations omitted). The same rationale applies here. Because the Plaintiffs do not have a protected liberty or property interest sufficient to trigger due-process protections, their claim is not legally cognizable and should be dismissed.

### 2.  The Texas Open Meetings Act does not implicate due process.

The Plaintiffs' alternative due-process theory, that their rights were violated when they were not permitted to attend meetings of the Advisory Board, Compl. ¶¶ 155–58, is equally unavailing for two reasons. First, the Texas Open Meetings Act does not apply to the Advisory Board. Second, even if that Act applied, it does not create due-process rights that could have been violated.

First, the Advisory Board is not bound by open-meeting requirements. The Open Meetings Act applies only to "governmental bod[ies]." Tex. Govt. Code § 551.002. But, fatally for the Plaintiffs' claims, the statute's definition of "governmental body" does not include boards appointed by a commissioner's court. *Id.* § 551.001(3). The Plaintiffs' claim that violations of the Act are violations of their due-process rights necessarily fails because the Act does not apply.

Yet even if the Advisory Board were bound by the Open Meetings Act, a compliance failure does not give rise to a due-process claim. This is because the

Open Meetings Act "has no due process implications." *City of San Antonio v. Fourth Court of Appeals*, 820 S.W.2d 762, 765 (Tex. 1991). The Act is "not a legislative scheme for service of process." *Id.* Rather, its purpose is to provide "openness at every stage of [a governmental body's] deliberations." *Id.* (quoting *Acker v. Texas Water Commn.*, 790 S.W.2d 299, 300 (Tex. 1990)). While the Act has a notice requirement, it does not, *contra* the Plaintiffs, have a hearing requirement. *See* Tex. Govt. Code § 551.041. The Act requires notice of a covered body's proceedings and requires that those proceedings be open to the public. *Id.* §§ 551.002, 551.041–551.056. It includes a set of remedies for violations of those requirements. *Id.* §§ 551.141–551.146. What it does *not* do is entitle the public to object or otherwise be heard at those proceedings. Without a protected liberty or property interest in the Board's meetings, the Plaintiffs' due-process claims regarding those meetings are not legally cognizable and should be dismissed.

## IV. Conclusion

The Plaintiffs' claims are jurisdictionally barred. And the Plaintiffs have at any rate not stated a claim upon which relief can be granted. As such, the Defendants and the State of Texas respectfully request that the Court dismiss all of Plaintiffs' claims with prejudice.

Dated June 8, 2022.                    Respectfully submitted,

*Dwain K. Rogers*

Dwain K. Rogers
*Attorney in Charge*
Texas Bar No. 00788311
County Attorney

Matthew L. Rienstra
Texas Bar No. 16908020
First Assistant County Attorney

Llano County Attorney's Office

Llano County Courthouse

801 Ford Street

Llano, Texas 78643

(325) 247-7733

dwain.rogers@co.llano.tx.us

matt.rienstra@co.llano.tx.us

**Counsel for Defendants**

Ken Paxton

Attorney General of Texas

Brent Webster

First Assistant Attorney General

Shawn E. Cowles

Deputy Attorney General for Civil
Litigation

Christopher D. Hilton

Chief, General Litigation Division

*Landon A. Wade*

Landon A. Wade

*Attorney in Charge*

Texas Bar No. 24098560

Todd A. Dickerson

Texas Bar No. 24118368

Assistant Attorneys General

Leif A. Olson

Texas Bar No. 24032801

Special Counsel

Office of the Attorney General

P.O. Box 12548 (MC-019)

Austin, Texas 78711-2548

(512) 463-2120

landon.wade@oag.texas.gov

todd.dickerson@oag.texas.gov

leif.olson@oag.texas.gov

**Counsel for Intervenor-Defendant**

**State of Texas**

**Certificate of Service**

I certify that this motion was filed and served electronically (via CM/ECF) on all parties of record on June 8, 2022.

*Dwain K. Rogers*