**IN THE UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF TEXAS**

**AUSTIN DIVISION**

| | | |
|---|---|---|
| Leila Green Little, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 1:22-cv-00424-RP |
| | § | |
| Llano County, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

**PLAINTIFFS' RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF CONTENTS……………………………………………………………………i

TABLE OF AUTHORITIES……………………………………………………..…...iii

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 3

ARGUMENT ...................................................................................................................... 4

I. THE COURT HAS SUBJECT-MATTER JURISDICTION OVER
PLAINTIFFS' CONSTITUTIONAL CLAIMS FOR INJUNCTIVE RELIEF............................ 5

    A.      Plaintiffs Sufficiently Allege Standing to Seek Injunctive Relief ........................ 6

    B.      Plaintiffs' Claims Are Not Moot............................................................ 8

II. DEFENDANTS VIOLATED THE FIRST AND FOURTEENTH
AMENDMENTS ................................................................................................................. 9

    A.      Defendants' Viewpoint-Based Removal of Public Library Books Does Not
            Constitute Government Speech.................................................................. 10

          1.      Binding Fifth Circuit precedent holds that the First Amendment applies in
                the public library context ........................................................... 10

          2.      Removing books from public libraries based on their content is viewpoint
                discrimination, not government speech ................................................... 11

          3.      Defendants' book removal is not government speech .............................. 14

    B.      Plaintiffs' Access to Information in Public Library Books Is a Liberty Interest
            Protected by the Due Process Clause of the Fourteenth Amendment .................. 17

CONCLUSION.................................................................................................... 20

CERTIFICATE OF SERVICE ...................................................................................................... 22

# TABLE OF AUTHORITIES

Page(s)

Cases

*Doyle v. Clark Cnty. Pub. Libr.*,
  No.3:07-cv-00003-TMR-MRM, 2007 WL 2407051 (S.D. Ohio Aug. 20, 2007) ................... 17
*Shurtleff v. City of Bos., Massachusetts*,
  142 S. Ct. 1583 (2022) ........................................................................................ 14, 17
*Johanns v. Livestock Mktg. Ass'n*,
  544 U.S. 550 (2005) .................................................................................................... 16
*Arkansas Educ. Television Comm'n v. Forbes*,
  523 U.S. 666 (1998) .............................................................................................. 13, 14
*Armstrong v. Dist. of Columbia Pub. Libr.*,
  154 F. Supp. 2d 67 (D.D.C. 2001) ............................................................................... 18
*Betts v. Wells Fargo Home Mortg.*,
  No. 3:15-CV-2016-G, 2016 WL 3675589 (N.D. Tex. June 13, 2016) ...................................... 5
*Bicknell v. Vergennes Union High Sch. Bd. of Dirs.*,
  638 F.2d 438 (2d Cir. 1980)............................................................................ 2, 19, 20
*Board. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*,
  457 U.S. 853 (1982) .............................................................................................. passim
*Boltex Mfg. Co., LP v. Galperti, Inc.*,
  No. 4:17-cv-01439, 2018 WL 1535199 (S.D. Tex. Mar. 29, 2018) ........................................ 5
*Brown v. Louisiana*,
  383 U.S. 131 (1966)..................................................................................................... 15
*Campbell v. St. Tammany Par. Sch. Bd.*
  64 F.3d 184 (5th Cir. 1995) .............................................................. 2, 10, 11, 12
*City of San Antonio v. Fourth Ct. of Appeals*,
  820 S.W.2d 762 (Tex. 1991)........................................................................................ 20
*Concerned Women for Am. Inc. v. Lafayette County.*,
  883 F.2d 32 (5th Cir. 1989) ......................................................................................... 11
*Demmon v. Loudoun Cnty. Pub. Sch.*,
  342 F. Supp. 2d 474 (E.D. Va. 2004) ............................................................................. 8
*DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.*,
  196 F.3d 958 (9th Cir. 1999) ......................................................................................... 8
*Dolan v. Tavares*,
  No. 1:10-cv-10249-NMG, 2011 WL 10676937 (D. Mass. May 16, 2011)............................ 17
*Frame v. City of Arlington*,
  657 F.3d 215 (5th Cir. 2011) ......................................................................................... 7
*FW/PBS, Inc. v. City of Dallas*,
  493 U.S., 215 (1990)..................................................................................................... 18
*Ghedi v. Mayorkas*,
  16 F.4th 456 (5th Cir. 2021) .......................................................................................... 7

*Home Builders Ass'n of Miss., Inc. v. City of Madison*,
   143 F.3d 1006 (5th Cir. 1998) ................................................................. 4
*Hunt v. Hillsborough County,*
   No. 8:07-cv-01168-JSM-TBM, 2008 WL 4371343 (M.D. Fla. 2008) ................... 17
*Inst. for Creation Rsch. Graduate Sch. v. Texas Higher Educ. Coordinating Bd.*,
   No. 1:09-cv-00382-SSA, 2009 WL 10699959 (W.D. Tex. July 31, 2009) ............. 6
*Jibril v. Mayorkas*,
   20 F.4th 804 (D.C. Cir. 2021) ................................................................. 7
*Keyishian v. Board of Regents*,
   385 U.S. 589 (1967) ............................................................................ 15
*Kreimer v. Bureau of Police for Town of Morristown*,
   958 F.2d 1242 (3d Cir. 1992) .......................................................... 15, 18
*Lormand v. US Unwired, Inc.*,
   565 F.3d 228 (5th Cir. 2009) ................................................................. 5
*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ............................................................................ 6
*Miller v. Nw. Region Libr. Bd.*,
   348 F. Supp. 2d 563 (M.D. N.C. 2004) ................................................... 17
*Morris v. Thompson*,
   852 F.3d 416 (5th Cir. 2017) ................................................................. 5
*Nat'l Endowment for the Arts v. Finley*,
   524 U.S. 569 (1998) ..................................................................... 13, 14
*Neinast v. Bd. of Trustees. of Columbus Metro. Libr.*,
   346 F.3d 585 (6th Cir. 2003) ............................................................... 19
*NetChoice, LLC v. Paxton*,
   No. 1:21-CV-840-RP, 2021 WL 5755120 (W.D. Tex. Dec. 1, 2021) ................... 4
*Pennell v. City of San Jose*,
   485 U.S. 1 (1988) ............................................................................... 4
*People for the Ethical Treatment of Animals, Inc. v. Gittens*,
   414 F.3d 23 (D.C. Cir. 2005) ............................................................... 11
*Pleasant Grove City v. Summum*,
   555 U.S. 460 (2009) ................................................................. 14, 15, 16
*Sund v. City of Wichita Falls, Tex.*,
   121 F. Supp. 2d 530 (N.D. Tex. 2000) ........................................... 11, 18, 19
*Three Expo Events, L.L.C. v. City of Dallas, Texas*,
   182 F. Supp. 3d 614 (N.D. Tex. 2016) ..................................................... 8
*U.S. v. Am. Libr. Ass'n, Inc.*,
   539 U.S. 194 (2003) ................................................................. 11, 12, 15
*Walker v. Texas Div., Sons of Confederate Veterans, Inc.*,
   576 U.S. 200 (2015) ................................................................. 14, 15, 16
*Wayfield v. Town of Tisbury*,
   925 F. Supp. 880 (D. Mass. 1996) ........................................................ 18

Plaintiffs Leila Green Little, Jeanne Puryear, Kathy Kennedy, Rebecca Jones, Richard Day, Cynthia Waring, and Diane Moster ("Plaintiffs") respectfully submit their response in opposition to Defendants' Joint Motion to Dismiss. (Dkt. 42.)

## INTRODUCTION

Plaintiffs are Llano County library patrons who brought this case to stop government censorship in the county's public library system (the "Library System"). Their Complaint pleads detailed, plausible factual allegations showing that Defendants have removed nationally acclaimed books about race, politics, gender, and sexual identity from the Library System because they disagree with their content. Defendants did so without providing patrons notice or an opportunity to be heard, in violation of the First and Fourteenth Amendments. In their Motion to Dismiss, Defendants attempt to defend their censorship based on inapt justiciability arguments and Orwellian legal theories that would negate the most basic protections of the First Amendment.

Defendants argue that Plaintiffs lack standing because they only allege past violations of their First Amendment rights, not ongoing harm. Plaintiffs, however, have pleaded ongoing injuries that the Court can redress, including that Defendants are denying them access to censored library books and library board meetings which should be open to the public. (Compl. ¶¶ 7, 26, 135-137.) Defendants also assert that this claim is partially moot because they stopped using OverDrive, their previous service for providing patrons access to digital materials, and because they have a right not to provide a public forum at all. But Plaintiffs allege that the relevant forum is the Library System, of which OverDrive was merely one facet—allegations that must be taken as true at this stage of the case. Further, whether the applicable forum is defined as the Library System's entire print and digital collection or the digital collection alone, Defendants have not effected a closure sufficient to moot any portion of Plaintiffs' claim.

On the merits, Defendants attempt to justify their removal of books by claiming that their censorship decisions are government speech wholly immune from First Amendment scrutiny. This argument ignores binding Fifth Circuit authority—*Campbell v. St. Tammany Par. Sch. Bd.*, 64 F.3d 184 (5th Cir. 1995)—holding that book removal decisions in public libraries are subject to the First Amendment. The decisions Defendants rely on do not address the situation here, where government actors decide to remove books from the shelves because they disagree with their messaging. This scenario is squarely addressed in *Campbell*, which forecloses Defendants' government speech argument.

With respect to Plaintiffs' Fourteenth Amendment argument, Defendants urge the Court to disregard the majority view that the First Amendment creates a protected liberty interest in access to information in the public library. But the Second Circuit case upon which Defendants rely, *Bicknell v. Vergennes Union High Sch. Bd. of Directors*, 638 F.2d 438, 442 (2d Cir. 1980), contains scant reasoning in support of its minority (and nonbinding) position. The Court should not adopt *Bicknell*'s cursory reasoning.

In sum, Defendants seek approval, as a matter of law, for their censorship of books in the Library System based on the viewpoints expressed in those books. They further seek the Court's imprimatur for their decision to carry out those censorship activities in darkness and without providing Plaintiffs and other Llano citizens the right to object. Under Defendants' interpretation of the First Amendment, the rights of all citizens to access information would be erased in favor of the government's right to "speak" regarding its chosen viewpoints and to suppress all others. The Court should reject Defendants' invitation to set such a troubling precedent and should deny Defendants' Motion to Dismiss.

## **BACKGROUND**

Llano County's public libraries are the cultural centers of the community, providing an open and accessible space for residents of different ages, income levels, backgrounds, and political beliefs to gather in the common pursuit of knowledge and the exploration of ideas. (Compl. ¶ 27.) The Library System has three physical locations and, prior to the events giving rise to this lawsuit, also provided library cardholders with a digital catalog called "OverDrive." (*Id.* ¶¶ 28-29.) This service was widely used in the community, particularly by elderly patrons, patrons with disabilities, and those patrons otherwise unable to visit a physical library. (*Id.* ¶ 29.)

Plaintiffs are card-carrying members of the Library System, which Plaintiffs use to access library books on a variety of topics, including fiction and nonfiction books, and books written for children, young adults, and adults. (*Id.* ¶¶ 1, 11.) In 2021, Plaintiffs' access to library books was curtailed when Defendants decided to remove and relocate books that conflicted with their personal political and religious beliefs. (*Id.* ¶¶ 38, 43-77.) All the books Defendants targeted for removal had been selected for the library in accordance with Llano County policies and many of them had won literary awards. (*Id.* ¶¶ 37, 40.) Defendants were so committed to their censorship efforts that they terminated OverDrive access for all library patrons simply because they could not find a way to censor the content available therein to their satisfaction. (*Id.* ¶¶ 78-97.)

When Llano County officials were confronted about this censorship campaign, which violated county policies, American Library Association ("ALA") standards, and the First Amendment, they dissolved the existing library board and replaced its members with people who had advocated for the removal of books, including Defendants Wallace, Wells, and Schneider. (*Id.* ¶¶ 98-105.) They then closed library board meetings, first to librarians, then to the entire public. (*Id.* ¶¶ 113-20.)

Defendants made no effort to hide their censorship or the fact that it was entirely based on viewpoint. On November 10, 2021, Defendant Wallace sent Defendant Cunningham an email entitled "Pornographic Filth at the Llano Public Libraries," attaching a list of books she considered "atrocious." (*Id.* ¶ 62.) The list was based on one compiled by Texas State Representative Matt Krause and included famous and award-winning books such as *Between the World and Me* and *We Were Eight Years in Power* by Ta-Nehisi Coates, and *The New Jim Crow* by Michelle Alexander, as well as other fiction and nonfiction titles related to sexuality and sex education, gender identity, and racial equality. (*Id.* ¶ 59.) Defendant Wallace demanded that the children's books on the list "be RELOCATED to the ADULT section" because it was "the only way that I can think of to prohibit future censorship of books I do agree with, mainly the Bible." (*Id.* ¶ 55.) Defendant Cunningham acted quickly, forwarding Defendant Wallace's list to Defendant Milum and directing her to "immediately" remove "any and all books that depict any type of sexual activity or questionable nudity." (*Id.* ¶ 63.) Milum then ordered those books removed from shelves. (*Id.* ¶ 73.)  Dispelling any doubt as to their motivations in banning the Krause List books, Defendants have referred to it as the "16-page list of CRT and LGBTQ book[s]." (*Id.* ¶ 61.)

## ARGUMENT

A federal court may only dismiss a case for lack of subject matter jurisdiction when it "lacks the statutory or constitutional power to adjudicate [it]." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Where, as here, "standing is challenged on the basis of the pleadings, [courts] 'accept as true all material allegations of the complaint, and . . . construe the complaint in favor of the complaining party.'" *NetChoice, LLC v. Paxton*, No. 1:21-CV-840-RP, 2021 WL 5755120, at *4 (W.D. Tex. Dec. 1, 2021) (quoting *Pennell v. City of San Jose*, 485 U.S. 1, 7 (1988)) (internal alterations omitted). A court should grant a Rule

12(b)(1) motion to dismiss "only if it appears certain that the plaintiff cannot prove any set of facts that would entitle her to recovery." *Morris v. Thompson*, 852 F.3d 416, 419 (5th Cir. 2017).

On a Rule 12(b)(6) motion to dismiss, "the burden is on the moving party to prove that no legally cognizable claim for relief exists." *Boltex Mfg. Co., LP v. Galperti, Inc.*, No. 4:17-cv-01439, 2018 WL 1535199, at *1 (S.D. Tex. Mar. 29, 2018). This burden is a heavy one. *See Betts v. Wells Fargo Home Mortg.*, No. 3:15-CV-2016-G, 2016 WL 3675589, at *12 (N.D. Tex. June 13, 2016). Indeed, motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

## I.     THE COURT HAS SUBJECT-MATTER JURISDICTION OVER PLAINTIFFS' CONSTITUTIONAL CLAIMS FOR INJUNCTIVE RELIEF

Defendants' arguments under Rule 12(b)(1) demonstrate their fundamental misunderstanding of the nature of Plaintiffs' claims as well as Article III's case-or-controversy requirements. Defendants first contend that Plaintiffs lack standing to seek injunctive relief because they only complain of "past harm." (Mot. at 4-5.) This assertion ignores the Complaint's allegation of harm—*i.e.*, Plaintiffs' inability to access the removed books, OverDrive, or Library Board meetings—which demonstrate that Plaintiffs are suffering actual, present, and ongoing injuries. Plaintiffs need not, and indeed cannot, make "concrete and imminent plans" to check out books that are no longer on library shelves or attend secret Library Board meetings held at times and locations unknown to Plaintiffs.

Similarly, Defendants' claim that they have "mooted" Plaintiffs' request for injunctive relief by terminating OverDrive is based on a fundamental misunderstanding of that doctrine. Even if the government could choose to close a public forum in order to moot a claim of viewpoint-based discrimination, Llano County has not done so. As alleged in the Complaint, the

Library System remains open. Ultimately, the definition of the forum is a question of fact, and at the pleading stage, Plaintiffs' allegations must be taken as true.

### A. Plaintiffs Sufficiently Allege Standing to Seek Injunctive Relief

Defendants challenge Plaintiffs' standing to bring this action. (Mot. at 4-5.) Standing merely requires a plaintiff to show that she (1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Citing *Lujan*, Defendants contend that Plaintiffs lack standing to seek injunctive relief because they have not alleged "concrete plans" to access books Defendants removed from the Library System or attend future Library Board meetings. (Mot. at 4-5.) This argument would impose a circular (and nonsensical) rule that a party must continually try to check out banned books or attend meetings after the books have been removed and access to the meetings has been cut off to establish standing. There is no such legal requirement.

Detailed descriptions of future plans are not required when the harm is *actual*—that is, currently ongoing and not merely a future possibility. *See Lujan*, 504 U.S. at 564 ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ***if unaccompanied by any continuing, present adverse effects***" (internal alterations and citations omitted) (emphasis added)); *Inst. for Creation Rsch. Graduate Sch. v. Texas Higher Educ. Coordinating Bd.*, No. 1:09-cv-00382-SS, 2009 WL 10699959, at *2 (W.D. Tex. July 31, 2009) (holding that a municipal education board's denial of a license to grant degrees was not "conjectural or incapable of redress" but rather "has already happened, and is ongoing" and thus "fulfills the constitutional standing requirements").

Plaintiffs here have alleged ample facts demonstrating that they are experiencing the "continuing, present adverse effects" of Defendants' illegal actions—*i.e.*, Plaintiffs want to, and

have attempted to, check out the library books that Defendants removed from shelves or attend Library Board meetings presently but cannot do so. In particular, Plaintiffs have alleged that (i) they are "visitors, users, card-carrying members, and ardent supporters of Llano County's public libraries" (Compl. ¶ 1); (ii) they read library books on a "wide variety of topics" and "at various reading levels" for their "personal and professional enrichment" (*id.* ¶ 11); (iii) they wish to check out the removed library books and access books on OverDrive (*id.* ¶¶ 136-137); (iv) "[w]ithout success" they attempted and failed to locate and check out the removed library books and access OverDrive (*id.* ¶¶ 47, 136-37); (v) several Plaintiffs attempted to join the newly appointed Library Board and were rejected (*id.* ¶¶ 101-105); and (vi) Defendants' removal of books and closure of Library Board meetings to the public will continue to deprive Plaintiffs of their ability to access the information in books that were removed from library shelves and on OverDrive (*id.* ¶¶ 148, 157-58).

These allegations establish that Plaintiffs' present inability to check out censored library books or attend Library Board meetings is an actual, current, and continuing harm. Plaintiffs here need not undergo the frivolous exercise of alleging "concrete plans" to drive to their local libraries to locate and check out books not on the shelves or attend secret Library Board meetings held behind closed doors at unknown times. *Cf. Ghedi v. Mayorkas*, 16 F.4th 456, 465 (5th Cir. 2021) (explaining that the concept of imminence "is not so rigid that a plaintiff must 'engage in futile gestures' to maintain standing" (quoting *Frame v. City of Arlington*, 657 F.3d 215, 236 (5th Cir. 2011) (en banc)); *Jibril v. Mayorkas*, 20 F.4th 804, 817 (D.C. Cir. 2021) (holding that plaintiffs on a terrorist watch list need not allege specific future travel plans but that the court may "simply draw the reasonable inference" from plaintiffs' history of travel). Plaintiffs have standing under Article III, and the Motion on this ground must be denied.

**B. Plaintiffs' Claims Are Not Moot**

Defendants cite no binding authority for the principle that the government can moot a request for injunctive relief against illegal viewpoint-based discrimination by closing the challenged forum. (Mot. at 5 (citing *DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.*, 196 F.3d 958, 970 (9th Cir. 1999) and *Demmon v. Loudoun Cnty. Pub. Sch.*, 342 F. Supp. 2d 474, 479 (E.D. Va. 2004).) But, even if Defendants could establish such a rule, nothing in Plaintiffs' Complaint gives rise to the inference that the applicable "forum" has been closed. *Compare Demmon*, 342 F. Supp. 2d at 479 (by only removing bricks in the school's "walk of fame" that contain the religious symbols, instead of all bricks with secular and religious iconography, the forum remained opened), *with DiLoreto*, 196 F.3d at 970 (removing *all* of the advertisements from the high school's baseball field fence rather than posting an advertisement containing the ten commandments did not constitute viewpoint discrimination).

As an initial matter, the definition of the relevant forum is a fact question not readily susceptible to resolution on a Motion to Dismiss. *See Three Expo Events, L.L.C. v. City of Dallas, Texas*, 182 F. Supp. 3d 614, 626 (N.D. Tex. 2016) ("Determining the nature of the forum is a fact-intensive inquiry."). Plaintiffs' Complaint defines the applicable forum as the Library System, including all three physical locations and the digital catalogue. (Compl. ¶¶ 28-29.) Taking the Complaint's allegations as true, Defendants' argument fails. It cannot be disputed that—with the exception of the materials illegally censored by Defendants—the Llano County Library's collection is currently generally available to the library card carrying citizens of Llano County.

In advancing the argument that the closure of OverDrive has mooted part of Plaintiffs' claim, Defendants appear to treat OverDrive as its own forum. (Mot. at 5.) As explained above, that is not what is alleged in the Complaint, which states that the OverDrive digital platform is

merely one facet of Library System. Moreover, Defendants provide no support for defining the forum as the company through which they opted to provide some of the Library System's digital content, while excluding from the forum other digital content, such as DVDs, that can be checked out directly at library branches.

But, even assuming the relevant forum is something less than the entirety of the library's collection of material, Defendants' argument would still fail. Here, Plaintiffs have accessed in the past, and continue to seek access to, the library's digital collection. (Compl. ¶¶ 29-30.) Plaintiffs have alleged that Defendants, in an attempt to impose viewpoint discrimination on Plaintiffs and other Llano County citizens, cut off access to OverDrive. (*Id*. ¶¶ 86, 96-97.) But OverDrive was simply the mechanism by which Defendants previously opted to make certain digital material available to its patrons. The Complaint does not allege that Defendants cut off access to all digital materials, as necessary for Defendants' forum closure argument.

Whether the Court finds the relevant forum to be the Library System's collection as a whole or its digital offerings, the result is the same. Defendants have not closed either forum, and no part of Plaintiffs' First Amendment claim is moot.

## II.    DEFENDANTS VIOLATED THE FIRST AND FOURTEENTH AMENDMENTS

Defendants assert that their decision to remove books from the Library System based on the views expressed in those books is "government speech" wholly immune from First Amendment scrutiny. (Mot. at 8-10.) This argument—which would enable the government to negate the First Amendment protections of the people based on its own supposed right to censor—fails under binding Fifth Circuit precedent, which holds that the First Amendment does apply to public libraries, and that government actors may not remove public library books to censor disfavored ideas within them. Defendants' Fourteenth Amendment argument is equally unavailing. Defendants' contention that Plaintiffs have alleged no cognizable liberty interest

contradicts the majority of cases that have considered the issue and held that that the First

Amendment creates a protected liberty interest in access to information in the public library.

### A. Defendants' Viewpoint-Based Removal of Public Library Books Does Not Constitute Government Speech

Defendants assert that their removal and restriction of access to public library books is

government speech to which the First Amendment does not apply. (Mot. at 8-10.) This

contention fails for at least three separate reasons. ***First***, binding Fifth Circuit case law holds that

the First Amendment does apply to book removal decisions in a public library, and that public

libraries are public fora subject to First Amendment protection. ***Second***, the government speech

cases relied upon by Defendants do not stand for the proposition that the government may

exercise its discretion to engage in viewpoint discrimination and thereby suppress and censor

disfavored ideas. And ***third***, applying the three-prong government speech test to the Complaint's

allegations—an analysis which Defendants did not bother to conduct in the Motion—reveals that

book removal cannot be protected government speech, and certainly not as a matter of law.

#### 1. Binding Fifth Circuit precedent holds that the First Amendment applies in the public library context

Defendants' argument that the typical First Amendment public forum analysis does not

apply in the context of public libraries because the government "speaks through its selection and

exclusion of books" (Mot. at 9) has already been rejected. Binding Fifth Circuit case law holds

just the opposite.

In *Campbell*, the Fifth Circuit considered the constitutionality of the St. Tammany Parish

School Board's decision to remove the book *Voodoo & Hoodoo* from its public school libraries.

64 F.3d at 185. In doing so, the court adopted the constitutional analysis in the Supreme Court's

plurality opinion of *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S.

853 (1982), holding that "students have a First Amendment right to receive information" and

"that school officials are prohibited from . . . remov[ing] books from school library shelves 'simply because they dislike the ideas contained in those books and seek by their removal to prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion.'" *Campbell*, 64 F.3d at 189 (quoting *Pico*, 457 U.S. at 872)). The Fifth Circuit overturned the summary judgment ruling in plaintiffs' favor and remanded the case for a full development of the factual record with a clear message: If the school board's "actual motivation" for removing *Voodoo & Hoodoo* from its school libraries was to suppress the ideas contained therein, the removal would constitute a violation of the students' First Amendment rights. *Id.* at 191; *Cf. Concerned Women for Am. Inc. v. Lafayette Cnty.*, 883 F.2d 32, 34 (5th Cir. 1989) (holding that, where plaintiff had "shown a substantial likelihood of proving that the library has created a public forum by allowing diverse groups to use its auditorium," the exclusion of a religious group was an impermissible content-based restriction).

*Campbell* ends the inquiry and forecloses Defendants' government speech argument. The First Amendment applies to book removal decisions in public libraries. *See Sund v. City of Wichita Falls, Tex.*, 121 F. Supp. 2d 530, 548 (N.D. Tex. 2000) (citing *Pico*, 457 U.S. at 886 (reasoning that "[t]he principles set forth in *Pico*—a school library case—have even greater force when applied to public libraries")).

    **2.  Removing books from public libraries based on their content is viewpoint discrimination, not government speech**

Defendants do not cite the directly adverse and controlling authority of *Campbell* in their moving papers. Instead, they urge the Court to rely on *U.S. v. Am. Libr. Ass'n, Inc.*, 539 U.S. 194 (2003) ("*ALA*") and *People for the Ethical Treatment of Animals, Inc. v. Gittens*, 414 F.3d 23 (D.C. Cir. 2005) ("*PETA*") to hold that Defendants' conduct is government speech immune from

First Amendment review. (Mot. at 9.) Neither case informs the analysis here. *ALA* says nothing about government speech, and the language Defendants rely upon in *PETA* is dicta.

*ALA* is part of a strain of cases regarding the government's right to attach certain strings to funding without violating the Constitution—i.e., to "speak" through conditions imposed on government programs. In *ALA*, the Court considered a facial challenge to the Children's Internet Protection Act (CIPA), under which Congress had declared that a "public library may not receive federal assistance to provide Internet access unless it installs software to block images that constitute obscenity or child pornography, and to prevent minors from obtaining access to material that is harmful to them." 539 U.S. at 199. In a plurality decision, the Court declined to hold that this funding restriction was facially unconstitutional. Rather, the Court recognized that, "[w]ithin broad limits, when the Government appropriates public funds to establish a program it is entitled to define the limits of that program." *Id.* at 211.

Defendants cite *ALA* for the proposition that "public libraries should be afforded 'broad discretion' in making content and collection decisions." (Mot. at 9.) But any such reasoning in *ALA* is inapplicable here because Plaintiffs challenge the ***removal*** of books that were already deemed appropriate and put on the shelves, not the initial selection of books. *Pico*, 457 U.S. at 872 (holding that a municipal actor's decision "to remove books" from shelves implicates the First Amendment). As explained above, the Fifth Circuit has already held that removal decisions are subject to First Amendment scrutiny. *Campbell*, 64 F.3d at 189. With good reason. As Justice Souter explained in his *ALA* dissent, "[t]he difference between choices to keep out and choices to throw out is thus enormous, a perception that underlay the good sense of the plurality's conclusion in [*Pico*], that removing classics from a school library in response to pressure from parents and school board members violates the Speech Clause." 539 U.S. at 242.

Moreover, the cases cited by *ALA* in favor of "broad discretion" explain that even in the selection context, the government does not escape First Amendment scrutiny altogether. For example, in *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569 (1998), the Court considered a facial challenge to the NEA funding statute that "admonishes the NEA merely to take 'decency and respect' into consideration," in its grantmaking decisions. *Id.* at 582. In rejecting the facial challenge, the Court noted that "although the First Amendment certainly has application in the subsidy context . . . . Congress has wide latitude to set spending priorities." *Id.* at 587-88. But *Finley* cautioned that "[i]f the NEA were to leverage its power to award subsidies on the basis of subjective criteria into a penalty on disfavored viewpoints, then we would confront a different case. . . . [E]ven in the provision of subsidies, the Government may not "ai[m] at the suppression of dangerous ideas." *Id.* at 587.

Likewise, in *Arkansas Educ. Television Comm'n v. Forbes*, the Court held that public forum principles do not generally apply to a public television station's editorial judgment regarding the private speech it presents to its viewers. 523 U.S. 666, 672-673 (1998). However, *Arkansas* made clear that this did not give the public broadcaster "unfettered power to exclude any candidate it wished. . . . To be consistent with the First Amendment, the exclusion . . . ***must not be based on the speaker's viewpoint and must otherwise be reasonable in light of the purpose of the property***." *Id.* at 674, 682 (emphasis added).

In sum, *ALA*, *Finley*, and *Arkansas* implicate government selection decisions, not removals. And even for selection decisions, they do not wholly abrogate application of the First Amendment.

For the same reasons, Defendants' reliance on *PETA* is also misplaced. As an initial matter, the portion of *PETA* referencing the government's "selection of which books to put on

the shelves and which books to exclude" is offhanded, non-binding dicta at best. (*See* Mot. at 9

(quoting 414 F.3d at 28).) Further, the D.C. Circuit's analogy to public libraries implicates only

the selection of books before they are placed on library shelves—not the post-selection,

viewpoint-based expulsion of books relevant here. Finally, *PETA* ignores outright the language

in Supreme Court precedent indicating that even if government officials, acting as librarians,

patrons of the arts, or television broadcasters, are afforded broad discretion in executing their

duties, they still cannot discharge them in a viewpoint discriminatory way to suppress or censor

unpopular or disfavored ideas. *See Finley*, 524 U.S. at 586; *Arkansas*, 523 U.S. at 682.

   Under even the most charitable reading, the cases Defendants cite do not allow them to

evade First Amendment scrutiny.

### 3. Defendants' book removal is not government speech

   Though Defendants invoke the government speech doctrine, they make no serious effort

to undertake the required analysis. In *Shurtleff v. City of Bos., Massachusetts*, the Supreme Court

recently explained that determining whether government speech is at issue or not requires courts

to "conduct a holistic inquiry designed to determine whether the government intends to speak for

itself or to regulate private expression." 142 S. Ct. 1583, 1589 (2022). This "holistic" inquiry has

elsewhere been separated into three prongs: (1) whether the forum in which the speech occurs

has historically been used for government speech; (2) whether the public would interpret the

speech as being conveyed by the government; and (3) whether the government has maintained

control over the speech. *Walker v. Texas Div., Sons of Confederate Veterans, Inc.,* 576 U.S. 200,

201 (2015); *Pleasant Grove City v. Summum*, 555 U.S. 460, 469 (2009).

   Defendants attempt to invoke the government speech doctrine here, without making any

attempt to conduct the requisite analysis. The Supreme Court's three-prong test articulated in

*Walker* and *Pleasant Grove* is a fact-bound inquiry inappropriate for resolution at the motion to

dismiss stage. *See Walker*, 576 U.S. at 210-13 (conducting a factual analysis on a motion for summary judgment and considering "the history of license plates", as well as the level of control Texas maintains "over the messages conveyed on its specialty plates"); *Summum*, 555 U.S. at 473-74 (conducting a factual analysis on the degree of control the city exerts over "the messages sent by the monuments" in a public park). But even assuming it were appropriate for the Court to conduct the analysis here, the factors would tip decidedly in Plaintiffs' favor.

As for the first prong, the rich history of public libraries in this country reveals that they have not traditionally been considered spaces for the government to convey its chosen messages to the public. Instead, as courts have repeatedly recognized, public libraries are "a place dedicated to quiet, to knowledge, and to beauty." *Pico*, 457 U.S. at 868 (quoting *Brown v. Louisiana*, 383 U.S. 131, 142 (1966) (opinion of Fortas, J.)). They permit patrons "to inquire, to study and to evaluate, to gain new maturity and understanding," *id.* (quoting *Keyishian v. Board of Regents*, 385 U.S. 589, 603 (1967)), and are "the quintessential locus for the exercise of the right to receive information and ideas," *Kreimer v. Bureau of Police for Town of Morristown*, 958 F.2d 1242, 1256 (3d Cir. 1992); *see also ALA*, 539 U.S. at 238 (Souter, J., dissenting) (reviewing the institutional history and development of public libraries in America, citing historical sources in the early 20th century explaining that "[t]he true public library must stand for the intellectual freedom of access to the printed word," and recognizing "a growing understanding that a librarian's job was to guarantee that 'all people had access to all ideas'").

The second prong, whether the public would interpret the speech as being conveyed by the government, is a fact-bound inquiry that will turn on the evidence specific to this case. Drawing all reasonable inferences in Plaintiffs' favor, which the Court must do at this stage, it is more than plausible that Llano County library patrons would not interpret the library as a place

for the government to communicate its desired messages to the public, but rather, like any library, as marketplace of ideas.[1] Indeed, the Materials Policy confirms as much. It makes clear to patrons that Llano County libraries will "maintain a well-balanced and broad collection of materials for information, reference, research, and enjoyment" and "support the democratic process by providing materials for the education and enlightenment of the community." (Compl. ¶ 32.) Were it otherwise, libraries would risk violating the Establishment Clause by including any religious texts such as the Bible or Koran in its collections. Further, public libraries are unlike the sites found in other cases to be government speech, such as public monuments, which governments "have long used . . . to speak to the public [and] to remind their subjects of their authority and power," *Summum*, 555 U.S. at 470, or license plate designs, which "are often closely identified in the public mind with the [State]," and bear the state's name "in large letters across the top of every plate," *Walker*, 576 U.S. at 201.

With respect to the third prong, the government has not maintained the requisite degree of control over the library. For private speech to become the government's own, the government must exercise such a high degree of control over speech that it "'effectively control[s]'" a message by "exercising 'final approval authority' over [its] selection." *Summum*, 555 U.S. at 472. Applying this rule in *Johanns v. Livestock Mktg. Ass'n*, the Supreme Court found that advertisements encouraging beef consumption could be classified as government speech, as the federal government had "set[ ] the overall message to be communicated and approve[d] every word that [was] disseminated." 544 U.S. 550, 562 (2005). In contrast, here, while Defendants may exert some degree of control over the books they select for the Library System's collection,

---

[1] Plaintiffs' expedited depositions of Defendants Milum, Moss, and Wallace revealed that Defendants did not curate the Library System's collection to reflect the particular views of Llano County and communicate its desired message to members of the public.

there is no reason for the Court to assume at this stage that Defendants review and preapprove "every word" of every book on library shelves. Nor have Defendants set an "overall message" to be conveyed by the library catalog. To the contrary, the Complaint's allegations as to the Materials Policy create a reasonable inference that Defendants opted to present a viewpoint neutral library collection without any "overall message" whatsoever. (*See* Compl. ¶¶ 31-36.)

Conducting the "holistic inquiry" as described in *Shurtleff*, and drawing all reasonable inferences in Plaintiffs' favor, the Court cannot conclude as a matter of law that the Llano County government "intends to speak for itself" through operation of its libraries. 142 S. Ct. at 1584. Because Defendants have not established that their censorship of books in the Library System constitutes government speech, the Court should deny the Motion on this ground.

## B. Plaintiffs' Access to Information in Public Library Books Is a Liberty Interest Protected by the Due Process Clause of the Fourteenth Amendment

Defendants contend that the government's restriction of access to public library books is not a deprivation of a protected liberty or property interest. (Mot. at 11-12.) Not so.

Numerous courts have held that "[t]he right of the public to use the public library is best characterized as a protected liberty interest created directly by the First Amendment." *Doyle v. Clark Cnty. Pub. Libr.*, No. 3:07-cv-00003-TMR-MRM, 2007 WL 2407051, at *5 (S.D. Ohio Aug. 20, 2007); *see also Miller v. Nw. Region Libr. Bd.*, 348 F. Supp. 2d 563, 570 (M.D. N.C. 2004) (denying defendants' motion to dismiss plaintiff's Fourteenth Amendment due process claim, holding that access to public library computers was a protected liberty interest); *Hunt v. Hillsborough County,* No. 8:07-cv-01168-JSM-TBM, 2008 WL 4371343, at *3 (M.D. Fla. 2008) ("Plaintiff had a fundamental right to access the Law Library and receive the information provided therein."); *Dolan v. Tavares*, No. 1:10-cv-10249-NMG, 2011 WL 10676937, at *13 (D. Mass. May 16, 2011) ("plaintiff has a liberty interest in being able to access the law library"); *cf.*

*Kreimer v. Bureau of Police,* 958 F.2d 1242, 1255 (3d Cir. 1992) (stating that the First

Amendment includes the "positive right of public access to information and ideas"); *Armstrong*

*v. Dist. of Columbia Pub. Libr.,* 154 F. Supp. 2d 67, 82 (D.D.C. 2001) (recognizing that "access

to a public library [ ] is at the core of our First Amendment values").

  *Sund v. City of Wichita Falls* is instructive. On First and Fourteenth Amendment grounds,

the plaintiffs in *Sund* challenged a city resolution that required removing a book from the

children's section of the library "if, in the opinion of 300 petitioners—who may or may not have

minor children—the book is 'of a nature that it is most appropriately read with parental approval

and/or supervision.'" 121 F. Supp. 2d at 534. Pursuant to the resolution, once a petition with at

least 300 signatures of library patrons was filed with the librarian, she was required to remove

the targeted book from the children's area within 24 hours. *Id.* The resolution provided no

limitations or criteria for determining a book's "appropriateness." *Id.* at 553. The *Sund* court

determined that the city resolution violated plaintiffs' due process rights because it

"impermissibly create[d] a risk of arbitrary and discriminatory application" and failed "to

provide adequate means for timely review and appeal of the removal decisions." *Id.* at 552-53. It

held that these "procedural shortcomings make the Resolution unconstitutional." *Id.* at 553

(citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S., 215, 227-230 (1990) (requiring speech

regulations to contain adequate procedural safeguards); *Wayfield v. Town of Tisbury*, 925 F.

Supp. 880, 889 (D. Mass. 1996) (holding that town violated library patron's right to due process

by suspending library privileges without providing hearing to contest suspension)).

  So too here. The Complaint alleges that Defendants deprived Plaintiffs of their right to

receive information by restricting or removing access to numerous print and digital library books

without notice or an opportunity to be heard. (Compl. ¶ 26.) Further, it alleges that Defendants

created a board of political appointees to review and remove "inappropriate" books in the Library System's collection during private meetings that the public cannot attend, without disclosing the precise criteria that may be used to determine a book's "appropriateness." (*Id.* ¶¶ 113-120.) As in *Sund,* these procedural shortcomings create an impermissible risk of "arbitrary and discriminatory" removal of books from the library and deprive Plaintiffs of "adequate means for timely review and appeal of the removal decisions." 121 F. Supp. 2d at 552-53.

Defendants urge the Court to go against the great weight of precedent on this issue and adopt the holding of an out-of-circuit and poorly reasoned decision, *Bicknell* 638 F.2d at 442. (*See* Mot. at 12.) First, *Bicknell* is factually distinguishable, as its holding is limited to the removal of books from a ***school*** library, which has different "'inculcative' functions" than the public library at issue here, which instead is "'designed for freewheeling inquiry.'" *Sund*, 121 F. Supp. 2d at 548 (quoting *Pico*, 457 U.S. at 915) (reasoning that "[t]he principles set forth in *Pico*—a school library case—have even greater force when applied to public libraries")).

Moreover, *Bicknell* includes almost no reasoned analysis. *Bicknell* summarily concludes that the removal of school library books "is not the sort of deprivation that entitles a student or librarian to a hearing before that removal takes place" because it did not involve a deprivation of "particularized and personal interest." 638 F.2d at 442. Its analysis goes no further, failing to offer any explanation for why such a deprivation would not be a "particularized and personal interest" to the students or librarians who wish to read the removed books. The numerous district and circuit courts holding that access to public library books is a protected liberty interest created directly by the First Amendment have the better argument. *See supra* at 16-17; *cf. Neinast v. Bd. of Trs. of Columbus Metro. Libr.*, 346 F.3d 585, 592 (6th Cir. 2003) (referring to the First Amendment right to receive information in public library books as a "fundamental right").

Finally, Defendants' argument that Plaintiffs' procedural due process claim rises or falls with the Texas Open Meetings Act ("TOMA") is misplaced. (Mot. at 12-13.) Plaintiffs allege that TOMA "requires that Defendants make the meetings of the Library Board open to the public." (Compl. ¶ 155.) Defendants argue that their violation of TOMA cannot technically serve as the basis for a procedural due process claim because TOMA has "no due process implications." (Mot. at 13 (citing *City of San Antonio v. Fourth Ct. of Appeals*, 820 S.W.2d 762, 765 (Tex. 1991)).) Plaintiffs do not allege that Defendants' TOMA violation is the sole basis for its procedural due process claim. Rather, Plaintiffs cite TOMA as an example of constitutionally sufficient process that Defendants could have taken. Defendants' failure to abide by this statutory procedure is simply evidence of their violation of Plaintiffs' procedural due process rights. The Fourteenth Amendment—which certainly does carry due process implications—requires notice and an opportunity to be heard. Defendants' removal of the materials at issue here without any process whatsoever has violated Plaintiffs' constitutional due process rights.

In sum, the Court should reject the conclusory reasoning of the Second Circuit in *Bicknell* and follow the lead of the majority of courts to have confronted this issue, holding that Plaintiffs have a protected liberty interest in access to information in public library books entitling them to due process of law. The Court should deny the Motion on this ground.

## CONCLUSION

For the reasons stated above, the Court should deny Defendants' Motion.

Dated: July 15, 2022

Respectfully submitted,

/s/ *Ellen Leonida*
Ellen V. Leonida (CA Bar No. 184194)
Matthew Borden (CA Bar No. 214323)
J. Noah Hagey (CA Bar No. 262331)
Sarah Salomon (CA Bar No. 308770)
Pratik Ghosh (NY Bar No. 5754940)
Amy Senia (CA Bar No. 329134)
**BraunHagey & Borden LLP**
351 California Street, 10th Floor
San Francisco, CA 94104
Tel & Fax:  415-599-0210
leonida@braunhagey.com
borden@braunhagey.com
hagey@braunhagey.com
salomon@braunhagey.com
ghosh@braunhagey.com
senia@braunhagey.com


/s/ *Ryan Botkin*
Ryan A. Botkin (TX Bar No. 00793366)
Katherine P. Chiarello (TX Bar No. 24006994)
María Amelia Calaf (TX Bar No. 24081915)
Kayna Stavast Levy (TX Bar No. 24079388)
**Wittliff | Cutter PLLC**
1209 Nueces Street
Austin, Texas 78701
Tel: 512-960-4730
Fax: 512-960-4869
ryan@wittliffcutter.com
katherine@wittliffcutter.com
mac@wittliffcutter.com
kayna@wittliffcutter.com

*Attorneys for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 15, 2022, a true and correct copy of the foregoing document was served on all counsel of record who have appeared in this case using the Court's CM/ECF system as a Filing User.

*/s/ Ellen Leonida*

Ellen V. Leonida