UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **Leila Green Little**, et al.,<br><br>      Plaintiffs,<br><br>v.<br><br>**Llano County**, et al.,<br><br>      Defendants. | Case No. 1:22-cv-00424-RP |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS**

## TABLE OF CONTENTS

Table of contents...................................................................................................i

Table of authorities...............................................................................................ii

    I.   The complaint fails to allege facts needed to establish Article III standing ............................................................................................... 1

    II.  The plaintiffs' claims are moot ................................................... 4

    III. The complaint fails to allege a First Amendment violation ........................... 5

    IV. The complaint fails to allege a due-process violation ............................... 9

Conclusion..........................................................................................................10

Certificate of service ..........................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997) ............................ 4, 5

*Bicknell v. Vergennes Union High School*, 638 F.2d 438 (2d Cir. 1980) ................. 10

*Board of Education v. Pico*, 457 U.S. 853 (1982) ....................................................... 8

*California v. Texas*, 141 S. Ct. 2104 (2021) ............................................................... 3

*Campbell v. St. Tammany Parish School Board*,
    64 F.3d 184 (5th Cir. 1995) ................................................................................ 8

*Carmichael v. United Technologies Corp.*,
    835 F.2d 109 (5th Cir. 1988) .............................................................................. 4

*Chiras v. Miller*, 432 F.3d 606 (5th Cir. 2005) ....................................................... 5, 6

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ...................................................... 2

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ............................................... 1, 4

*DeShaney v. Winnebago County Dept. of Social Services*,
    489 U.S. 189 (1989) ...................................................................................... 7, 10

*Egli v. Chester County Library System*,
    394 F. Supp. 3d 497 (E.D. Pa. 2019) ................................................................ 6, 9

*Gay Guardian Newspaper v. Ohoopee Regional Library System*,
    235 F. Supp. 2d 1362 (S.D. Ga. 2002) ............................................................... 7, 9

*Jackson v. City of Joliet*, 715 F.2d 1200 (7th Cir. 1983) ............................................ 7

*Knox v. Serv. Employees Int'l Union, Local 1000*, 567 U.S. 298 (2012) ..................... 5

*Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569 (1998) .................................... 8

*New York State Rifle & Pistol Ass'n, Inc. v. City of New York*,
    140 S. Ct. 1525 (2020) ......................................................................................... 5

*Rust v. Sullivan*, 500 U.S. 173 (1991) ......................................................................... 8

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ........................................................... 1, 4

*Tinker v. Des Moines School District*, 393 U.S. 503 (1969) ....................................... 9

*United States v. American Library Ass'n Inc.*, 539 U.S. 194 (2003) ................. 5, 6, 7

*Warth v. Seldin*, 42 U.S. 490 (1975) ........................................................................ 1, 4

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) ..................................................... 1, 2, 3, 4

**Constitutional Provisions**

U.S. Const. amend. XIV ................................................................................................ 9

**Rules**

Fed. R. Civ. P. 12(h)(3) ................................................................................................. 4

**Other Authorities**

David P. Currie, *Positive and Negative Constitutional Rights*,
   53 U. Chi. L. Rev. 864 (1986) ............................................................................. 7

## I. THE COMPLAINT FAILS TO ALLEGE FACTS NEEDED TO ESTABLISH ARTICLE III STANDING

The plaintiff who brings suit in federal court must "clearly and specifically set forth facts" sufficient to establish each of the three components of Article III standing—injury in fact, causation, and redressability. *Whitmore v. Arkansas*, 495 U.S. 149, 155–56 (1990); *id.* ("The litigant must clearly and specifically set forth facts sufficient to satisfy these Art. III standing requirements. A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing."); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) ("Where, as here, a case is at the pleading stage, the plaintiff must "clearly . . . allege facts demonstrating" each element [of Article III standing]."); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013) ("[P]laintiffs bear the burden of pleading and proving concrete facts showing that the defendant's actual action has caused the substantial risk of harm."); *Warth v. Seldin*, 42 U.S. 490, 518 (1975) ("It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers."). The allegations in the plaintiffs' complaint fall woefully short of "clearly and specifically set[ting] forth facts" that establish *any* of the three components of Article III standing.

Start with injury in fact. The plaintiffs allege that they are suffering "injury" because the library removed books from the shelves, terminated its contract with Over-Drive, and issued a moratorium on new book purchases. *See* Complaint, ECF No. 1, at ¶¶ 143–148. But it is not enough for a library patron to assert "injury" from a library's decision to remove book or limit the available book supply. A library patron does not suffer "injury in fact" from those actions unless the patron intends or desires to read a particular book that would have been available but for the defendants' conduct. Otherwise the library patron is asserting nothing more than an ideological grievance—and is merely litigating his disapproval of the library book-selection policies.

The plaintiffs' complaint does much to explain how strongly the plaintiffs disagree with the defendants' policies. *See, e.g.*, Complaint, ECF No. 1, at ¶ 1 ("Plaintiffs . . . are fiercely united in their love for reading public library books and in their belief that the government cannot dictate which books they can and cannot read."); *id*. at ¶ 7 ("Plaintiffs bring this action . . . to ensure that once again there will 'be the fullest practicable provision of material presenting all points of view concerning the problems and issues of our times,' for all Llano County library patrons."). But none of that shows Article III injury absent an allegation that one or more of the plaintiffs intends or desires to read an actual book that is currently unavailable on account of the defendants' conduct. The plaintiffs are not injured by the removal of *I Need a New Butt!* or *Freddie the Farting Snowman* unless they intend to read or check out those books from the library—and the complaint makes no allegation that the plaintiffs intend or desire to read *any* of the books that the defendants have made unavailable to them.

Instead, the complaint alleges only that the plaintiffs have attempted to check out the removed books in the past. *See, e.g.*, Complaint, ECF No. 1, at ¶ 136 ("Without success, Plaintiffs *have attempted* to locate and check out the Banned Books" (emphasis added)); *id*. at ¶ 137 ("Also without success, Plaintiffs *have attempted* to access OverDrive using their Llano County library cards." (emphasis added)). But the plaintiffs are not suing for damages, and they cannot establish standing to seek *prospective* relief unless they "clearly and specifically"[1] allege an ongoing or future injury traceable to the defendants' allegedly unlawful conduct. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 106 (1983). No such allegation can be found in the plaintiffs' complaint, and the plaintiffs never assert that they have a present-day desire or intention to read a particular book that is no longer available at the Llano County library.[2]

---

1. *Whitmore*, 495 U.S. at 155.
2. The plaintiffs falsely claim that our argument "would impose a circular (and nonsensical) rule that a party must continually try to check out banned books or

The plaintiffs also make no attempt to allege ongoing or future injury from any of the defendants' remaining conduct — either in their complaint or in their brief. They complain about the defendants' decision to move "children's books" to the "adult section" of the library,[3] but they do not assert or describe any ongoing or future injury caused by these book transfers. They complain that the defendants targeted books on a list from Representative Krause,[4] but they do not allege a desire to read or obtain those books through the Llano County library system. They complain about a three-day library closure,[5] the restructuring of the library board,[6] the firing of librarian Suzette Baker,[7] and the withholding of employee communications in response to a Public Information Act request,[8] but they allege no ongoing or future injury traceable to those past actions. Finally, the plaintiffs complain about closed-door meetings and alleged violations of the Texas Open Meetings Act (TOMA),[9] but they do not allege a desire to attend future meetings of the library board, and they do not explain how these supposed TOMA violations will injure them in any way.

The plaintiffs must also "clearly and specifically"[10] allege that their injuries are "fairly traceable to the defendants' allegedly unlawful conduct" and "likely to be redressed" by the requested relief. *California v. Texas*, 141 S. Ct. 2104, 2113 (2021).

---

    attend meetings after the books have been removed and access to the meetings has been cut off to establish standing." Pls.' Br., ECF No. 50, at 6. Our contention is only that the plaintiffs must *allege* a desire to read those books and attend those meetings in the future to establish an ongoing "injury" needed to support prospective relief.

3.   *See* Complaint, ECF No. 1, at ¶¶ 53–56.
4.   *See* Complaint, ECF No. 1, at ¶¶ 57–74.
5.   *See* Complaint, ECF No. 1, at ¶¶ 75–77.
6.   *See* Complaint, ECF No. 1, at ¶¶ 98–112.
7.   *See* Complaint, ECF No. 1, at ¶¶ 125–134.
8.   *See* Complaint, ECF No. 1, at ¶¶ 121–124.
9.   *See* Complaint, ECF No. 1, at ¶¶ 113–120.
10.  *Whitmore*, 495 U.S. at 155.

The plaintiffs do not even acknowledge or discuss the traceability or redressability requirements in their complaint or in their brief—and they certainly have not "clearly . . . allege[d] facts demonstrating" these components of standing. *See Spokeo*, 578 U.S. at 338. That alone is fatal at the motion-to-dismiss stage. *See Whitmore*, 495 U.S. at 155–56 ("The litigant must clearly and specifically set forth facts sufficient to satisfy these Art. III standing requirements. A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing."); *see also Spokeo*, 578 U.S. at 338; *Clapper*, 568 U.S. at 414 n.5; *Warth*, 42 U.S. at 518.

## II. The Plaintiffs' Claims Are Moot

Even if the plaintiffs had sufficiently alleged an ongoing or future "injury" from their inability to read particular books that had been formerly available on the library shelves or OverDrive, they are no longer suffering such an injury for two reasons. First, the library has implemented a new online database of books that can be accessed through Bibliotheca and its CloudLibrary app, which includes significantly more books than the erstwhile OverDrive system. *See* Declaration of Ron Cunningham, ECF No. 49-2, at ¶ 10. Second, *every* book that the plaintiffs allege was improperly removed from the library shelves is now available for the plaintiffs to check out directly from the Llano County library system. *See* Declaration of Amber Milum, ECF No. 49-1, at ¶¶ 10–11, 18–19; Supplemental Declaration of Amber Milum, ECF No. 53, at ¶¶ 3–5.[11] This removes any ongoing "injury" that the plaintiffs might have been

---

11. It is appropriate for this Court to consider declarations when a litigant requests a mootness dismissal. *See Carmichael v. United Technologies Corp.*, 835 F.2d 109, 114 n.7 (5th Cir. 1988) ("The use of affidavits in consideration of a Rule 12(b)(1) motion to dismiss for lack of jurisdiction is proper and, unlike a Rule 12(b)(6) motion, does not require notice to the plaintiffs or change the motion into a motion for summary judgment."). The defendants may also raise this argument for the first time in a reply brief because mootness deprives the Court of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 66 n.23 (1997) ("It is the duty of counsel to

suffering from their alleged inability to "access and receive"[12] desired information, and it moots the plaintiffs' claims because they are no longer suffering an "injury" that this court could redress with declaratory or injunctive relief. *See, e.g., New York State Rifle & Pistol Ass'n, Inc. v. City of New York*, 140 S. Ct. 1525, 1526 (2020).[13]

### III. The Complaint Fails To Allege A First Amendment Violation

Public libraries have "broad discretion" to choose the materials that they make available to patrons. *See United States v. American Library Ass'n Inc.*, 539 U.S. 194, 204 (2003) (plurality opinion of Rehnquist, C.J.) ("[P]ublic libraries must have broad discretion to decide what material to provide to their patrons."); *Chiras v. Miller*, 432 F.3d 606, 614 (5th Cir. 2005) ("'Public library staffs necessarily consider content in making collection decisions and enjoy broad discretion in making them.'" (citation and internal quotation marks omitted)). And the Supreme Court and Fifth Circuit

---

bring to the federal tribunal's attention, '*without delay*,' facts that may raise a question of mootness." (citation omitted)).

12. Complaint, ECF No. 1, at ¶ 137.
13. We agree with the plaintiffs that the cancelation of the contract with OverDrive does not "moot" the case. First, mootness can arise only in response to events that post-date the filing of the complaint, and the defendants canceled their contract with OverDrive *before* this lawsuit was filed. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) ("Mootness has been described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." (citations and internal quotation marks omitted)). Second, a court could redress injuries caused by the cancelation of OverDrive by ordering the defendants to enter into a new contract with OverDrive at the earliest possible date. *See Knox v. Serv. Employees Int'l Union, Local 1000*, 567 U.S. 298, 307–08 (2012) ("A case becomes moot only when it is impossible for a court to grant any effectual relief whatever" to the prevailing party." (citation and internal quotation marks omitted)). The defendants respectfully withdraw the mootness argument that appears on pages 5–7 of their motion to dismiss (ECF No. 42).

have made clear that public libraries are not "traditional," "designated," or "nonpublic" forums that trigger rules against content or viewpoint discrimination:

> [F]orum analysis and heightened judicial scrutiny are . . . incompatible with the discretion that public libraries must have to fulfill their traditional missions. Public library staffs necessarily consider content in making collection decisions and enjoy broad discretion in making them.

*American Library Ass'n*, 539 U.S. at 204 (plurality opinion of Rehnquist, C.J.); *see also Chiras v. Miller*, 432 F.3d 606, 614 (5th Cir. 2005) ("'[J]ust as forum analysis and heightened judicial scrutiny are incompatible with the role of public television stations and the role of the NEA, they are also incompatible with the discretion that public libraries must have to fulfill their traditional missions.'" (quoting *American Library Ass'n*, 539 U.S. at 204 (plurality opinion of Rehnquist, C.J.)). So even if one assumes the truth the plaintiffs' allegations, which accuse the defendants of removing books from library shelves based on their content and viewpoints,[14] that does not allege a violation of the First Amendment. A public library needs only to satisfy rational-basis review when choosing the books that will occupy the limited space available on its shelves, and it is rational for a public library to disfavor books with pornographic, scatological, or sexually tinged themes—especially when selecting books for children. *See American Library Ass'n*, 539 U.S. at 204 (plurality opinion of Rehnquist, C.J.)) ("[G]enerally the First Amendment subjects libraries' content-based decisions about which print materials to acquire for their collections to only rational [basis] review." (citation and internal quotation marks omitted)); *Egli v. Chester County Library System*, 394 F. Supp. 3d 497, 504 (E.D. Pa. 2019) ("Libraries are not required to accommodate every book or proposed talk, but instead must determine based on

---

14. *See* Complaint, ECF No. 1, at ¶ 25 ("Defendants acted under color of state law to engage in viewpoint discrimination in violation of the First Amendment by ordering the restriction and removal of library books that they subjectively disagreed with or disliked."); *see also id*. at ¶¶ 142–147.

their professional judgment which materials are deemed to have 'requisite and appropriate quality' to occupy the limited space available." (quoting *American Library Ass'n*, 539 U.S. at 204 (plurality opinion of Rehnquist, C.J.)); *Gay Guardian Newspaper v. Ohoopee Regional Library System*, 235 F. Supp. 2d 1362, 1371 (S.D. Ga. 2002) ("Librarians may ordinarily take some comfort in the fact that . . . their content selection/removal decisions need only have a rational basis."). None of this violates the First Amendment because library patrons remain free to obtain the excluded books from other sources. The plaintiffs' repeated claims that the defendants have "banned" and "censored" books by declining to make them available in a taxpayer-funded public library are hyperbolic and absurd. The First Amendment does not even require the county to establish a public library, and it certainly does not require the county to use taxpayer resources to make available any book that a library patron might want. *See Jackson v. City of Joliet*, 715 F.2d 1200, 1203 (7th Cir. 1983) (Posner, J.) ("[T]he Constitution is a charter of negative rather than positive liberties . . . . The Fourteenth Amendment, adopted in 1868 at the height of laissez-faire thinking, sought to protect Americans from oppression by state government, not to secure them basic governmental services.").[15] The Supreme Court has never extended *Gideon* to the First Amendment, and until it does there is no constitutional violation that arises from a public library's refusal or unwillingness to stock a particular book.

The plaintiffs cite no authority holding that a public library qualifies as a "forum" where rules against content or viewpoint discrimination apply—and they do not even present an argument to this effect. But unless the plaintiffs can establish that the Llano

---

15. *See also DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 196 (1989) ("[T]he Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."); David P. Currie, *Positive and Negative Constitutional Rights*, 53 U. Chi. L. Rev. 864 (1986).

County library system meets the definition of a "forum," they cannot establish a First Amendment claim based on allegations of "viewpoint discrimination." Governments engage in "viewpoint discrimination" all the time when administering public programs or spending taxpayer money, such as funding the National Endowment for Democracy, withholding taxpayer money from Title X projects that promote abortion, and withholding taxpayer money from pornographic or sacrilegious art. *See Rust v. Sullivan*, 500 U.S. 173, 194 (1991) ("When Congress established a National Endowment for Democracy to encourage other countries to adopt democratic principles, 22 U.S.C. § 4411(b), it was not constitutionally required to fund a program to encourage competing lines of political philosophy such as communism and fascism."); *National Endowment for Arts v. Finley*, 524 U.S. 569, 598 (1998) (Scalia, J., concurring in judgment) ("It is the very business of government to favor and disfavor points of view"). All of that is constitutional, so long as the viewpoint discrimination does not occur within the context of a traditional, designated, or nonpublic forum. *See id*. at 598–99. It is also absurd to claim that public libraries are forbidden to engage in viewpoint discrimination when selecting books to place in the children's section, or to remove books from the children's section based on their viewpoints. Do the plaintiffs think that public libraries are powerless to exclude or remove books that encourage children to embrace racism or anti-Semitism, or experiment with illegal drugs?

The plaintiffs rely on *Campbell v. St. Tammany Parish School Board*, 64 F.3d 184 (5th Cir. 1995), and *Board of Education v. Pico*, 457 U.S. 853, 855 (1982) (plurality opinion of Brennan, J.), but those decisions dealt with book removals from public *school* libraries—and each of the opinions made clear that public-school libraries were subject to unique constitutional rules. *See Campbell*, 64 F.3d at 188 ("The *Pico* plurality stressed the 'unique role of the school library' as a place where students could engage in voluntary inquiry."); *Pico*, 457 U.S. at 868 (plurality opinion of Brennan, J.) ("[A]ll First Amendment rights accorded to students must be construed 'in light

of the special characteristics of the school environment.'" (quoting *Tinker v. Des Moines School District*, 393 U.S. 503, 506 (1969)). More importantly, each of those decisions pre-dates *American Library* and *Chiras v. Miller*, which make clear that rational-basis review applies to a public library's book-selection decisions. The plaintiffs claim that the rational-basis review of *American Library* applies only to the "initial selection" of books and not the "removal" of books,[16] but the plurality opinion in *American Library* draws no such distinction, and neither do any of the subsequent cases that apply this ruling. *See, e.g.*, *Egli*, 394 F. Supp. 3d at 504; *Gay Guardian Newspaper*, 235 F. Supp. 2d at 1371 ("Librarians may ordinarily take some comfort in the fact that . . . *their content selection/removal decisions* need only have a rational basis." (emphasis added)). In all events, it is nonsensical to claim that the standard for *removing* a book from the public library should differ from the standard for *excluding* a book. The effect on library patrons is the same, and the First Amendment is neither a ratchet nor an anti-retrogression rule that hinders library administrators from undoing their past decisions.

## IV. The Complaint Fails To Allege A Due-Process Violation

The Due Process Clause of the Fourteenth Amendment says:

> [N]or shall any State deprive any person of life, liberty, or property, without due process of law

U.S. Const. amend. XIV. The plaintiffs must therefore allege that: (1) The defendants are depriving them of "life," "liberty," or "property"; *and* (2) The defendants have done so without providing "due process of law." The due-process claim cannot even reach first base because the plaintiffs have not alleged that the defendants are depriving them of "life," "liberty," or "property."

The plaintiffs obviously have not been deprived of their "life" or "property," as they have no ownership interest in any of the library's books. And they have not been

---

16. Pls.' Br., ECF No. 50, at 12.

"deprived" of their "liberty" either—because the government does not "deprive" anyone of "liberty" by failing to provide a desired book or other resource at taxpayer expense. *See DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 196 (1989) ("[T]he Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."). There is no hearing required before a librarian weeds or removes a book from a library shelf, which occurs continually throughout the year,[17] and there is no hearing required when books are removed for content-based reasons either. The situation is no different from a public golf course deciding to reduce the hours it is open to the public; the decision may reduce the scope of a public service, but it does not traipse on anyone's "liberty."

The plaintiffs want this Court to follow their preferred cases on this issue rather than *Bicknell v. Vergennes Union High School*, 638 F.2d 438, 442 (2d Cir. 1980),[18] but they make no attempt to justify that choice based on the words of the Fourteenth Amendment, and they do not explain how one's "liberty" can be infringed by a public library's removal of a book that it owns. No one would say that a private university "deprives" its library patrons of "liberty" when it weeds or removes a book from the library shelves. No different result should obtain here.

## CONCLUSION

The motion to dismiss should be granted.

---

17. *See* Milum Decl., ECF No. 49-1, at ¶¶ 3–5.
18. Pls.' Br., ECF No. 50, at 17–19.

Respectfully submitted.

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

DWAIN K. ROGERS
Texas Bar No. 00788311
County Attorney

MATTHEW L. RIENSTRA
Texas Bar No. 16908020
First Assistant County Attorney

Llano County Attorney's Office
Llano County Courthouse
801 Ford Street
Llano, Texas 78643
(325) 247-7733
dwain.rogers@co.llano.tx.us
matt.rienstra@co.llano.tx.us

Dated: July 29, 2022

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that on July 29, 2022, I served this document through CM/ECF upon:

Ellen V. Leonida
Matthew Borden
J. Noah Hagey
Sarah Salomon
Pratik Ghosh
Amy Senia
BraunHagey & Borden LLP
351 California Street, 10th Floor
San Francisco, California 94104
(415) 599-0210
leonida@braunhagey.com
borden@braunhagey.com
hagey@braunhagey.com
salomon@braunhagey.com
ghosh@braunhagey.com
senia@braunhagey.com

Ryan A. Botkin
Katherine P. Chiarello
María Amelia Calaf
Wittliff | Cutter PLLC
1209 Nueces Street
Austin, Texas 78701
(512) 960-4730 (phone)
(512) 960-4869 (fax)
ryan@wittliffcutter.com
katherine@wittliffcutter.com
mac@wittliffcutter.com

*Counsel for Plaintiffs*

      /s/ Jonathan F. Mitchell
    Jonathan F. Mitchell
    *Counsel for Defendants*