UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **Leila Green Little**, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>**Llano County**, et al.,<br><br>    Defendants. | Case No. 1:22-cv-00424-RP |

**RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

Table of contents .................................................................................................... i

Table of authorities ................................................................................................ ii

Statement of facts .................................................................................................. 2

Argument ............................................................................................................... 7

    I.  The plaintiffs misstate the standard for a preliminary injunction ................... 8

    II.  The plaintiffs have failed to make a "clear showing" of likely success on merits ........................................................................................................ 9

        A.  The library has not in any way deprived the plaintiffs of their ability to "receive information" or "receive ideas" ........................................... 10

        B.  Even if the library had deprived the plaintiffs of access to the disputed books, its actions would still be entirely constitutional ............ 11

        C.  The plaintiffs have failed to make a "clear showing" that they will succeed in obtaining the relief in their proposed order .......................... 13

    III. The plaintiffs have failed to make a "clear showing" that they will suffer irreparable harm ................................................................................ 14

    IV. The plaintiffs have failed to make a "clear showing" that the balance of equities or the public interest weighs in their favor ................................ 14

Conclusion ........................................................................................................... 15

Certificate of service ............................................................................................ 16

# TABLE OF AUTHORITIES

**Cases**

*Board of Education v. Pico*, 457 U.S. 853 (1982) ................................................. 1, 9

*Califano* v. *Yamasaki*, 442 U. S. 682 (1979) ......................................................... 14

*Chiras v. Miller*, 432 F.3d 606 (5th Cir. 2005) ............................................... 10, 11

*Egli v. Chester County Library System*,
   394 F. Supp. 3d 497 (E.D. Pa. 2019) ............................................................. 12

*Gay Guardian Newspaper v. Ohoopee Regional Library System*,
   235 F. Supp. 2d 1362 (S.D. Ga. 2002) ............................................................ 12

*Mazurek v. Armstrong*, 520 U.S. 968 (1997) (per curiam) ...................................... 8

*Roho, Inc. v. Marquis*, 902 F.2d 356 (5th Cir. 1990) .............................................. 8

*Sund v. City of Wichita Falls*, 121 F. Supp. 2d 530 (N.D. Tex. 2000) .................. 1, 9

*Texas Medical Providers Performing Abortion Services v. Lakey*,
   667 F.3d 570 (5th Cir. 2012) ............................................................................. 8

*United States v. American Library Ass'n Inc.*, 539 U.S. 194 (2003) ............ 9, 11, 12

*Voting for America, Inc. v. Steen*, 732 F.3d 382 (5th Cir. 2013) ............................. 9

The motion for preliminary injunction should be denied out of hand because the plaintiffs can access each of the disputed books from the Llano County library system through one or more of the following three ways: (1) Through Inter Library loan; (2) Through the library's "in-house checkout" system, in which a personal or donated book is made available to library patrons for check out; or (3) Through Bibliotheca/CloudLibrary, the successor to OverDrive that serves as the Llano County library system's online database of books. *See* Declaration of Amber Milum ¶¶ 9–11 (attached as Exhibit 1). So there is no conceivable violation of their supposed "right to receive information"[1] or their "right to receive ideas."[2] The plaintiffs have not identified any book that they are unable to obtain or check out from the Llano County library system, and their claims that the library has "banned" and "censored" the disputed books are hyperbolic and preposterous when each of those books remains available for physical check out and online reading through the defendants' library system.

Nor can the plaintiffs establish any ongoing First Amendment injury from the cancellation of OverDrive, because the library has implemented a new online database of books that can be accessed through Bibliotheca and its CloudLibrary app. *See* Declaration of Ron Cunningham ¶ 10 (attached as Exhibit 2). The Bibliotheca/CloudLibrary database offers access to significantly more books than the erstwhile OverDrive system, while simultaneously providing effective parental controls that were unavailable through OverDrive. *See id.* at ¶ 10. This sinks any possible claim of prospective First Amendment injury that could support a preliminary injunction.

---

1. Mot. for Prelim. Inj., ECF No. 22, at 10 (quoting *Sund v. City of Wichita Falls*, 121 F. Supp. 2d 530, 547 (N.D. Tex. 2000)).
2. Mot. for Prelim. Inj., ECF No. 22, at 10 (quoting *Board of Education v. Pico*, 457 U.S. 853, 867–68 (1982) (plurality opinion)).

Finally, the plaintiffs cannot establish irreparable harm because they can *still* check out and read every one of the disputed books through the Llano County library system—and they cannot establish irreparable harm from the cancellation of OverDrive because the library has adopted and implemented a *more* expansive online database of books through Bibliotheca and its CloudLibrary app. Nor can the balance of equities support a preliminary injunction when the plaintiffs are not being harmed in the slightest. Every one of the disputed books that they want to check out remains available for them to check out, and the library has expanded rather than contracted its online collection of books by switching from OverDrive to Bibliotheca.

## STATEMENT OF FACTS

The plaintiffs contend that the Llano County library system is violating their First Amendment rights and inflicting irreparable harm by removing the following titles from the bookshelves:

1. *Caste: The Origins of Our Discontent* by Isabel Wilkerson;
2. *They Called Themselves the K.K.K.: The Birth of an American Terrorist Group* by Susan Campbell Bartoletti;
3. *Spinning* by Tillie Walden;
4. *In the Night Kitchen* by Maurice Sendak;
5. *It's Perfectly Normal: Changing Bodies, Growing Up, Sex and Sexual Health* by Robie Harris;
6. A read-aloud picture book series including *My Butt is So Noisy!*, *I Broke My Butt!*, and *I Need a New Butt!* by Dawn McMillan;
7. A read-aloud picture book series including *Larry the Farting Leprechaun*, *Gary the Goose and His Gas on the Loose*, *Freddie the Farting Snowman*, and *Harvey the Heart Has Too Many Farts* by Jane Bexley;
8. *Being Jazz: My Life as a (Transgender) Teen* by Jazz Jennings;
9. *Shine* by Lauren Myracle;
10. *Gabi, a Girl in Pieces* by Isabel Quintero; and
11. *Freakboy* by Kristin Elizabeth Clark.[3]

---

3. *See* Day Decl., ECF No. 22-2, at ¶ 4; Jones Decl., ECF No. 22-3, at ¶ 3; Kennedy Decl., ECF No. 22-4, at ¶ 3; Little Decl., ECF No. 22-5, at ¶ 3; Moster Decl., ECF No. 22-7, at ¶ 3; Puryear Decl., ECF No. 22-9, at ¶ 3; Waring Decl., ECF No. 22-11, at ¶ 3.

And each of the plaintiffs has submitted declarations complaining that they "cannot check out" these books and announcing that they "would check out these books" if they were restored to the library shelves.[4]

The plaintiffs' claim that they "cannot check out" these books is false. *See* Milum Decl. ¶¶ 9–10, 18–19. Each of these titles remains available to the plaintiffs to obtain or read through the Llano County library system in at least one the following three ways: (1) Through Inter Library loan; (2) Through the library's "in-house checkout" system, in which a personal or donated book is made available to library patrons for check out even though it does not appear on the shelves; or (3) Through Bibliotheca/CloudLibrary, which serves as the Llano County library system's online database of books. *See* Milum Decl. ¶¶ 9–11 (attached as Exhibit 1). The following chart shows how each of the disputed books can *currently* be obtained or read through the Llano County library system:

| Title | Author | Availability |
|---|---|---|
| *Caste: The Origins of Our Discontents* | Wilkerson, Isabel | Bibliotheca/CloudLibrary |
| *They Called Themselves the K.K.K.: The Birth of an American Terrorist Group* | Bartoletti, Susan Campbell | Inter Library loan |
| *Spinning* | Walden, Tillie | Inter Library loan |
| *In the Night Kitchen* | Sendak, Maurice | Inter Library loan |
| *It's Perfectly Normal: Changing Bodies, Growing Up, Sex and Sexual Health* | Harris, Robie | Bibliotheca/CloudLibrary |
| *My Butt is So Noisy!, I Broke My Butt!, I Need a New Butt* | McMillan, Dawn | Inter Library loan, Physical copies available for in-house checkout |

---

4. *See* Day Decl., ECF No. 22-2, at ¶ 4; Jones Decl., ECF No. 22-3, at ¶ 3; Kennedy Decl., ECF No. 22-4, at ¶ 3; Little Decl., ECF No. 22-5, at ¶ 3; Moster Decl., ECF No. 22-7, at ¶ 3; Puryear Decl., ECF No. 22-9, at ¶ 3; Waring Decl., ECF No. 22-11, at ¶ 3.

| | | |
|---|---|---|
| *Larry the Farting Leprechaun, Gary the Goose and His Gas on the Loose, Freddie the Farting Snowman, Harvey the Heart Has Too Many Farts* | Bexley, Jane | Inter Library loan, Physical copies available for in-house checkout |
| *Being Jazz: My Life as a (Transgender) Teen* | Jennings, Jazz | Bibliotheca/CloudLibrary and one physical copy (Currently checked out and overdue) |
| *Shine* | Myracle, Lauren | Inter Library loan |
| *Gabi, a Girl in Pieces* | Quintero, Isabel | Inter Library loan, and Bibliotheca/CloudLibrary |
| *Freakboy* | Clark, Kristin Elizabeth | Inter Library loan |

Milum Decl. at ¶ 10.

In addition to this present-day availability, a donor has pledged to give physical copies of each of the books listed in the chart for inclusion in Llano County's "in-house checkout" if those books are not already available for checkout through the library's in-house checkout system. *See* Milum Decl. at ¶ 11. The library system has promised to accept this gift and will add each of those titles to its collection of books available for in-house checkout. *See id.* This will ensure that each of the plaintiffs can check out physical copies of each of the disputed books from the Llano County library system without having to use Inter Library loan or Bibliotheca if they find those alternatives inconvenient.[5]

So the plaintiffs not being "denied their right to access" these books, as they assert throughout their brief. *See* Mot. for Prelim. Inj., ECF No. 22, at 1 ("Each moment that Plaintiffs are denied their right to access the banned books, they suffer immediate and irreparable harm."); Milum Decl. ¶¶ 18–19. Nor have the books been "banned" or "censored." The plaintiffs can currently check out physical copies of

---

5.  The defendants will immediately notify the Court when the donor's gift arrives and the books are added to the library's in-house checkout collection. *See* Milum Decl. at ¶ 11.

these books or read online versions, and they will be able to check out physical copies of *every* book listed in the chart as soon as the donor's gift is added to the library's in-house checkout collection. *See id.* at ¶¶ 18–19.

The plaintiffs also gripe about the cancellation of OverDrive, but they ignore the fact that the library has adopted a new and more expansive online database of books to replace the OverDrive system. *See* Cunningham Decl. ¶ 10. None of this is acknowledged or addressed in the motion for preliminary injunction or its supporting declarations, and the plaintiffs make no attempt to explain how the switch from OverDrive to Bibliotheca/CloudLibrary violates the First Amendment or inflicts irreparable harm. Instead, the plaintiffs pretend as though the defendants scrapped OverDrive and replaced it with nothing. *See* Mot. for Prelim. Inj., ECF No. 22, at 7–8; *id.* at 12–13; *id.* at 18; Jones Decl., ECF No. 22-3, at ¶ 5. Kennedy Decl., ECF No. 22-4, at ¶ 4; Little Decl., ECF No. 22-5, at ¶ 12; Waring Decl., ECF No. 22-11, at 7. They do not even assert, let alone demonstrate, that the Bibliotheca/CloudLibrary online database is inferior to OverDrive in any way.

Finally, the plaintiffs' claim that the library system removed the disputed books because of viewpoint or content discrimination or pressure from community activists is false. Each of the books that was removed from the shelves met the library system's established criteria for "weeding," a continual process in which libraries take down books that have declined in popularity, are not being checked out often, or whose condition has deteriorated. *See* Milum Decl. ¶¶ 3–8, 12–16. Each of the books taken from the shelves met the criteria for weeding and would have been removed regardless of the content or viewpoints expressed in those books—and they would have been removed even if no one in the community had ever complained about them. *See* Milum Decl. ¶¶ 6–7 (declaring that the "butt" and "fart" books were weeded "because they were not being circulated sufficiently to warrant keeping them on the shelves, not because of the viewpoints or content expressed in either of those books."); *id.* at

¶ 8 (declaring that *In the Night Kitchen* and *It's Perfectly Normal* were not "in high demand, [and] they were weeded consistent with my normal weeding procedures. I would have weeded each of these books regardless of the viewpoints or content expressed in those books, and I would have done so even if no one in the community had ever complained about them."); *id*. at ¶ 12 (declaring that *Freakboy*, *Shine*, *Caste: The Origins of our Discontents*, *Gabi, a Girl in Pieces*, and *They Called Themselves the K.K.K.: The Birth of an American Terrorist Group* were removed from the shelves because they met the critieria for weeding); *id*. at ¶ 12 ("My decision to weed the six books had nothing to do with the viewpoints or content expressed in any of those books. I would have weeded each of those six books regardless of the viewpoints or content expressed in those books, and I would have done so even if no one in the community had ever complained about them."); *see also id*. at ¶¶ 13–15.

More importantly, the library system *declined* to remove 41 books that that been opposed by members of the community—and they declined to take this step because those books did *not* meet the library's criteria for weeding. When Amber Milum, the director of the Llano County Library System, received the list of objectionable books that had been prepared by Bonnie Wallace, she "reviewed each of the 47 physical books and in the process, [and] I discovered that 6 of the books should be weeded: '*Freakboy*,' '*Shine*,' '*Caste: The Origins of our Discontents*,' '*Gabi, a Girl in Pieces*,' and '*They Called Themselves the K.K.K.: The Birth of an American Terrorist Group*.'" Milum Decl. ¶ 12. As for the remaining 41 books:

> The remaining 41 books did not meet the criteria for weeding and seemed to be relatively popular with our patrons. I therefore decided to leave those 41 books on the shelves so our patrons could continue to check them out.

*Id*. So the plaintiffs' claim that books were removed "based on Defendants' wholly subjective views of the propriety of those books"[6] is patently and demonstrably false. And so is their assertion that the defendants "targeted books with content that conflicted with their personal political and religious beliefs." Mot. for Prelim. Inj., ECF No. 22, at 5.

Many of the plaintiffs' remaining factual assertions are irrelevant to their constitutional claims or the relief requested in their motion for preliminary injunction. The plaintiffs mention a book on critical race theory that was moved from the library shelves and placed behind the front desk,[7] but they are not asking for that book to be returned to the shelves in their proposed order,[8] and they do not assert in their declarations that they have any desire to read or check out that book. The plaintiffs complain about closed meetings held by the library board,[9] but they present no argument for how those closed meetings were unlawful, nor do they explain how they would be likely to succeed on the merits of any such claim. Finally, the plaintiffs complain about the treatment of Suzette Baker,[10] a librarian who was terminated for insubordination, but Ms. Baker is not a party to this case and the plaintiffs are not seeking reinstatement or any type of relief on her behalf. *See* Proposed Order, ECF No. 22-12.

## ARGUMENT

The present-day availability of each of the disputed books—along with the successful implementation of the Bibliotheca/CloudDrive online database—leaves the plaintiffs' motion for preliminary injunction without a leg to stand on. There is no conceivable violation of the plaintiffs' First Amendment rights when they remain able

---

6. *See* Mot. for Prelim. Inj., ECF No. 22, at 5.
7. *See* Mot. for Prelim. Inj., ECF No. 22, at 6.
8. *See* Proposed Order, ECF No. 22-12.
9. *See* Mot. for Prelim. Inj., ECF No. 22, at 8–9.
10. *See* Mot. for Prelim. Inj., ECF No. 22, at 9; Baker Decl., ECF No. 22-1.

to check out or read online *each* of the books that they falsely claim they have been "denied their right to access." Mot. for Prelim. Inj., ECF No. 22, at 1. And the plaintiffs have failed to identify any violation of their constitutional rights that might arise from the library's decision to replace OverDrive with Bibliotheca—especially when Bibliotheca provides the plaintiffs (and everyone else) with access to a *more* expansive database of online books. *See* Cunningham Decl. ¶ 10. Nor can the plaintiffs show "irreparable harm" when they can access each of the disputed books through the Llano County library system, and when they have been given access to a far greater collection of online books than they enjoyed under the OverDrive regime.

## I. THE PLAINTIFFS MISSTATE THE STANDARD FOR A PRELIMINARY INJUNCTION

A preliminary injunction is an "extraordinary remedy," and it may not be granted unless the movant has "*clearly carried* the burden of persuasion on all four requirements." *Texas Medical Providers Performing Abortion Services v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012) (emphasis added); *see also Mazurek v. Armstrong*, 520 U.S. 968, 971, 972 (1997) (per curiam) ("It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." (emphasis in original) (citation and internal quotation marks omitted)). That means the plaintiffs must make: (1) a clear showing that they will likely succeed on the merits; (2) a clear showing that they will suffer irreparable harm absent a preliminary injunction; (3) a clear showing that their injury outweighs any harm that will result if a preliminary injunction is granted; and (4) a clear showing that a preliminary injunction will not disserve the public interest. *See Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990). A failure to present a "clear showing" on any one of the four components compel the court to deny preliminary injunctive relief. *See Lakey*, 667 F.3d at 574.

The plaintiffs refuse to acknowledge the "clear showing" requirement, and they do not even assert that they have "clearly carried" their burden of persuasion on any of the four prongs of the preliminary-injunction test. But the law of the Fifth Circuit requires a "clear showing" from the plaintiffs on *each* of these four requirements. *See Voting for America, Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013) ("This court has repeatedly cautioned that 'a preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements.'" (citation and some internal quotation marks omitted)). The plaintiffs come nowhere close to making a "clear showing" on any of the four components of the preliminary-injunction test.

## II. THE PLAINTIFFS HAVE FAILED TO MAKE A "CLEAR SHOWING" OF LIKELY SUCCESS ON MERITS

The plaintiffs contend that the defendants are violating their First Amendment rights by depriving them of their "right to receive information" and their "right to receive ideas." Mot. for Prelim. Inj., ECF No. 22, at 10 (quoting *Sund v. City of Wichita Falls*, 121 F. Supp. 2d 530, 547 (N.D. Tex. 2000) and *Board of Education v. Pico*, 457 U.S. 853, 867–68 (1982) (plurality opinion)).

This claim encounters two immediate and insurmountable problems. The first problem is that the defendants have *not* deprived the plaintiffs of their ability to receive information or ideas because each of the disputed books remains available for them to check out or read online through the Llano County library system. *See* Milum Decl. ¶¶ 9–10, 18–19. The second problem is that even if the library had completely refused to provide the plaintiffs with access to these books, its actions would *still* be constitutional because public libraries have "broad discretion" to choose the materials that they make available to patrons. *See United States v. American Library Ass'n Inc.*, 539 U.S. 194, 204 (2003) (plurality opinion of Rehnquist, C.J.) ("[P]ublic libraries must have broad discretion to decide what material to provide to their patrons.");

*Chiras v. Miller*, 432 F.3d 606, 614 (5th Cir. 2005) ("'Public library staffs necessarily consider content in making collection decisions and enjoy broad discretion in making them.'" (citation and internal quotation marks omitted)). The plaintiffs have no answer to any of this.

### A. The Library Has Not In Any Way Deprived The Plaintiffs Of Their Ability To "Receive Information" Or "Receive Ideas"

The plaintiffs' entire First Amendment argument rests on a false factual premise: That the defendants have deprived them of access to the books that were removed from the library shelves. *See* Mot. for Prelim. Inj., ECF No. 22 (claiming throughout their brief that the disputed books had been "banned" or "censored"). As has already been explained, each of the disputed books remains available for the plaintiffs to check out or read online through the Llano County library system. *See* Milum Decl. ¶¶ 9–11, 18–19. All they have to do is stop by the reference desk and request the book through Inter Library loan, or ask for the book through the library's "in-house checkout" system. They can also read some (though not all) of the disputed books online through the library's Bibliotheca/CloudLibrary database. *See id.* at ¶ 10. And physical copies of *all* of the disputed books will soon be available for "in-house checkout" when the upcoming donor gift is received and processed. *See id.* at ¶ 11.

The plaintiffs also refuse to deal with the fact that the library's switch from OverDrive to Bibliotheca has *increased* the number of books available in the library's online database. *See* Cunningham Decl. ¶ 10. Instead, their motion and declarations act as though the replacement of OverDrive has permanently deprived them of *any* online-reading option in the Llano County library system.[11] Yet the plaintiffs should be thanking rather than suing the county for implementing this change.

---

11. *See* Mot. for Prelim. Inj., ECF No. 22, at 7–8; *id.* at 12–13; *id.* at 18; Jones Decl., ECF No. 22-3, at ¶ 5. Kennedy Decl., ECF No. 22-4, at ¶ 4; Little Decl., ECF No. 22-5 at ¶ 12; Waring Decl., ECF No. 22-11, at 7.

So none of the plaintiffs' First Amendment claims can even reach first base.

### B. Even If The Library Had Deprived The Plaintiffs Of Access To The Disputed Books, Its Actions Would Still Be Entirely Constitutional

Matters get worse for the plaintiffs as we move from the facts to the law. If we ignore the actual facts and pretend as though the defendants eliminated any possible way for the plaintiffs to check out or read the disputed books through the county's public-library system, the defendants' actions would *still* be entirely constitutional. The Supreme Court's ruling in *United States v. American Library Ass'n Inc.*, 539 U.S. 194 (2003)—which the plaintiffs do not even cite—makes abundantly clear that public libraries "have broad discretion to decide what material to provide to their patrons." *Id.* at 204 (plurality opinion of Rehnquist, C.J.); *see also Chiras v. Miller*, 432 F.3d 606, 614 (5th Cir. 2005) ("'Public library staffs necessarily consider content in making collection decisions and enjoy broad discretion in making them.'" (quoting *American Library Ass'n*, 539 U.S. at 204 (plurality opinion of Rehnquist, C.J.)).[12] *American Library Association* also makes clear that public libraries are not "traditional" or "designated" public forums that trigger rules against content discrimination or viewpoint discrimination:

> [F]orum analysis and heightened judicial scrutiny are . . . incompatible with the discretion that public libraries must have to fulfill their traditional missions. Public library staffs necessarily consider content in making collection decisions and enjoy broad discretion in making them.

*American Library Ass'n*, 539 U.S. at 204 (plurality opinion of Rehnquist, C.J.); *see also Chiras v. Miller*, 432 F.3d 606, 614 (5th Cir. 2005) ("'[J]ust as forum analysis and heightened judicial scrutiny are incompatible with the role of public television

---

12. Chief Justice Rehnquist's opinion in *American Library Association* is a plurality opinion and not a majority opinion, but to the extent that passages from his plurality opinion appear in *Chiras v. Miller*, 432 F.3d 606, 614 (5th Cir. 2005), they have the status of binding precedent in this Court.

stations and the role of the NEA, they are also incompatible with the discretion that public libraries must have to fulfill their traditional missions.'" (quoting *American Library Ass'n*, 539 U.S. at 204 (plurality opinion of Rehnquist, C.J.)). So it would not even matter whether the defendants were motivated by content or viewpoint discrimination when they removed the disputed books from the shelves. They would need only to posit a rational basis for doing so, and a decision to remove books from the shelves in accordance with established "weeding" criteria[13] easily satisfies rational-basis review. *See American Library Ass'n*, 539 U.S. at 204 (plurality opinion of Rehnquist, C.J.)) ("[G]enerally the First Amendment subjects libraries' content-based decisions about which print materials to acquire for their collections to only rational [basis] review." (citation and internal quotation marks omitted)); *Egli v. Chester County Library System*, 394 F. Supp. 3d 497, 504 (E.D. Pa. 2019) ("Libraries are not required to accommodate every book or proposed talk, but instead must determine based on their professional judgment which materials are deemed to have 'requisite and appropriate quality' to occupy the limited space available." (quoting *American Library Ass'n*, 539 U.S. at 204 (plurality opinion of Rehnquist, C.J.)); *Gay Guardian Newspaper v. Ohoopee Regional Library System*, 235 F. Supp. 2d 1362, 1371 (S.D. Ga. 2002) ("Librarians may ordinarily take some comfort in the fact that . . . their content selection/removal decisions need only have a rational basis.").

In all events, the defendants did *not* engage in either viewpoint discrimination or content discrimination, even if the plaintiffs could somehow find a way to show that the rules against viewpoint or content discrimination apply. Amber Milum's declaration conclusively refutes the plaintiffs' insinuations of improper motive, as it painstakingly explains how each of the books that she removed from the shelves met the library's established criteria for "weeding." *See* Milum Decl. ¶¶ 3–8, 12–16. Milum's

---

13. *See* Milum Decl. ¶¶ 3–8, 12–16.

declaration also shows that the library *refused* to remove 41 books that had generated complaints but did *not* meet the criteria for weeding. *See* Milum Decl. ¶ 12 ("The remaining 41 books did not meet the criteria for weeding and seemed to be relatively popular with our patrons. I therefore decided to leave those 41 books on the shelves so our patrons could continue to check them out."). Lest there be any doubt on this score, Ms. Milum has declared in no uncertain terms:

> I would have weeded each of those . . . books regardless of the viewpoints or content expressed in those books, and I would have done so even if no one in the community had ever complained about them.

Milum Decl. ¶ 12; *see also id*. at ¶ 8 (same). So much for the plaintiffs' innuendo about these book removals being driven by the defendants' "subjective viewpoints." Mot. for Prelim. Inj., ECF No. 22, at 11.

Of course, none of this even matters because the defendants have not done *anything* that deprives the plaintiffs of their ability to access *any* book that was previously available to them. But even if the defendants had acted in a manner that cut off the plaintiffs' ability to access or obtain these books through the Llano County library system, the plaintiffs would not even have the beginnings of a First Amendment claim against the county or its officials.

### C. The Plaintiffs Have Failed To Make A "Clear Showing" That They Will Succeed In Obtaining The Relief In Their Proposed Order

The plaintiffs' proposed order goes far beyond demanding the return of the books listed in the plaintiffs' declarations. It also purports to enjoin the defendants from "closing future meetings of the Library Board to members of the public." Proposed Order, ECF No. 22-12. But the motion for preliminary injunction presents no argument for how the closing of these meetings violates the law or inflicts irreparable harm, so the plaintiffs have waived any argument for this relief at the preliminary-injunction stage.

The proposed order also purports to enjoin the defendants from "removing any books from the Llano County Library Service's physical shelves for any reason during the pendency of this action." Proposed Order, ECF No. 22-12. That requested relief is far too overbroad, as it would prevent ordinary weeding and inhibit the library from making room for new items. The plaintiffs have not presented any argument for why they would be entitled to an injunction of that scope. *See Califano* v. *Yamasaki*, 442 U. S. 682, 702 (1979) ("[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs").

### III. The Plaintiffs Have Failed To Make A "Clear Showing" That They Will Suffer Irreparable Harm

The plaintiffs cannot establish irreparable harm because they have no conceivable First Amendment injury, as each of them can *still* check out and read every one of the disputed books through the Llano County library system. The plaintiffs also cannot establish irreparable harm from the cancellation of OverDrive because the library has adopted and implemented a *more* expansive online database of books through Bibliotheca and its CloudLibrary app. Nor have the plaintiffs produced evidence that the defendants are about to deprive them of access to *any* book that they might want to read or obtain through the Llano County library system. Their claims of irreparable harm are chimerical and rest on the same false factual premises as their First Amendment claims.

### IV. The Plaintiffs Have Failed To Make A "Clear Showing" That The Balance Of Equities Or The Public Interest Weighs In Their Favor

Because there is no conceivable harm being inflicted on the plaintiffs—let alone "irreparable" harm—the plaintiffs cannot clearly show that the balance of equities tips in their favor. Nor can the public interest be served by enjoining defendants who have done nothing that even remotely approaches unlawful or unconstitutional conduct. The plaintiffs' arguments on these points rest entirely on their insistence that

the defendants are violating their First Amendment rights, but that claim has been soundly refuted. *See* Part II, *supra*.

## CONCLUSION

The motion for preliminary injunction should be denied.

Respectfully submitted.

| | |
|---|---|
| Dwain K. Rogers<br>Texas Bar No. 00788311<br>County Attorney<br><br>Matthew L. Rienstra<br>Texas Bar No. 16908020<br>First Assistant County Attorney<br><br>Llano County Attorney's Office<br>Llano County Courthouse<br>801 Ford Street<br>Llano, Texas 78643<br>(325) 247-7733<br>dwain.rogers@co.llano.tx.us<br>matt.rienstra@co.llano.tx.us<br><br>Dated: July 20, 2022 | /s/ Jonathan F. Mitchell<br>Jonathan F. Mitchell<br>Texas Bar No. 24075463<br>Mitchell Law PLLC<br>111 Congress Avenue, Suite 400<br>Austin, Texas 78701<br>(512) 686-3940 (phone)<br>(512) 686-3941 (fax)<br>jonathan@mitchell.law<br><br><br><br><br><br><br><br><br>*Counsel for Defendants* |

## CERTIFICATE OF SERVICE

    I certify that on July 20, 2022, I served this document through CM/ECF upon:

Ellen V. Leonida
Matthew Borden
J. Noah Hagey
Sarah Salomon
Pratik Ghosh
Amy Senia
BraunHagey & Borden LLP
351 California Street, 10th Floor
San Francisco, CA 94104
(415) 599-0210
leonida@braunhagey.com
borden@braunhagey.com
hagey@braunhagey.com
salomon@braunhagey.com
ghosh@braunhagey.com
senia@braunhagey.com

Ryan A. Botkin
Katherine P. Chiarello
María Amelia Calaf
Wittliff | Cutter PLLC
1209 Nueces Street
Austin, Texas 78701
(512) 960-4730 (phone)
(512) 960-4869 (fax)
ryan@wittliffcutter.com
katherine@wittliffcutter.com
mac@wittliffcutter.com

*Counsel for Plaintiffs*

Landon A. Wade
Todd A. Dickerson
Leif A. Olson
Office of the Attorney General
P.O. Box 12548 (MC-019)
Austin, Texas 78711-2548
(512) 463-2120 (phone)
(512) 320-0667 (fax)
landon.wade@oag.texas.gov
todd.dickerson@oag.texas.gov
leif.olson@oag.texas.gov

*Counsel for Intervenor-Defendant
State of Texas*

                                                   /s/ Jonathan F. Mitchell
                                                   Jonathan F. Mitchell
                                                   *Counsel for Defendants*