# Exhibit 5

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **Leila Green Little**, et al., <br><br> Plaintiffs, <br><br> v. <br><br> **Llano County**, et al., <br><br> Defendants. | Case No. 1:22-cv-00424-RP |

# THIRD DECLARATION OF AMBER MILUM

1. My name is Amber Milum. I am over the age of 18 and fully competent in all respects to make this declaration.

2. I have personal knowledge of the facts stated in this declaration, and all of these facts are true and correct.

3. The plaintiffs' claim that the Llano Library's in-house check-out program includes only nine of the 17 disputed books is false. *See* Pls.' Br., ECF No. 91, at 13, 22. All 17 of the disputed books are available for check-out through the Llano Library's in-house check-out program.

4. Each of the three "butt" books and each of the four "fart" books had already been added to the Llano library's in-house checkout before the donation of July 21, 2022. I made this clear in my declaration of July 15, 2022. *See* Decl. of Amber Milum, ECF No. 49-1, at ¶¶ 10–11. The donor sent copies of the nine remaining books that the plaintiffs had expressed interest in checking out at the Llano library. There was no need for the donor to provide the "butt" or "fart" books because I had already added those books to the in-house checkout system before receiving the donation of the nine additional books.

5. *Under the Moon: A Catwoman's Tale*, by Lauren Myracle, was not included in the original donation of July 23, 2022, because none of the plaintiffs complained about the removal of that book or expressed interest in checking out that book in their sworn declarations.

6. On October 31, 2022, I received a physical copy of *Under the Moon* from the same donor who sent the nine books on July 21, 2022. I immediately added the book to the Llano library's in-house checkout system, and it has been available for the plaintiffs (and other library patrons) to check out since November 1, 2022.

7. Every one of the 16 remaining disputed books has been available for the plaintiffs (and other library patrons) to check out since July of 2022.

8. This means that the plaintiffs can check out physical copies of each of the 17 disputed books from the Llano County Library System without having use Inter Library loan or Bibliotheca if they find those alternatives inconvenient.

9. The plaintiffs' claim that I "permanently removed all seven [of the butt and fart books] from the Library" is false. *See* Pls.' Br., ECF No. 91, at 2–3. Each of the books remains available for check-out through the Llano library's in-house checkout system. They also remain available to library patrons through Inter Library loan.

10. The plaintiffs' claim that Rochelle Wells and Rhonda Schneider "began repeatedly checking out the Butt and Fart Books, keeping them off the shelves and inaccessible to other library patrons" is false. *See* Pls.' Br., ECF No. 91, at 3. Ms. Wells and Ms. Schneider checked out only two of the three "butt" books (*My Butt Is So Noisy!* and *I Broke My Butt!*), and they never checked out any of the "fart" books. The remaining "butt" book (*I Need a New Butt*) and the four "fart" books were never placed on the shelves and were never checked out by anyone.

11. The plaintiffs' claim that Commissioner Moss "directed" me to "remove the Butt and Fart Books" is false. *See* Pls.' Br., ECF No. 91, at 3. Commissioner Moss never even discussed the "fart" books with me and I never showed those books to him. We discussed only the "butt" books. The plaintiffs' claim that Commissioner Moss "directed" the removal of the "fart" books is an outright falsehood. And their claim that I conceded this on cross-examination when confronted with a handwritten note of my conversation with Commissioner Moss misrepresents my testimony and the contents of that handwritten note. *See* Pls.' Br., ECF No. 91, at 3–4 n.4 (claiming that I "agreed" that Moss "instructed" me to remove both the "fart" books and the "butt" books); Pls.' Ex. 2B (handwritten note); Hr'g Tr. Vol. 1 at 65:10–66:25 (cross-examination testimony concerning the handwritten note). The handwritten note of my conversation with Commissioner Moss mentions only the "butt" books and says nothing about the "fart" books. *See* Pls.' Ex. 2B ("Commissioner Moss came back in to talk to me about the 'butt' books."). Acknowledging the authenticity of this handwritten note in no way concedes that Moss "instructed" me to remove the "fart" books, as the plaintiffs claim. *See* Pls.' Br., ECF No. 91, at 3–4 n.4

12. The plaintiffs' claim that Commissioner Moss "directed" me to remove the "butt" books is also false. Commissioner Moss merely expressed his opinion to me regarding the butt books. He did not think those books should be in the children's section and he said that if it were him he would take them out of the system and for me to pick my battles. Commissioner Moss never ordered or directed me to weed or temporarily remove the butt books (or any other book), and I never conceded on cross-examination that Commissioner Moss had "instructed" or "directed" me to remove those books. *See* Hr'g Tr. Vol. 1 at 65:7–66:25.

13. The plaintiffs' claim that Commissioner Moss "ordered the removal" of *It's Perfectly Normal* from the Llano library is false. *See* Pls.' Br., ECF No. 91, at 4. Commissioner Moss never ordered the weeding or even the temporary removal of any book in the Llano library. Nor did Commissioner Moss suggest or recommend that *It's Perfectly Normal* be weeded or temporarily removed.

14. The plaintiffs' claim that Judge Cunningham "directed" me to weed the "butt" and "fart" books is false. *See* Pls.' Br., ECF No. 91, at 3. Judge Cunningham recommended only that I *temporarily* remove those books from the shelves. *See* Pls.' Ex. 2A ("Amber, I am still receiving calls, letters and emails concerning the Farts and Butts books. I think it is best to remove these books from the shelves *for now*." (emphasis added)). He never directed me to weed those books, and my decision to weed those books was entirely my own.

15. I alone made the decisions to weed the 17 disputed books in this case. No other defendant in this case, including Bonnie Wallace, Rochelle Wells, Rhonda Schneider, Jerry Don Moss, or Ron Cunningham, has ever weeded a book from Llano library or directed me to weed or permanently remove a book from the library. Nor has any of these individuals pressured or attempted to pressure me to weed or permanently remove any book from the library system.

16. The plaintiffs' repeated claims that the "defendants" (plural) weeded or temporarily removed books from the Llano library are false. I am the only defendant who weeded the 17 disputed books from the Llano library, and I am the only defendant who temporarily removed any of those books from the library shelves.

17. I have explained in my previous declarations and in my courtroom testimony my reasons for weeding 16 of the 17 the disputed books. *See* Milum Decl., ECF No. 49-1, at ¶¶ 6–8, 12–16; Hr'g Tr. Vol. 2 at 95:16–108:9. I did not previously explain my reasons for weeding *Under The Moon: A Catwoman's Tale* because the plaintiffs have not expressed any desire to check out that book in their sworn declarations or

courtroom testimony. *See* Day Decl., ECF No. 22-2, at ¶ 4 (no mention of *Under the Moon*); Jones Decl., ECF No. 22-3, at ¶ 3 (same); Kennedy Decl., ECF No. 22-4, at ¶ 3 (same); Little Decl., ECF No. 22-5, at ¶ 3 (same); Moster Decl., No. 22-7, at ¶ 3 (same); Puryear Decl., ECF No. 22-9, at ¶ 3 (same); Waring Decl., No. 22-11, at ¶ 3 (same); *see also* Hr'g Tr. Vol. 2 at 28:6–70:20 (testimony of plaintiff Leila Green Little, which never mentions *Under the Moon* or expresses any desire to check it out).

18. I weeded the 10 books that were permanently removed in the fall of 2021 because, in my judgment, these books met the criteria for weeding under the CREW and MUSTIE factors.[1] *See* Milum Decl., ECF No. 49-1, at ¶¶ 8, 12–16; Hr'g Tr. Vol. 2 at 95:16–106:20 (explaining the reasons for weeding *Freakboy*, *Being Jazz: My Life as a Transgender Teen*, *Gabi, A Girl In Pieces*, *They Called Themselves The KKK: The Birth Of An American Terrorist Group*, *Spinning*, *Shine*, *Caste: The Origins of Discontent*, *It's Perfectly Normal*, and *In The Night Kitchen*).

19. I weeded *Under The Moon* because it wasn't getting checked out enough. Although the chart in Exhibit 52 indicates that this book was checked out four times since it was introduced in 2019, it was in reality checked out only twice: once in October of 2019, and once more in June of 2021. The two remaining "check outs" included: (1) An "in-library check in" of June 22, 2021, which occurs when library staff finds a book lying around or misplaced, and brings it to the library desk for check in to ensure that it's not currently checked out before restoring the book to its proper place on the shelves. Although this gets recorded as a "check out/check in," it does not reflect an actual check out by a library patron; and (2) A staff member (Miryam Bailey) checked out and checked in *Under the Moon* on the same day it got weeded, for reasons unbeknownst to me. This too does not signify a checkout by a library patron. So the book had been checked out only twice by library patrons in a three-

---

1. CREW is an acronym that stands for Continuous Review, Evaluation, and Weeding.

year period. In addition, *Under the Moon* remains available to library patrons through inter-library loan, so it satisfies both the "Irrelevant" and "Elsewhere" criteria for weeding.

20. I have also explained my reasons for weeding the "butt" and "fart" books in August of 2021. First, no one had asked for or inquired about the two "butt" books that were continuously being checked out by Rochelle Wells and Rhonda Schneider. *See* Hr'g Tr. Vol. 2 at 106:24–25 ("[N]obody else asked for it."); *id*. at 107:8–9. (2) Second, the actions of Ms. Wells and Ms. Schenider would render the "butt" and "fart" books inaccessible to other library patrons if they were placed on the shelves or remained in the system. *See* Hr'g Tr. Vol. 2 at 106:21–107:24. Finally, the "butt" and "fart" books were trivial and "didn't really meet anyone's needs," and they remained available to patrons through interlibrary loans, so the books satisfied the "Trivial" and "Elsewhere" factors for weeding under the MUSTIE guidelines. *See* Hr'g Tr. Vol. 2 at 107:25–108:9; *id*. at 107:12 ("[I]t was just silly trivial books"); *id*. at 107:2–3 ("They were more trivial books, anyway.").

21. The plaintiffs' brief claims my stated reasons for weeding the disputed books are "pretextual" and "manufacture[d] . . . after the fact." Pls.' Br., ECF No. 91, at 19–20. The plaintiffs' accusation is false and defamatory. I told the truth in my declarations and courtroom testimony, and my stated reasons for weeding the books were my actual reasons and motivations for weeding the books at the moment the decision was made. There is nothing "pretextual" about my testimony, and nothing in my testimony was "manufacture[d] . . . after the fact."

22. The Llano library system's criteria for weeding appears on a chart on the first page of Plaintiffs' Exhibit 23, which is attached to the defendants' post-hearing brief as Exhibit 1. Under this chart, a book's eligibility for weeding depends on the Dewey class.

DocuSign Envelope ID: AACD1E3F-5DB5-42BF-AEE8-9E0425811DD0
Case 1:22-cv-00424-RP   Document 94-6   Filed 12/30/22   Page 8 of 14

23. If one looks at the second line on the left-half columns in Exhibit 1, for example, a book in Dewey class 020 would is accompanied by the entry 10/3/MUSTIE, where the first number stands for "age," the second number "years since last circulation," and the third category "condition." That means a book in Dewey class 020 (or any other category marked with 10/3/MUSTIE) becomes eligible for weeding if: (1) It is more than 10 years old; (2) It has been three years or since its last circulation; or (3) It qualifies for weeding the MUSTIE criteria. Only one of these three categories needs to be met to make a book in that Dewey range eligible for weeding.

24. The MUSTIE factors stand for Misleading, Ugly, Superseded, Trivial, Irrelevant, or Elsewhere. It is permissible and sometimes prudent for a librarian to weed a book based on the presence of a single MUSTIE factor, such as books that are seriously damaged (Ugly), that have been replaced by a new edition in the library (Superseded), or that haven't been checked out in 10 years (Irrelevant). But when a book only barely meets a single MUSTIE factor, or if the issue with the book is a relatively minor one, a librarian will often (but not always) look for the presence of an additional MUSTIE factor before deciding to weed the book.

25. The plaintiffs' brief falsely claims that I "agreed" with the claim that "historically the Llano Library looked for two or three MUSTIE criteria to be satisfied for weeding eligibility" when testifying at the hearing last October. *See* Pls.' Br., ECF No. 91, at 7. I said nothing of the sort in my testimony, and the statement they attribute to me is false in any event. As I mentioned in the previous paragraph, it is permissible and sometimes prudent for a librarian to weed a book based on the presence of a single MUSTIE factor, and the plaintiffs are wrong to assert that Llano library "historically" has weeded books only when two or three MUSTIE criteria are satisfied.

26. The plaintiffs' brief falsely claims "the CREW Manual" states that books are to remain on shelves unless they do not circulate 'for 3–5 years.'" The CREW Manual says no such thing, and the document that the plaintiffs cite to support this claim is not the CREW Manual. The weeding chart used by the Llano County library system specifically allows Juvenile Fiction and Young Adult Fiction to become eligible for weeding after *two* years since last circulation, and many of the 17 disputed books (including *Freakboy*, *Shine*, and *Gabi, a Girl in Pieces*) fall into those categories.

27. At the hearing last October, Tina Castelan testified that *It's Perfectly Normal* was improperly weeded "because its last checkout was in 2018." Hr'g Tr. Vol. 1 at 37:15. Castelan is wrong. *It's Perfectly Normal*'s Dewey class is 613, and books in that Dewey class become eligible for weeding after three years under our library's CREW chart. *See* Ex. 1. *It's Perfectly Normal* was last circulated on September 22, 2018, and it was weeded on October 12, 2021—more than three years after its last circulation date.

28. Castelan also testified that *Gabi, a Girl in Pieces* was improperly weeded "because [it's] last checkout was 2018 and we've had it since 2016." Hr'g Tr. Vol. 1 at 44:12–14. Castelan is wrong. *Gabi, a Girl in Pieces* is a Young Adults book, which becomes eligible for weeding two years after its last circulation or three years after it was first acquired. *See* Ex. 1. *Gabi, a Girl in Pieces* qualified for weeding under either critierion. Castelan's claim that I violated library policy and CREW/MUSTIE criteria by weeding this book is false.

29. Castelan also testified that she would not have weeded *Being Jazz: My Life as a Transgender Teen*, even though it hadn't been checked out since 2017, because "we only have one or two books that are about this subject." Hr'g Tr. Vol. 1 at 42:25–43:1. Castelan's statement is false. The Llano library system has no fewer than 10 books on the subject of transgender youth available to library patrons, in addition to

the copy of *Being Jazz* at the Kingsland library that I did not weed. Those books include:

- *Beyond Magenta: Transgender Teens Speak Out*, by Susan Kuklin, available at Llano library

- *Some Assembly Required: The Not-So-Secret Life of a Transgender Teen*, by Arin Andrews, available at Llano library

- *Light from Uncommon Stars*, by Ryka Aoki, available at Llano library

- *Unconditional: A Guide to Loving and Supporting Your LGBTQ Child*, by Telaina Eriksen, available at Llano library

- *Far From the Tree: Parents, Children and the Search For Identity*, by Andrew Solomon, available at Llano library

- *Evolution's Rainbow: Diversity, Gender, and Sexuality in Nature and People*, by John Roughgarden, available at Llano library

- *Irreversible Damage: The Transgender Craze Seducing Our Daughters*, by Abigail Shier, available at Llano library

- *Detransition, Baby: A Novel*, by Torrey Peters, available at Kingsland library

- *When The Moon Was Ours*, by Anna Marie McLemore, available at Kingsland library

- *Cemetery Boys*, by Aiden Thomas, available at Kingsland library

30. The plaintiffs' brief claims that "There is no Library policy, or factor under CREW or MUSTIE, by which new books may be weeded before they make it into circulation." Pls.' Br., ECF No. 91, at 8. That is false. A new book that has yet to be placed on the shelves may be weeded consistent with the CREW/MUSTIE criteria if

a librarian concludes that it is "Trivial" and available "Elsewhere," as I did with *I Need a New Butt* and each of the "fart" books.

31. The plaintiffs' brief claims that *It's Perfectly Normal* "was not eligible to be weeded" because it qualifies as a "special topic book." Pls.' Br., ECF No. 91, at 9. These claims are false. *It's Perfectly Normal* is not a "special topic book," and sex-education books such as *It's Perfectly Normal* are not considered "special topic books." And "special topic books" are not ineligible for weeding, as the plaintiffs claim. A so-called special topic book may still be weeded if it meets the CREW and MUSTIE criteria, and a librarian must use her own judgment and discretion in deciding whether to weed or retain a so-called special topic book that qualifies for weeding under CREW and MUSTIE.

32. The plaintiffs' claim that I have left "approximately 5,800 titles" on the shelves that had not been checked out in the previous three years is false. *See* Pls.' Br., ECF No. 91, at 10. I became the system director for the Llano County library system on February 1, 2021. I have not yet had the opportunity to conduct a thorough weed of the library shelves since becoming system director, and we stopped weeding entirely in late 2021. The library system has been understaffed (and therefore under-weeded) for years, which is why there are so many books on the shelves that should be weeded but have not yet been. I did not make any decision to "leave" those 5,800 titles on the shelves or allow those 5,800 books to survive a weeding process, as the plaintiffs insinuate in their brief.

33. The plaintiffs falsely claim that I admitted on the witness stand that there was "no need to weed books in November of 2021" because the Commissioners Court suspended all new book purchases a month earlier. *See* Pls.' Br., ECF No. 91, at 10 ("[B]y Milum's own admission, there was no need to weed books in November 2021 because the Commissioners Court suspended all new purchases a month earlier." (citing Hr'g Tr. Vol. 2 at 120:25–121:10)). That is a misrepresentation of my

testimony. I was asked whether the weeding in November of 2021 was done "to make room for new books," and I acknowledged that it was not. *See* Hr'g Tr. Vol. 2 at 121:6–10 ("Q. So when you did the weeding based on Ms. Wallace's list that was e-mailed to you by your boss, you weren't doing that to make room for new books because you weren't allowed to order new books, correct? A. Right."). I never said that there was "no need to weed books" at that time. Weeding is needed regardless of whether new books are coming in because: (1) Shelf space costs money; (2) The presence of unused books frustrates and distracts library employees and patrons who must sift through the unnecessary clutter; (3) Weeding helps librarians identify holes in our collection and understand the community's desires and needs. All of this is explained on pages 22–27 the slideshow that the plaintiffs submitted as Exhibit 23.

34. The plaintiffs' brief complains that the in-house library system has "only one copy" of the disputed books, and that the single copy is located "only at the Llano branch." *See* Pls.' Br., ECF No. 91, at 22. That was equally true before the books were weeded—we had a single copy of each book available for checkout at the Llano library.

35. The plaintiffs' claim that I "removed *In The Night Kitchen* from the library system because it includes illustrations of a naked toddler" is false. *See* Pls.' Br., ECF No. 91, at 4. My decision to *pull* the book *for review* (*i.e.*, to *temporarily* remove the book) was because of the naked-toddler pictures, as Judge Cunningham had instructed me to pull from the shelves and review all books with nudity. But my decision to weed the book (*i.e.*, to "remove the book from the library system") had nothing whatsoever to do with the content of the book or the pictures of the naked toddler, and I would have weeded *In The Night Kitchen* even if there had been no nudity or drawings of a naked toddler.

36. I have never in my entire career weeded a book because of its viewpoints, and I have never considered the content of a book when making a weeding decision

except to the extent that the MUSTIE factors might require me to consider whether a book should be considered "misleading," "superseded," "trivial," or "irrelevant." I have no hostility, antipathy, or opposition of any type to the presence of library books discussing critical race theory or LGBTQ issues, regardless of the viewpoints expressed in those books, and the Llano library system has many books on these topics. Nor do I have any hostility, antipathy, or opposition of any type to the presence of library books containing nudity, so long as the depictions are lawful (*i.e.*, no child pornography or obscenity) and intended to serve educational rather than pornographic purposes. I do not ever allow my personal views or beliefs to influence my weeding decisions because a library exists to serve the community, and our patrons have diverse beliefs and tastes and reading habits. For the plaintiffs to accuse me of weeding books because I disapprove of nudity, critical race theory, or LGBTQ content is false and defamatory.

37.  I did not consider any of the 17 books that I weeded to be pornographic or in any way inappropriate for a public library. I weeded those books solely based on my application of the CREW/MUSTIE factors.

38.  The plaintiffs accuse me of weeding the books that appeared on Bonnie Wallace's list because I disagreed with the "viewpoints" or "positions" expressed in any of those books. *See* Pls.' Br., ECF No. 91, at 16. The plaintiffs' accusation is false. I did not read any of those books before weeding them, and I am not even aware of the "viewpoints" or "positions" (if any) that might be expressed in any of those books.

39.  The plaintiffs' claim that I "removed" those books "because they were on the Wallace list" is misleading. *See* Pls.' Br., ECF No. 91, at 17. My decision to pull those books for review (*i.e.*, to *temporarily* remove the book) was because they appeared on the Wallace list, but my decision to weed the books (*i.e.*, to *permanently* remove them) was *solely* because I determined they met the criteria for weeding. The vast majority of books on Bonnie Wallace's list were returned to the shelves because

I concluded that they did *not* meet the criteria for weeding. The plaintiffs' statement implies that I *weeded* the books because they appeared on Bonnie Wallace's list, and that is categorically false.

This concludes my sworn statement. I declare under penalty of perjury that the foregoing is true and correct.

Dated: 12/30/2022

DocuSigned by:

*Amber Milum*

24504D1FCF0449A...

AMBER MILUM