**From:** Ellen Leonida Leonida@braunhagey.com
**Subject:** RE: post-hearing brief
**Date:** January 11, 2023 at 2:38 PM
**To:** Jonathan Mitchell jonathan@mitchell.law
**Cc:** Max Bernstein bernstein@braunhagey.com, Matt Rienstra matt.rienstra@co.llano.tx.us, Dwain K. Rogers drogers@co.llano.tx.us, Maria Calaf mac@wittliffcutter.com, katherine@wittliffcutter.com, Kayna Levy kayna@wittliffcutter.com, Shannon Morrissey Morrissey@braunhagey.com, Ryan Botkin ryan@wittliffcutter.com

Counsel,

We are in receipt of your email and will respond early next week.

Best,
Ellen Leonida

B R A U N H A G E Y  &  B O R D E N  LLP
Direct:  (415) 684-7285
braunhagey.com/impact

---

**From:** Jonathan Mitchell <jonathan@mitchell.law>
**Sent:** Monday, January 9, 2023 11:46 PM
**To:** Ellen Leonida <Leonida@braunhagey.com>
**Cc:** Max Bernstein <bernstein@braunhagey.com>; Matt Rienstra <matt.rienstra@co.llano.tx.us>; Dwain K. Rogers <drogers@co.llano.tx.us>; Maria Calaf <mac@wittliffcutter.com>; katherine@wittliffcutter.com; Kayna Levy <kayna@wittliffcutter.com>; Shannon Morrissey <Morrissey@braunhagey.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** Re: post-hearing brief

**\*\*\* EXTERNAL MESSAGE \*\*\***

Counsel:

We have a responsibility as officers of the court to ensure that Judge Pitman is presented with a truthful and accurate recitation of the factual record, and to ensure that the court is not misled by any of the representations that appear in our briefs given that its ruling is likely to appealed. We should be working cooperatively toward that end.

We are all in agreement that the brief you submitted on December 9, 2022, contains factual assertions that are untrue and that lack evidentiary support. It was entirely appropriate for us to reach out to you and ask that you correct these falsehoods, in an attempt to avoid the need to serve a Rule 11 motion. We are also in agreement that your reply brief of January 6, 2023, corrects at least some of the errors in your previous brief.

Our disagreements concern only the extent to which your brief of December 9, 2022, contains factual contentions that lack evidentiary support. You have conceded that your brief of December 9, 2022, was factually incorrect when it stated that: (1) the in-house library check-out system contained only nine books; and (2) It's Perfectly Normal had been checked out within the three-year before it was weeded. Your reply brief corrected each of these false factual assertions, for which we are appreciative. You have also acknowledged over e-mail that your brief of December 9, 2022, was wrong to claim that Wells and Schneider had been continuously checking out the "fart" books, which were

never placed on the shelves.

We continue to believe, however, that your brief of December 9, 2022, as well as your reply brief on January 6, 2023, contains other factual contentions that are false and that lack evidentiary support. You are obligated to correct or withdraw these statements, which can be done by filing an errata sheet or a letter to the court. You cannot continue to "advocate" these documents as they are currently written consistent with your Rule 11 obligations.

Ms. Leonida has responded to each of our objections in the e-mail below. My responses to Ms. Leonida's discussion appear in red text below.

The bottom line is that we remain at loggerheads on all but (1), (2), and (8) of the 12 objections that are discussed below. There are also the four objections that we raised to the factual assertions in your reply brief, which we discussed in our e-mail of 10:53 a.m. (pacific time) this morning. So these 13 issues remain unresolved.

I would like to resolve these issues in the most professional and cooperative manner possible and do everything we can to avoid the need for a Rule 11 motion. I propose that we take the following steps:

(1) You agree to file a letter or errata sheet with the court that corrects the factual misstatements that you do not contest yet remain uncorrected. These include: (a) Your claim that Wells and Schneider had been continuously checking out the "fart" books, which were never on the shelves (you claim to have corrected this in your reply brief but I did not see it); and (b) Your statement that falsely equates Dawn Vogler's slideshow with "the CREW manual." If you wish to concede or correct any of the other factual misstatements in this letter to the court, you may do so but we will leave that for you to decide.

(2) We will then ask the court for leave to file a short sur-reply explaining: (a) our objections to what we regard as the false factual statements in your reply brief; (b) a brief explanation of our efforts to resolve our disagreements over the remaining factual claims in your brief of December 9, 2022, that we continue to regard as false; and (c) a short refutation of your false claim in the reply that we are arguing or implying that this case or the motion for PI are "moot." (We made abundantly clear at the PI hearing that the in-house library does not "moot" anything, and we are not arguing or insinuating that there is any mootness issue in our written submission.)

You agree not to oppose the filing of this sur-reply (which we will show you in advance) and if the Court grants the motion and accepts our sur-reply, that will obviate the need to serve a Rule 11 motion.

Please let us know what you think of this.


—Jonathan

On Jan 9, 2023, at 10:56 AM, Ellen Leonida <Leonida@braunhagey.com> wrote:

Counsel,

As you are no doubt aware, a "Rule 11 violation is a serious thing, and an accusation of such wrongdoing is equally serious." *Intell. Ventures II LLC v. FedEx Corp.*, No. 2:16-CV-00980-JRG, 2019 WL 5784171, at *6 (E.D. Tex. Mar. 28, 2019). "Rule 11 motions should not be made or threatened for minor, inconsequential violations of the standards prescribed by subdivision (b). They should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes. Nor should Rule 11 motions be prepared to emphasize the merits of a party's position, to exact an unjust settlement, to intimidate an adversary into withdrawing contentions that are fairly debatable, to increase the costs of litigation, to create a conflict of interest between attorney and client, or to seek disclosure of matters otherwise protected by the attorney-client privilege or the work-product doctrine." Fed. R. Civ. P. 11 advisory committee's note (1993 Amendments).

Your January 4 email and your post-hearing brief, both of which unjustifiably accuse Plaintiffs' counsel of misconduct, run afoul of both Rule 11 and the Texas Lawyer's Creed. See Texas Lawyer's Creed—A Mandate For Professionalism § III.10 (imposing an ethical duty to not, "without good cause, attribute bad motives or unethical conduct to opposing counsel nor bring the profession into disrepute by unfounded accusations of impropriety" and to "avoid disparaging personal remarks or acrimony towards opposing counsel, parties and witnesses.")

We address your remaining points in turn and believe this should put the issue to bed.

(1) Your claim that the in-house checkout system offers only 9 of the 17 disputed books. My understanding is that you will acknowledge in your reply that the "butt" and "fart" books were indeed included in the in-house checkout system from the get-go, and if so that obviates our objection.

Response: This was an error and, as I told you during out phone conversation, we will correct the statement in our reply.

<span style="color:red">Thank you for correcting this.</span>

(2) Your claim on pages 2–3 that Amber Milum "permanently removed" the butt and fart books "from the Library." I think this statement was based on your belief that the in-house library didn't include the butt and fart books. But the statement is untrue; Milum didn't permanently remove those titles from

the library, as they are available at the library through its in-house checkout system.

Response: Our position is that books that were removed from shelves, removed from the library's catalog, and kept completely hidden from all library patrons, can be considered "permanently removed" from the library1=2

Because you have admitted in your reply brief that each of the "butt" and "fart" books has been available for in-house check out, we do not think this statement runs the risk of misleading the court, even though it remains false. So we will drop our objections to this misstatement.

We think it would be helpful to the Court if you corrected or clarified this statement, but we will you defer to you on that.

(3) Your claim on page 3 that Rochelle Wells and Rhonda Schneider "began repeatedly checking out the Butt and Fart books, keeping them off the shelves and inaccessible to other library patrons." Wells and Schneider never checked out any of the "fart" books, and they checked out only two the three "butt" books. The remaining books were never placed on the shelves and were never checked out. The record is that they checked out the Butt books (no mention of which) but is silent on whether they also checked out the Fart books.

Response: We will clarify in reply that Wells and Schneider only checked out the available Butt Books, as the remaining Butt and Fart Books had yet to hit shelves, but Milum submitted a sworn statement that once those books were entered into the system, "they would have the same fate" as the first two Butt Books. First Milum Decl. ¶ 7.

I have read the reply brief twice but I do not see this correction. Am I missing something?

(4) Your characterization of Castelan's and Milum's testimony on page 7. Castelan never said that "historically the Llano Library looked for two or three MUSTIE criteria to be satisfied for weeding eligibility" and your claim that "Milum agreed with that assessment" is a misrepresentation of Milum's testimony, for the reasons we explained on page 15 of our brief.

Response: Testimony at the hearing established that Milum and Castelan were the only librarians who weeded books at the Llano library, and both swore under oath that they would not weed books unless they met one or more MUSTIE criteria. Hr'g Tr. Vol. 1 at 21:17-21 (Castelan's testimony that she weeded books only if they met two-to-three MUSTIE factors); Milum Dep.

>Tr. at 24:5-10 (agreeing that decision to weed "are based on some combination of [the MUSTIE] criteria; that is, an item will probably not be discarded based on meeting only one of these criteria); *id.* at 69:10-13 (agreeing that "any one [MUSTIE] factor isn't enough to remove a book").

Your brief says that Castelan testified that "historically the Llano Library looked for two or three MUSTIE criteria to be satisfied for weeding eligibility." That statement is false. Castelan did not say anything about the Llano library's historical practices; she described only her own weeding practices. "So **my** minimum number was always two to three."

Nor did Milum express "agreement" that Llano library "historically . . . looked for two or three MUSTIE criteria to be satisfied for weeding eligibility," either in her deposition or courtroom testimony.

Your brief is making a claim about Llano library's "historical" practices, not the individual practices of Castelan and Milum. Your claim is false and unsupported by anything that Castelan or Milum said.

>(5) On page 7, your claim that Castelan "reviewed" each of the disputed books is unsupported (as far as I can tell). I couldn't find anything in Castelan's testimony where she claims to have reviewed each of the disputed books.
>
>Response: Castelan reviewed each of the Banned Books on the stand and explained whether they were properly weeded.

I attended the hearing and sat through Castelan's testimony, and she did not "review" the books themselves while she was on the witness stand. She did not have copies of the books while testifying.

>(6) Your claim that "Castelan testified that all but one of the Banned Books were weeded improperly and contrary to Llano County Library policies" is untrue. Castelan admitted that the weeding of Being Jazz "could have been" weeded under Llano County Library policies but that she personally would have left in in. See Hr'g Tr. Vol. 1 at 42:14–19.
>
>Response: Castelan testified that she would not have weeded this book pursuant to Llano County Library policies.

Castelan testified that SHE would not have weeded the book. She did not testify that Milum acted "improperly" or "contrary to Llano County Library policies" in weeding this book. Castelan specifically acknowledged that the book "could have been" weeded

pursuant to library policy and CREW and MUSTIE criteria. *See* Hr'g Tr. Vol. 1 at 42:14–19.

The statement in your brief is false.

> (7) Your claim that "Defendants did not provide a single reason under CREW or MUSTIE justifying the removal of the Fart Books and I Need a New Butt" is untrue. Milum did provide reasons on the witness stand, and said that they qualified for weeding under the "Trivial," "Irrelevant," and "Elsewhere" criteria. See Hr'g Tr. Vol. 2 at 107:8–9. You can disagree with those reasons or think they're pretextual, but it's not true to say that the Defendants did not provide a reason under CREW or MUSTIE.
>
> Response:  Milum provided two sworn statements, was deposed, and testified on the first day of the hearing (including being questioned by you regarding the reason that she weeded the Butt and Fart Books) and she at no time provided any reason under CREW or MUSTIE that supported weeding the Butt and Fart Books.  The third time she testified, on Monday, she referred to those books as "silly, trivial." Hr'g Tr. Vol. 2 at 107:8-9. However, the testimony that you cite does not reference the "Trivial" MUSTIE criteria, and any testimony to that end would be false, because trivial under MUSTIE means something different than "silly."

Milum specifically testified that the "butt" and "fart" books met the "Trivial" criterion for weeding. *See* Hr'g Tr. Vol. 2 at 108:6–9 ("Q. . . . So how many criterion total did these books qualify for? A. Trivial, irrelevant, it didn't really meet anyone's needs and elsewhere.").

You can disagree with Milum's assessment or explain to the court why you think her testimony on this point is not credible.

But your claim that the defendants "did not provide a single reason under CREW or MUSTIE justifying the removal of the Fart Books and I Need a New Butt" is false. Milum provided reasons under CREW and MUSTIE for the removal of those books: "Trivial," "Irrelevant," and "Elsewhere."

> (8) Your claim on page 9 that *It's Perfectly Normal* "was checked out within three years of its removal" is incorrect. Exhibit 52 shows that the last checkout was September 22, 2018, and it was weeded on October 12, 2021. That's more than three years (though barely).
>
> Response: It was checked out within three years and twenty days of being

> Response: It was checked out within three years and twenty days of being weeded, and we will clarify that in reply.

Thank you for correcting this.

> (9) You claim on page 9 that *It's Perfectly Normal* could not be weeded because it qualifies as a "special topic book." Castelan never testified or opined that It's Perfectly Normal qualifies as a "special topic book," nor did she testify that It's Perfectly Normal (or special topic books) are "not eligible to be weeded."
>
> Response: Castelan testified that *It's Perfectly Normal* was the "only book of its category that is as extensive in its information that it gives," Hr'g Tr. Vol. 1 at 37:11-19, which brings it within Ms. Castelan's definition of "special topic books," *id.* at 22:10-16.

Castelan's definition of "special topic books" is as follows: "Special topic books are books that we don't necessarily have a demand for but that it is better that we have them when we don't need them than to need them and we don't have them. And so, books like grief counseling for children, anything in the LGBTQ realm that even though nobody's asking for them, it's good to have them available when we need them."

There is nothing in that statement claiming that a book that is the "only book of its category that is as extensive in its information that it gives" qualifies as a "special topic book."

Your claim that Castelan testified that "specific topic books" are "not eligible to be weeded" is also false. She said no such thing anywhere in her testimony.

> (10) Your statement on page 10 that incorrectly equates Dawn Vogler's slideshow with "the CREW manual."
>
> Response: The presentation made by Dawn Vogler was produced by Milum in discovery in this case as a document that is relevant to the restriction and removal of books in the Llano County Library. Milum's response to RFP No. 4. This presentation, which trains Llano County librarians on how to weed, plainly states that one factor to consider when weeding books is whether they have circulated in the previous 3-5 years. Ex. 23 at 44.

You are not contesting our claim that Dawn Volger's presentation is not "the CREW manual." The statement in your brief equating Volger's presentation with "the CREW manual" is false and you must correct it.

(11) Your statement on page 10 that claims that Volger's slideshow says that books must "remain on shelves unless they do not circulate 'for 3–5 years" is false and misrepresents the slide.

Response: Same as above.

<span style="color:red">The slideshow indicates that it is "one factor to consider." But that is not what your brief says. Your brief says that "the CREW manual" (which you falsely equate with Vogler's slideshow) says that books must "remain on shelves unless they do not circulate 'for 3–5 years." The slideshow does not come remotely close to saying that.</span>

(12) Your claim that Milum admitted on the witness stand that there was "no need to weed books" after the Commissioners Court had suspended new book purchases is false and misrepresents Milum's testimony, for the reasons explained on page 18 of our brief.

Response: Milum testified "libraries need to weed books because shelf space is limited and they need to make room for new books" Hr'g Tr. Vol. 2 71:20-23, and confirmed that all new book purchases had been suspended a month before November 2021, Hr'g Vol. 2 120:25-151:5.

<span style="color:red">That's right. But Milum never testified that there is no need to weed books unless new books are coming in. Your brief misrepresents her testimony.</span>

We trust that this responses will put this issue to rest. Should you move forward with this motion, we will fully defend against this frivolous allegations and seek fees as allowed under FRCP 11(c)(2).

Best,
Ellen Leonida
BRAUNHAGEY & BORDEN LLP
Direct: (415) 684-7285
braunhagey.com/impact

**From:** Jonathan Mitchell <jonathan@mitchell.law>
**Sent:** Wednesday, January 4, 2023 3:37 AM
**To:** Ellen Leonida <Leonida@braunhagey.com>
**Cc:** Max Bernstein <bernstein@braunhagey.com>; Matt Rienstra <matt.rienstra@co.llano.tx.us>; Dwain K. Rogers <drogers@co.llano.tx.us>; Maria Calaf <mac@wittliffcutter.com>; katherine@wittliffcutter.com; Kayna Levy <kayna@wittliffcutter.com>; Shannon Morrissey <Morrissey@braunhagey.com>; Ryan Botkin <ryan@wittliffcutter.com>
**Subject:** post-hearing brief

**\*\*\* EXTERNAL MESSAGE \*\*\***

Ellen:

Thanks for making time to confer yesterday. As I mentioned on the phone, the defendants believe that your continued advocacy of some (though certainly not all) of the factual representations in your post-hearing brief (ECF No. 91) would not, in our view, be consistent with Rule 11.

I promised to provide a list of each of those factual assertions, and I hope we can resolve this among ourselves without the need for a court filing or service of a Rule 11 motion. It is, of course, possible that I've overlooked evidentiary support in the rather extensive record of this case for some of the factual claims that we currently regard as unsupported, and if so I will withdraw those objections.

(1) Your claim that the in-house checkout system offers only 9 of the 17 disputed books. My understanding is that you will acknowledge in your reply that the "butt" and "fart" books were indeed included in the in-house checkout system from the get-go, and if so that obviates our objection.

(2) Your claim on pages 2–3 that Amber Milum "permanently removed" the butt and fart books "from the Library." I think this statement was based on your belief that the in-house library didn't include the butt and fart books. But the statement is untrue; Milum didn't permanently remove those titles from the library, as they are available at the library through its in-house checkout system.

(3) Your claim on page 3 that Rochelle Wells and Rhonda Schneider "began repeatedly checking out the Butt and Fart books, keeping them off the shelves and inaccessible to other library patrons." Wells and Schneider never checked out any of the "fart" books, and they checked out only two the three "butt" books. The remaining books were never placed on the shelves and were never checked out.

(4) Your characterization of Castelan's and Milum's testimony on page 7. Castelan never said that "historically the Llano Library looked for two or three MUSTIE criteria to be satisfied for weeding eligibility" and your claim that "Milum agreed with that assessment" is a misrepresentation of Milum's testimony, for the reasons we explained on page 15 of our brief.

(5) On page 7, your claim that Castelan "reviewed" each of the disputed books is unsupported (as far as I can tell). I couldn't find anything in Castelan's testimony where she claims to have reviewed each of the disputed books.

(6) Your claim that "Castelan testified that all but one of the Banned Books were weeded improperly and contrary to Llano County Library policies" is

untrue. Castelan admitted that the weeding of Being Jazz "could have been" weeded under Llano County Library policies but that she personally would have left in in. See Hr'g Tr. Vol. 1 at 42:14–19.

(7) Your claim that "Defendants did not provide a single reason under CREW or MUSTIE justifying the removal of the Fart Books and I Need a New Butt" is untrue. Milum did provide reasons on the witness stand, and said that they qualified for weeding under the "Trivial," "Irrelevant," and "Elsewhere" criteria. See Hr'g Tr. Vol. 2 at 107:8–9. You can disagree with those reasons or think they're pretextual, but it's not true to say that the Defendants did not provide a reason under CREW or MUSTIE.

(8) Your claim on page 9 that *It's Perfectly Normal* "was checked out within three years of its removal" is incorrect. Exhibit 52 shows that the last checkout was September 22, 2018, and it was weeded on October 12, 2021. That's more than three years (though barely).

(9) You claim on page 9 that *It's Perfectly Normal* could not be weeded because it qualifies as a "special topic book." Castelan never testified or opined that It's Perfectly Normal qualifies as a "special topic book," nor did she testify that It's Perfectly Normal (or special topic books) are "not eligible to be weeded."

(10) Your statement on page 10 that incorrectly equates Dawn Volger's slideshow with "the CREW manual."

(11) Your statement on page 10 that claims that Volger's slideshow says that books must "remain on shelves unless they do not circulate 'for 3–5 years" is false and misrepresents the slide.

(12) Your claim that Milum admitted on the witness stand that there was "no need to weed books" after the Commissioners Court had suspended new book purchases is false and misrepresents Milum's testimony, for the reasons explained on page 18 of our brief.

If you believe that I am wrong to regard any of these statements as unsupported by evidence under Rule 11(b)(3), please let me know which evidence I have overlooked and we will withdraw our objection if the factual claim is indeed supported. Otherwise, please let us know whether you intend to correct these factual statements or continue advocating for them.


—Jonathan



-----------------------------
Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400

Austin, Texas 78701  
(512) 686-3940 (phone)  
(512) 686-3941 (fax)  
jonathan@mitchell.law  
papers.ssrn.com/sol3/cf_dev/AbsByAuth.cfm?per_id=791842

**CONFIDENTIALITY NOTICE**:

This e-mail and any attachments are confidential and legally privileged. This information is intended only for the use of the individual or entity to whom it was sent as indicated above. If you are not the intended recipient, any disclosure, copying, distribution, or action taken in reliance on the contents of the information contained in this electronic mail message is strictly prohibited. If you have received this message in error, please delete it immediately, and call (512) 686-3940 to let me know that you received it. Thank you.

**PRIVILEGED AND CONFIDENTIAL — ATTORNEY–CLIENT COMMUNICATION / ATTORNEY WORK PRODUCT**

----------------------------  
Jonathan F. Mitchell  
Mitchell Law PLLC  
111 Congress Avenue, Suite 400  
Austin, Texas 78701  
(512) 686-3940 (phone)  
(512) 686-3941 (fax)  
jonathan@mitchell.law  
papers.ssrn.com/sol3/cf_dev/AbsByAuth.cfm?per_id=791842