IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| LEILA GREEN LITTLE, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 1:22-CV-424-RP |
| | § | |
| LLANO COUNTY, et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |

**ORDER**

Before the Court are Defendants Llano County, et al.'s ("Defendants") Motion to Dismiss, (Dkt. 42), and Plaintiffs Leila Green Little, et al.'s ("Plaintiffs") Motion for a Preliminary Injunction, (Dkt. 22). Having considered the parties' briefs, the record, and the relevant law, the Court finds that the motion to dismiss, (Dkt. 42), should be partially granted, and the motion for preliminary injunction, (Dkt. 22), should be partially granted. The Court will dismiss only the claims relating to the cancellation of the OverDrive online book database. The Court will also (1) order Defendants to return all the books at issue to the Library System, (2) update the Library System's searchable catalog to reflect that these books are available for checkout, and (3) enjoin Defendants from removing any more books for the pendency of this action. The Court will deny all other relief requested.

**I. BACKGROUND**

Plaintiffs are patrons of the Llano County Library System who are suing members of the Llano County Commissioners Court ("Commissioners"), members of the Llano County Library Board ("board members") and Llano County Library System Director Amber Milum for violations of their constitutional rights. Plaintiffs contend that Defendants are infringing their First Amendment right to access and receive ideas by restricting access to certain books based on their messages and content. (Compl., Dkt. 1, at 27–29). They further allege that, because the removal and

restrictions happened without prior notice and without any opportunity for appeal, Defendants also violated their Fourteenth Amendment right to due process. (*Id.* at 29–30). Plaintiffs request an injunction that would, among other things, require Defendants to (1) return the books at issue to the catalog and to their original location in the physical shelves, and (2) reinstate access to Overdrive, the Library's former system for e-book access. (Mot. Prelim. Inj., Dkt. 22, at 2–3).

The Llano County Library System is comprised of three physical libraries: the Llano Library Main Branch, the Kingsland Library Branch, and the Lakeshore Library Branch. Until December 13, 2021, the Library also offered access to OverDrive, a digital e-book catalog that gave library patrons access to a curated collection of thousands of e-books and audiobooks. (Email, Dkt. 22-10, at 79). Today, after a period of unavailability, the Library offers access to e-books and audiobooks through a different service, Bibliotheca.

The Llano County Library System has used the "Continuous Review, Evaluation and Weeding" ("CREW") method to keep its collection up to date and make space for new acquisitions. (Hr'g Tr. Vol. 1 at 13:19-20, 18:12-15). The "CREW" method is an established weeding guide used by modern libraries. (*See* Milum Decl., Dkt. No. 49-1, at 2–2).  To identify appropriate candidates for weeding, the CREW method suggests using the following factors, known collectively by the acronym "MUSTIE":  Misleading; Ugly; Superseded; Trivial; Irrelevant; and Elsewhere. (*Id.*). The Library calls this process "weeding." (Hr'g Tr. Vol. 2 at 71:20-25).

In early July 2021, prior to their appointment to the New Library Board, Defendants Rochelle Wells, Rhonda Schneider, Gay Baskin, and Bonnie Wallace were part of a community group pushing for the removal of children's books that they deemed "inappropriate." (Call Log, Dkt. 59-1, at 72; Complaint Logs, Dkt. 59-1, at 77–89). For example, these Defendants objected to two series of children's picture books, the "Butt and Fart Books," which depict bodily functions in a humorous manner in cartoon format, because they believed these books were obscene and

promoted "grooming" behavior. (*E.g.,* Complaint Logs, Dkt. 59-1, at 79). Defendant Milum, the library system's director, shared the complaints with the Commissioners Court.[1] Although several commissioners and librarians stated that they saw no problem with the books, Defendants Moss and Cunningham contacted Milum to instruct her to remove the books from the shelves. (*Compare* Log, Dkt. 59-1, at 94 (describing commissioners saying they did not see a problem with the books) *and* Email, Dkt. 59-1, at 91 (same); *with* Cunningham Email, Dkt. 59-1, at 74–75 (instructing Milum to remove the books from the shelves); Mt'g Logs, Dkt. 59-1, at 76, 92 (noting the complaints and stating that Moss told Milum to "pick [her] battles.")).

By August 5, 2021, Milum informed Cunningham she would be deleting both sets of books from the catalog system. (Cunningham Email, Dkt. 59-1, at 74–75; *see also* List of Removed Books, Dkt. 22-10, at 60–61). In the following months, other books, such as *In the Night Kitchen* by Maurice Sendak and *It's Perfectly Normal*, by Robbie H. Harris, were removed because of similar complaints: that they encouraged "child grooming" and depicted cartoon nudity. (List of removed books, Dkt. 22-10, at 62–63). There was no recourse for Plaintiffs, or anyone else, to appeal these removals to the library system.

In Fall 2021, Wallace, Schneider, and Wells, as part of their community group, contacted Cunningham to complain about certain books that were in the children's sections or otherwise highly visible, labeling them "pornographic filth." (Wallace Email, Dkt. 22-10, at 68–69). On November 10, 2021, Wallace provided Cunningham with lists, including a list of "dozens" that could be found in the library. (*Id.*; *see also* Wallace List, Dkt. 22-10 at 75). The books labeled "pornographic" included books promoting acceptance of LGBTQ views. (*See, e.g.,* Wallace List, Dkt.

---

[1] The Commissioners Court is the municipal entity that controls the Llano County Library System. The Commissioners Court is led by Llano County Judge Ron Cunningham.

22-10[2]). Other books in Wallace's list of pornographic books about "critical race theory" and related racial themes. (*Id.*[3]). In other communications, Defendants refer to them as "CRT and LGBTQ" books. (Wells Emails, Dkt. 20-10, at 71–72 (discussing book removals and planning a list of "CRT and LGBTQ book[s]")). In the email, Wallace advocated for the books to be relocated to the adult section because "[i]t is the only way that [she] could think of to prohibit future censorship of books [she does] agree with." (Wallace Emails, Dkt. 22-10, at 68).

That same day, Cunningham and Moss ordered Milum, "[a]s action items to be done immediately," to pull books that contained "sexual activity or questionable nudity" from the shelves and from OverDrive, which at the time was the Library's online e-book database. (Cunningham Emails, Dkt. 22-10, at 67; 106). Milum informed Moss and Cunningham she would pull the books, as well as books found in Wallace's lists. (*Id.*, Hr'g Tr. Vol 1, at 104:6–104:9).

Milum then ordered the librarians to pull books from an edited version of Wallace's list from the shelves. (Baker Decl., Dkt. 22-1, at 2). On November 12, 2021, Defendants removed several books on the Bonnie Wallace Spreadsheet from the Llano Library Branch shelves, including, for example, *Caste: The Origins of Our Discontents*, *They Called Themselves the K.K.K.: The Birth of an American Terrorist Group*, *Being Jazz: My Life as a (Transgender) Teen*, and *Spinning*. (List of removed books, Dkt. 22-10, at 60–65). In early December, the Commissioners and Milum also discussed options to implement filters or other restrictions for books in Wallace's list that were available through OverDrive. (OverDrive Emails, Dkt. 22-10, at 8–10). Although Plaintiffs do not identify which e-book titles were at issue in their complaint, Defendants were converned that at least two of the

---

[2] For example, Wallace's list included the following titles: (1) *All out: the no-longer-secret stories of queer teens throughout the ages* by Saundra Mitchell; (2) *Beyond Magenta: transgender teen speaks out,* by Susan Kuklin; and (3) *Some assembly required: the not-so-secret life of a transgender teen,* by Arin Andrews, among others.

[3] For example, Wallace's list included the following titles: (1) *Caste, the origins of our discontents*, by Isabel Wilkerson; (2) *How to be an antiracist*, by Ibram X. Kendi, and (3) *Separate is never equal* by Duncan Tonatiuh, among others.

books in Wallace's list, *Lawn Boy* by Jonathan Evison and *Gender Queer* by Maia Kobabe, were accessible to library patrons though OverDrive. (Wells Emails, Dkt. 22-9, at 5).

On December 13, 2021, the Commissioners Court voted to approve three days of library closures, from December 20, 2021 to December 23, 2021 to review the library catalog. (Macdougal Emails, Dkt. 20-10, at 79–80). These tasks included "labeling books and checking [the] shelves for "'inappropriate'" books." (*Id.*, at 79–80; Hr'g Tr. Vol 1, at 151:1–152:13). The Commissioners Court did not define "appropriateness," but Milum declared that during these days, the staff mainly pulled books that the other Defendants had identified as inappropriate. (Hr'g Tr. Vol. 1, at 83:5–84:7).

On December 13, 2021, the Commissioners Court also voted to suspend all access to OverDrive. (Email, Dkt. 22-10, at 79). After the start of this litigation, the Commissioners Court voted to enter into a contract with Bibliotheca, another e-book database system. On May 9, 2022, the County began to provide access to Bibliotheca. (Milum Decl., Dkt. 49-1). Bibliotheca provides access to some, but not all, of the books at issue. (*Id.* at 6–7).

On December 13, 2021, the Commissioners Court also voted to dissolve the existing library board and to create a new one, named the "Library Advisory Board." Wallace, Wells, Schneider, and other Llano County residents who advocated for book removals were appointed to the new board. This new Board then instituted a policy that all new books must be presented to and approved by the board before purchasing them. (Hr'g Tr. Vol. 1, at 51:5–20; 107:4–21; 111:3–20).  The Commissioners Court stopped all new book purchases in November 2021, and no new acquisitions have been approved since this litigation began. (Cunningham Emails, Dkt. 22-10, at 106; Hr'g Tr. Vol. 1, at 50:21–51:8). On or around January 19, 2022, the Board asked Librarian Milum "that she not be present at all meeting [sic] and just on an as-needed basis." (Mt'g Minutes, Dkt. 22-10, at 52–53). In February 2022, Defendants banned staff librarians from attending New Library Board Meetings. (Librarians' Emails, Dkt. 22-1, at 6 ("Staff members are not to attend Advisory Board

Meetings. You may not use your vacation time to attend.")). A month later, the meetings were closed to the public. (News Article, Dkt. 22-10, at 130–132; Mt'g Minutes, Dkt. 22-10, at 52–53 (discussing the possibility of closing meetings to the public)).

Plaintiffs filed their complaint on April 25, 2022, (Dkt. 1), and filed their motion for preliminary injunction on May 9, 2022, (Dkt. 22). Defendants filed a motion to dismiss on June 8, 2022. (Dkt. 42). After the parties submitted their respective briefing, the Court held a hearing on the preliminary injunction on October 28 and October 31, 2023. (Order, Dkt. 69; Minute Entries, Dkts. 79, 80). The parties then submitted post-hearing briefing on the preliminary injunction. (Pls.' Post-Hearing Memorandum in Support, Dkt. 91; Defs.' Corrected Resp., Dkt. 101; Pls.' Reply, Dkt. 98; Defs.' Surreply, Dkt. 117).

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in

the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

### B. Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the [plaintiffs'] grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*,

663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### C. Rule 65 Standard

A preliminary injunction is an extraordinary remedy, and the decision to grant such relief is to be treated as the exception rather than the rule. *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The party seeking injunctive relief carries the burden of persuasion on all four requirements. *PCI Transp. Inc. v. W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005).

### III. DISCUSSION

Plaintiffs seek an injunction ordering the return of the books at issue and other removed books to the library catalog and to their original location, to restore access to OverDrive, and to prevent further book removals. Defendants have filed a motion to dismiss, asserting that Plaintiffs lack standing for most of their claims, that Plaintiffs' claims regarding access to the OverDrive database are moot, and that, to the extent that Plaintiffs have standing for their claims, Plaintiffs have failed to state either a First Amendment or a Due Process claim. The Court will first address Defendants' motion to dismiss before turning to Plaintiffs' motion for preliminary injunction.

### A. Defendants' Motion to Dismiss

Defendants' motion to dismiss proceeds in two parts. First, Defendants argue that Plaintiffs have not alleged "concrete plans" to access the books at issue, and therefore they have not alleged a cognizable injury. (Mot. Diss., Dkt. 42, at 3–5). Defendants further contend that Plaintiffs' claims regarding the OverDrive online system are moot because the library has closed that forum, and that

in any case, Plaintiffs claims are also moot because Plaintiffs can access the books through the library's new online database or by requesting them through the "in-house" checkout system. (Reply, Dkt. 54, at 8–9). Second, Defendants argue that Plaintiffs fail to state a claim for relief because the library engaged in government speech, and because there is no liberty interest implicated in book removal. (Mot. Diss., Dkt. 42, at 8–10).

The Court will first address whether Plaintiffs have standing to bring a claim against Defendants before turning to the sufficiency of their allegations for Rule 12(b)(6) purposes. The Court finds that Plaintiffs are suffering a continuing injury, and that most of their claims are not moot. However, the Court also finds that Plaintiffs' OverDrive related claims are moot because Defendant has replaced OverDrive with Bibliotheca, a comparable online database of books. With respect to the remaining claims, the Court finds that Plaintiffs have properly alleged First Amendment and Due Process violations. As to the First Amendment claims, the Court finds Plaintiffs have sufficiently alleged that Defendants' actions do not constitute government speech and that Defendants unlawfully removed books based on their viewpoint. As to the Due Process claims, the Court identifies a liberty interest in access to information protected by the Due Process Clause of the Fourteenth Amendment.

### 1. Standing

To have Article III standing, a plaintiff must "(1) have suffered an injury in fact, (2) that is fairly traceable to the challenged action of the defendant, and (3) that will likely be redressed by a favorable decision." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020) (citing *Lujan v. Def's. of Wildlife*, 504 U.S. 555, 560–61 (1992), *as revised* (Oct. 30, 2020)). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." *Lujan*, 504 U.S. at 564. "[S]ome day's intentions—without any description of concrete plans or indeed even any specification of *when* the some day will be—do

not support a finding of the 'actual or imminent' injury." *Id.* However, an injury that "has already happened and is ongoing . . . fulfills the constitutional standing requirement" because it is not conjectural. *Inst. for Creation Rsch. Graduate Sch. v. Texas Higher Educ. Coordinating Bd.*, No. 1:09-cv-00382-SS, 2009 WL 10699959, at *2 (W.D. Tex. July 31, 2009) (holding that a municipal education board's denial of a license to grant degrees was an ongoing injury that fulfills constitutional standing requirements).

Plaintiffs have alleged sufficient facts to show they are suffering an actual, ongoing injury. Plaintiffs alleged that they are library users and members, that they wish to check out the removed library books, and that they have attempted and failed to check out the removed books from the library. (Compl, Dkt. 1, at 27). The removal of books initiated Plaintiffs' injuries, but the infringement on their right to access information is a "continuing, present adverse effect[]" that qualifies as an injury for Article III purposes. *Lujan*, 504 U.S. at 564; *cf. Sund v. City of Wichita Falls*, 12 F. Supp. 2d, 530, 553–54 (N.D. Tex. 2000) (finding irreparable injury where implementation of the city's resolution would have resulted in books promoting acceptance of LGBTQ families being "segregated" from the children's section to the adult section). In light of this ongoing effect, requiring Plaintiffs to engage in futile attempts to check out books that are unavailable or to attend the library board meetings that have been closed and stalled for months would be pointless. Accordingly, the Court finds that Plaintiffs have sufficiently pled an actual, ongoing injury for the purposes of standing.

### 2. Mootness

#### a. OverDrive-Related Claims

Defendants make two arguments regarding mootness. First, Defendants contend that Plaintiffs' OverDrive-related claims are moot because the contract cancellation amounts to a closing of the public forum. (Mot. Diss., Dkt. 42, at 5–7; Reply, Dkt. 54, at 8–9). Second, Defendants argue

that there is no ongoing injury because Plaintiffs may access the books through Llano County

Library System's new online book database, Bibliotheca, or through the library's "in-house

checkout" system. (Reply, Dkt. 54, at 8–9; Milum's Supp. Decl., Dkt. 53, at 1–2). Defendants claim

their actions were genuine and not litigation posturing. (Mot. Diss., Dkt. 42).

Courts are skeptical of defendant induced mootness because of the risk of posturing—

attempting to escape litigation while intending to engage in the same conduct once the case is

dismissed. *Yarls v. Bunton*, 905 F.3d 905, 910 (5th Cir. 2018). In general, defendants cannot "evade

sanction by predictable protestations of repentance and reform after a lawsuit is filed." *Ctr. For

Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 425 (5th Cir. 2013) (citation omitted). But

the Fifth Circuit has cautioned that skepticism is lessened for voluntary governmental cessation

because "[g]overnment officials 'in their sovereign capacity and in the exercise of their official duties

are accorded a presumption of good faith because they are public servants, not self-interested

private parties.'" *Id.* at 910–11. "Without evidence of the contrary, we assume that formally

announced changes to official governmental policy are not mere litigation posturing." (*Id.* at 910).

As Defendants note, on May 9, 2022, the County began to provide access to Bibliotheca, a

different online book database. (Reply, Dkt. 54, at 8). In their post-hearing briefing, Plaintiffs state

that Bibliotheca provides access to some, but not all, of the books at issue. (*See* Pls.' Post-Hr'g Br.,

Dkt. 91, at 18 (citing Milum Decl., Dkt. 49-1, at 6–7)). However, Plaintiffs' complaint does not

specify which books Defendants objected to. Without allegations regarding specific books, and

given that some of the books at issue are available though Bibliotheca, the Court cannot find, based

on the pleadings, that Bibliotheca does not sufficiently replace OverDrive database. Plaintiffs' injury

appears to be the violation of their right to access information through the online book database

OverDrive. However, the evidence shows that the County replaced OverDrive with a comparable

online service. In light of Plaintiffs' current pleadings, the County's new contract with Bibliotheca

thus moots the OverDrive-related claims. Accordingly, the Court will dismiss Plaintiffs' OverDrive-related claims without prejudice.

### b. Physical Books

However, the Court does not conclude that Plaintiffs' claims are moot as to the physical books. The physical books at issue in this case, although "available" for checkout are hidden from view and absent from the catalog. Their existence is not discernible to the public, nor is their availability. An injury exists because the library's "in-house checkout system" still places "a significant burden on Library Patrons' ability to gain access to those books." *Sund*, 12 F. Supp. 2d at 534.

Furthermore, Defendants' creation of an "in-house checkout system" comprises precisely the type of posturing the voluntary cessation exception is meant to prevent. Defendant Milum received the books in July, three months into this litigation and shortly after the parties had filed responses to their motions to dismiss and for preliminary injunction, respectively. (Milum Supp. Decl., Dkt. 53, at 1). But the books were not donated by a neutral benefactor with the intent of making them available to library patrons. Defendants' Counsel, Jonathan Mitchell, provided these books ostensibly anonymously. Upon questioning, Counsel repeatedly to avoid the disclosure of his donation by asserting attorney-client privilege. The Court concluded, however, that his actions, clearly designed his clients' litigation position, were not so privileged.

Furthermore, even if Counsel Mitchell's actions were not calculated to promote his clients' litigation position, the Library's protocols making access to the books virtually impossible do not deserve the type of solicitude the Fifth Circuit has instructed. Making books "available" in a back room, only upon specific request by a patron who has no way of knowing that the books even exist, is hardly a "formally announced change[] to official governmental policy" deserving less scrutiny. *Bunton*, 905 F.3d at 910.

The Court thus finds that the rest of Plaintiffs claims are not moot. Accordingly, the Court will dismiss Plaintiffs' OverDrive-related claims without prejudice but allow the remaining claims to proceed.

### 3. First Amendment Claim

Next, Defendants argue that Plaintiffs have not stated a First Amendment claim upon which relief can be granted. Defendants contend that First Amendment protections do not apply to the public library's content and collection decisions, because libraries are afforded broad discretion over these decisions. (Mot. Diss., Dkt. 42, at 9).[4]

The Supreme Court has recognized that public libraries should be afforded "broad discretion" in their collection selection process, in which library staff must necessarily consider books' content. *See U.S. v. Am. Library Assn., Inc.*, 539 U.S. 194, 205 (2003) (plurality). But this discretion is not absolute, and it applies only to materials' selection. In fact, the Fifth Circuit, adopting the Supreme Court's plurality in *Pico*, has recognized a "First Amendment right to receive information" which prevents libraries from "remov[ing] books from school library shelves 'simply because they dislike the ideas contained in these books.'" *Campbell v. St. Tammany Par. Sch. Bd.*, 64 F.3d 184, 189 (5th Cir. 1995) (quoting *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 872 (1982) (plurality)).

---

[4] Defendants also argue that Plaintiffs have not alleged that the library is a public forum, and that any First Amendment claim should fall based on that fact alone. (Reply, Dkt. 54, at 8–9). This argument is unavailing. The Fifth Circuit has recognized that there is a First Amendment right to access information, and that First Amendment protections apply to the removal of materials in public libraries. *See, e.g.*, *Campbell v. St. Tammany Par. Sch. Bd.*, 64 F.3d 184, 189 (5th Cir. 1995)). As the following paragraphs make clear, courts have almost uniformly held that public libraries are subject to First Amendment limitations, even as limited public forums. *See, e.g.*, *Sund v. City of Wichita Falls*, 12 F. Supp. 2d, 530, 534 (N.D. Tex. 2000) ("The Wichita Falls Public Library, like all other public libraries, is a limited public forum for purposes of First Amendment analysis."). *American Library*, which Defendants cite for the contrary proposition, simply states that "*Internet access* in public libraries is neither a 'traditional' nor a 'designated' public forum." *See U.S. v. Am. Library Assn., Inc.*, 539 U.S. 194, 205 (date) (emphasis added).

"The key inquiry in a book removal case" is whether the government's "substantial motivation" was to deny library users access to ideas with which [the government] disagreed." *Id.* at 190. Here, Plaintiffs have sufficiently pled that Defendants' conduct was substantially motivated by a desire to remove books promoting ideas with which disagreed. They plainly allege that Defendants removed, ordered the removal, or pursued the removal of the books at issue "because they disagree with their political viewpoints and dislike their subject matter." (Compl., Dkt. 1, at 3, 7–9).

Defendants do not argue otherwise. Instead, they contend that Plaintiffs have not stated a claim because the removal decisions were "government speech to which the First Amendment does not apply." (Mot. Diss., Dkt. 42, at 8–9).  But as Plaintiffs' note, the cases Defendants cite mostly involve the initial selection, not removal, of materials. *See, e.g.*, *Am. Library*, 539 U.S. at 205 ("The principles underlying [the precedent] also apply to a public library's exercise of judgment in selecting the material it provides to its patrons."); *PETA v. Gittens*, 414 F.3d 23, at 28 (analogizing the discretion afforded to library's book collection decisions to the commission's art selection decisions). As the Fifth Circuit held in *Campbell*, removal decisions are subject to the First Amendment and are evaluated based on whether the governments' "substantial motivation in arriving at the removal decision" was discriminatory. *Campbell*, 64 F.3d at 190. Here, Plaintiff has clearly pled that Defendants had this motivation.

Defendants contend that *Campbell* and *Pico* do not apply to this context because those cases dealt with book removals from public school libraries, which may be subject to unique constitutional rules. (Reply, Dkt. 54, at 8). At the same time, Defendants urge us to follow *Chiras*, even though *Chiras* also involves book selection at a public school library. (*Id.* at 10 (citing *Chiras v. Miller*, 432 F.3d 606, 614 (5th Cir. 2005). In any case, the Court agrees that the precedent indicates public school libraries are a unique environment for constitutional analysis. *See Pico*, 457 U.S.  at 868 (plurality) ("First Amendment rights accorded to students must be construed 'in light of the special

characteristics of the school environment'" (citation omitted)). *Campbell*, *Pico*, and *Chiras* suggest that school officials' discretion is particularly broad for book selection in public school libraries because of schools' unique inculcative function. *See also Sund*, 121 F. Supp. 2d at 548. However, the right to access to information first identified in *Pico* and subsequently adopted by the Fifth Circuit in *Campbell* has "even greater force when applied to public libraries," since public libraries are "designed for freewheeling inquiry," and the type of discretion afforded to school boards is not implicated. *Id.* (omitting citations).

Defendants, like other government officials implicated in maintaining libraries, have broad discretion to select and acquire books for the library's collection. But the Fifth Circuit recognizes a First Amendment right to access to information in libraries, a right that applies to book removal decisions. Plaintiffs have clearly stated a claim that falls squarely within this right: that Defendants removed the books at issue to prevent access to viewpoints and content to which they objected.

### 4. Due Process Claim

Finally, Defendants argue that Plaintiffs have not alleged a due process claim because Plaintiffs do not have a protected property or liberty interest involved in library books. Defendants point to a single Second Circuit case, *Bicknell v. Vergennes Union High School*, 638 F.2d 438, 442 (2d Cir 1980). In *Bicknell,* plaintiffs challenged a school board's decision to remove two books based on their content. *Id.* at 440–41. The Second Circuit found that, even assuming that there was a deprivation of rights at play, such a deprivation did not entitle plaintiffs "to a hearing before that removal takes place." *Id.* at 442. According to the court, the rights involved were not particularized nor personal enough to require a hearing. *Id.*

But many courts have held that access to public library books is a protected liberty interest created by the First Amendment. *See Doyle v. Clark Cnty. Pub. Libr.*, No. 3:07-cv-00003-TMR-MRM, 2007 WL 2407051, at *5 (S.D. Ohio Aug. 20, 2007); *see also Miller v. Nw. Region Libr. Bd.*, 348 F. Supp.

2d 563, 570 (M.D. N.C. 2004) (denying defendants' motion to dismiss plaintiff's Fourteenth

Amendment due process claim, holding that access to public library computers was a protected

liberty interest); *Hunt v. Hillsborough County,* No. 8:07-cv-01168-JSM-TBM, 2008 WL 4371343, at *3

(M.D. Fla. 2008) ("Plaintiff had a fundamental right to access the Law Library and receive the

information provided therein."); *Dolan v. Tavares*, No. 1:10-cv-10249-NMG, 2011 WL 10676937, at

*13 (D. Mass. May 16, 2011) ("[P]laintiff has a liberty interest in being able to access the law

library"); *cf. Neinast v. Bd. of Trs. of Columbus Metro. Libr.*, 346 F.3d 585, 592 (6th Cir. 2003) (referring

to the First Amendment right to receive information in public library books as a "fundamental

right"); *Armstrong v. Dist. of Columbia Pub. Libr.,* 154 F. Supp. 2d 67, 82 (D.D.C. 2001) (recognizing

that "access to a public library [ ] is at the core of our First Amendment values"). And even if this

Court were to follow the Second Circuit's rationale, *Bicknell* only states that the right involved could

not sustain a hearing requirement. *Bicknell*, 638 F.2d at 442. The court's analysis does not foreclose

the possibility that Plaintiffs could be entitled to some form of post-removal appellate or review

process.

     The Court follows our many sister courts in holding that there is a protected liberty interest

in access to information in a public library. Accordingly, the Court finds that Plaintiff has sufficiently

stated a due process claim.

### B. Plaintiffs' Motion for Preliminary Injunction

     Having addressed Defendants' motion to dismiss, the Court will now evaluate whether

Plaintiffs are entitled to a preliminary injunction. Plaintiffs seek an injunction ordering Defendants

to: (1) return the physical books at issue to their original locations and (2) update the Library

Service's catalog to reflect that the books have been returned and are available for checkout, and

enjoying Defendants from: (1) removing any books from the Llano County's physical shelves during

the pendency of the action, and (2) closing future Library Board meetings to members of the public.

(Proposed Ord., Dkt. 22-12). Plaintiffs originally requested a preliminary injunction regarding access to OverDrive, but the Court will not address this relief because it has dismissed those claims. Furthermore, Plaintiffs request relief related to their Due Process claim but do not actually present any arguments on the issue. Accordingly, the Court will deny the motion as to their request for access to the library board meetings.

For the rest of the preliminary injunction, Plaintiffs must show (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that the injunction might cause to the defendant; and (4) that the injunction will not disserve the public interest." *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 288 (5th Cir. 2012). Plaintiffs have carried their burden on each of these elements.

### 1. Likelihood of Success on the Merits

#### a. Viewpoint Discrimination

As the Court stated earlier, the First Amendment "protect[s] the right to receive information." *Sund v. City of Wichita Falls, Tex.*, 121 F. Supp. 2d 530, 547 (N.D. Tex. 2000) (citing *Reno v. American Civil Liberties Union*, 521 U.S. 844 (1997)). In a book removal case, "the key inquiry . . . is the school officials' substantial motivation in arriving at the removal decision." *Campbell*, 64 F.3d at 190.

Plaintiffs have made a clear showing that they are likely to succeed on their viewpoint discrimination claim. Although libraries are afforded great discretion for their selection and acquisition decisions, the First Amendment prohibits the removal of books from libraries based on either viewpoint or content discrimination. *See Pico*, 457 U.S. at 871. "Official censorship based on a state actor's subjective judgment that the content of protected speech is offensive or inappropriate is viewpoint discrimination." *Robinson v. Hunt County*, 921 F.3d 440, 447 (5th Cir. 2019) (citing *Matal v.*

*Tam*, 137 S. Ct. 1744, 1763 (2017). In a book removal case, plaintiffs must show that an intent to deny library users access to viewpoints with which they disagreed was a "substantial factor" in making the removal decision. *Id.* at 188 n.21 (citing *Pico*, 457 U.S. at 872); *id.* at 190.

Here, the evidence shows Defendants targeted and removed books, including well-regarded, prize-winning books, based on complaints that the books were inappropriate. For example, between early and mid-July 2021, Wells and other citizens contacted Milum to complain about the appropriateness of the "Butt and Fart Books." (Call Log, Dkt. 59-1, at 72; Complaint Logs, Dkt. 59-1, at 77–89). By August 5, 2021, Commissioners Cunningham and Moss had contacted Milum to recommend removing them from the shelves. Milum then deleted these books from the catalog system. (Cunningham Email, Dkt. 59-1, at 74–75; Mt'g Logs, Dkt. 59-1, at 76, 92).

Similarly, between October 28, 2021, and December 22, 2021, a span of two months, Wallace and Wells had contacted Defendants Cunningham and Moss with a list of books they considered inappropriate, labeling them "pornographic filth" and "CRT and LGBTQ books" and advocating for their removal and relocation. (Wallace Emails, Dkt. 22-10, at 67–69; Wells Emails, Dkt. 22-10, at 71–72; Hr'g Tr. Vol 1, at 89:23–90:4; 97:2–100:2). Cunningham and Moss then instructed Milum, the library director, to pull out these books. (Wallace Emails, Dkt. 22-10, at 67; Wells Emails, Dkt. 22-10, at 71–72). Milum, in turn, removed some of the books and soon thereafter the library was closed for three days at the direction of the Commissioners Court, for the purpose of "checking [the] shelves for 'inappropriate' books." (Macdougall Emails, Dkt. 22-10, at 79–80; Hr'g Tr. Vol 1, at 151:1–152:13).

Admittedly, Wallace, Wells, and other complainants were members of the public, not library board members, at the time. (Hr'g Tr. Vol. 2, at 25:2–25:13). Furthermore, at least one Defendant admitted in his testimony that he did not have personal knowledge of the content of the books at issue. (Hr'g Tr. Vol. 1, at 170:23–172:1; 174:21–175:7). But by responding so quickly and uncritically,

Milum and the Commissioners may be seen to have adopted Wallace's and Wells's motivations. The Court finds that Plaintiffs have clearly shown that Defendants' decisions were likely motivated by a desire to limit access to the viewpoints to which Wallace and Wells objected.

Defendants aver that any cataloguing and removal that occurred was simply part of the library system's routine weeding process, for which Milum was ultimately responsible. (Hr'g Tr. Vol. 1, at 82:8–82:16). Yet Milum testified that the books that she pulled were books that Wallace, Wells, or the Commissioners identified as "inappropriate." (Hr'g Tr. Vol. 1, at 83:5–84:7). The Commissioners, her superiors and final policymakers with power over the library system,[5] instructed her to review the books—and even to remove some of them—based on people's perception of their content or viewpoints. (Hr'g Tr. Vol. 1 at 68:15-18). The short amount of time between the complaints, commissioners' actions, and Millum's removal strongly suggests that the actions were in response to each other.  . Plaintiffs have made a clear showing about what Defendants' substantial motivations may have been and how these may have led to the book removals.

Finally, Defendants argue, as they did in their motion to dismiss, that even if their actions amount to viewpoint discrimination, the library's weeding decisions are only subject to rational-basis review. Not so. The Fifth Circuit's precedent recognizing a right to access to information is not "nonsense." (Post-Hr'g Corr. Resp., Dkt. 100, at 25); *see also Campbbell*, 64 F.3d at 189–90 (finding that the "decision to remove [books] must withstand greater scrutiny within the context of the First Amendment than would a decision involving a curricular matter."). Defendants' attempts to convince the Court otherwise simply confirm what the Court already addressed in Defendants'

---

[5] Tex. Const. art. 5, § 18(b) ("[T]he County Commissioners Court . . . shall exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws of the State[.]"); Tex. Loc. Gov't Code. § 323.006 ("The county library is under the general supervision of the commissioners court."); *see also Doe AlW v. Burleson Cnty.*, No. 1:20-CV-00126-SH, 2022 WL 875912, at *4 (W.D. Tex. Mar. 24, 2022) (holding county commissioners court has final policymaking authority over all areas entrusted to them by the state constitution and statutes).

motion to dismiss: that "content discrimination is permissible and inevitable in library-book selection." (Post-Hr'g Corr. Resp., Dkt. 100, at 25). It does not follow from this proposition that such discrimination is equally permissible in removal decisions. To hold otherwise would be to entirely disregard *Campbell*.

### b. Content Discrimination

Even if Plaintiffs had not shown a likelihood of success on their viewpoint discrimination claim, the Court finds that Plaintiffs clearly met their burden to show that these are content-based restrictions that are unlikely to pass constitutional muster. Content-based restrictions on speech are presumptively unconstitutional and subject to strict scrutiny. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155 (2015); *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000). A restriction is content-based if it "applies to particular speech because of the topic discussed or the idea or message expressed." *Reed*, 576 U.S. at 163. But, as discussed above, multiple Defendants acknowledged during the hearing that each of the books in question were slated for review (and ultimately removal) precisely because certain patrons and county officials complained that their contents were objectionable.[6]

Although Defendants now argue that each of these books were subject to routine "weeding" from the library's catalogue based on content-neutral factors, Plaintiffs have offered sufficient evidence to suggest this post-hoc justification is pretextual. Whether or not the books in fact qualified for "weeding" under the library's existing policies,[7] there is no real question that the

---

[6] Hr'g Tr. Vol. 1 at 127:24-128:5; *see also* Ex. 52 at 1-2; Ex. 2A; Ex. 2; Hr'g Tr. Vol. 1 at 66:9-14 (Butt and Fart books); Hr'g Tr. Vol. 1 at 70:13-18, 71:9-15; Ex. 19 (*In the Night Kitchen*, and *It's Perfectly Normal*); Hr'g Tr. Vol. 1 at 82:3-10, 82:24-83:3, 84:12-21, 94:23-25 (LGBTQ and CRT books).

[7] The record contains competing testimony on this point. Milum stated in her declarations and testimony that she weeded the 17 disputed books because she believed that each of them met the library's criteria for weeding under the CREW and MUSTIE factors. *See* Milum Decl., Dkt. No. 49-1, at ¶¶ 8, 12–16; Hr'g Tr. Vol. 2 95:16–106:20.  In contrast, Tina Castelan stated that Milum's decisions to weed some of disputed books violated the library's weeding policies. *See id.* at 6–9; Hr'g Tr. Vol. 1 at 33:15–45:18. It appears to be

targeted review was directly prompted by complaints from patrons and county officials over the contents of these titles. Defendants' contemporaneous communications, as well as testimony at the hearing, amply show this. For example, Ms. Wells testified at the hearing that "if there was any book that [in her opinion] was harmful to minors that was in the library, I would speak with the director, [Milum] to have it removed." (Hr'g Tr. Vol. 1 at 205:9-14). In turn, Milum acknowledged that "the reason that [the books] were selected to be weeded and reviewed to be weeded, as opposed to other books, w[as] because Ms. Wallace had them on her list" of objectionable books. (*Id.* at 82:24-83:3). And, notably, there is no evidence that any of the books were slated to be reviewed for weeding prior to the receipt of these complaints; to the contrary, many other books eligible for weeding based on the same factors appear to have remained on the shelves for many years.[8]

Defendants' insist that "[t]he notion that librarians cannot engage in 'content discrimination' when weeding books is absurd" because "[w]eeding inherently involves content discrimination." This is unavailing. In the context of weeding, the test the Fifth Circuit stated in *Campbell* provides flexibility for the type of content considerations Defendants warn about. In a book removal case, "the key inquiry . . . is the [library] officials' substantial motivation in arriving at the removal decision." *Campbell*, 64 F.3d at 190. Although some of the MUSTIE criteria consider content, overall, the library weeding process appears to be directed towards managing the size and quality of the library collection. That is, the Llano County Library System has discretion to weed books, using professional criteria, when its "substantial motivation" is to curate the collection and allow space for new volumes. As long as its motivation remains as such, the library system may cull and curate its collection as needed.

---

undisputed that, given its subjective nature, reasonable minds may disagree over how to apply the CREW and MUSTIE criteria. *Id.* at 127:6-8.

[8] *Compare* Ex. 52 *with* Ex. 79A; *see also, e.g.*, Hr'g Tr. Vol. 2 at 127:21-25, 136:4-7.

Conversely, when the governments' "substantial motivation" appears to be a desire to prevent access to particular views, like in this case, Defendants' actions deserve greater First Amendment scrutiny. The Court finds that Plaintiffs made a clear showing that the "substantial motivation" for Defendants actions appears to be discrimination, as opposed to mere weeding.

Under the strict scrutiny analysis, the Defendants bear the burden of proving that the removals are narrowly tailored to serve a compelling interest. *Reed*, 135 S. Ct. at 2226; *Turner Broad. Sys.*, 512 U.S. at 664–65. Applying this standard, the Court finds it substantially likely that the removals do not further any substantial governmental interest—much less any compelling one. Indeed, the Defendants' briefing doesn't argue that their actions can survive heightened scrutiny, nor have they set forth any governmental interests that are served by the removals. On this record, the Court will not endeavor to guess what interests Defendants may eventually proffer. As content-based restrictions on Plaintiffs' right to receive information, Plaintiffs have clearly shown the removals are likely to be constitutionally infirm because they are not narrowly tailored to serve a compelling state interest.

### 2. Irreparable Harm

The "loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury." *Texans for Free Enter v. Texas Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Opulent Life Church*, 697 F.3d at 295. Because Plaintiffs have clearly shown Defendants actions likely violate their First Amendment right to access to information, they have clearly shown they are suffering irreparable harm.

Attempting to deny this harm, Defendants contend that Plaintiffs can access every one of the books through either the InterLibrary Loan system, Bibliotheca, or the library system's in-house checkout system. None of these options mitigate the constitutional harm Plaintiffs are suffering. First,

the InterLibrary Loan system is not a replacement for access to books within the Llano County Library System. Patrons must pay for postage and wait for weeks for books to arrive. (Milum Decl., Dkt. No. 49-1, at 10; Hr'g Tr. Vol. 2 at 124:24-125:1). Furthermore, to allow the InterLibrary loan system to stand in for purported "access" to the books would absolve any government official from liability for unconstitutional book removals, no matter how egregiously unconstitutional their intent, as long as the official could find, *ex post facto*, a library or network from which it could secure a loan.

Likewise, access through Bibliotheca is not a replacement for access to the physical books at issue. E-books and physical books are tangibly different. Using Bibliotheca requires access to a compatible device, and most of the books are not available through Bibliotheca at all. (Milum Decl., Dkt. 49-1, at 6–7; Hr'g Tr. Vol. 2 at 47:2-4). Furthermore, as early as March 2022, Defendants were trying to remove books they had already purchased through Bibliotheca, due to concerns about their appropriateness. (Wallace Depo., Dkt. 59-1, at 114:4-10, 126:12-15; Bibliotheca Emails, Dkt. 59-1, at 104–107). Even if the Court were to find that access to these e-books is equivalent to access to the physical books, there is sufficient evidence to raise concerns that the books would not remain in place without an injunction.

The Court's reservations about Defendants' in-house checkout system are even greater. As noted above, the books that are supposedly "available" for checkout are absent from the library's catalog. They are, to the extent they exist, not accessible from the library shelves. A patron must, notwithstanding the fact that the books' existence is not reflected in the library catalog, know that the books can be requested. They must then make a special request for the book to be retrieved from behind the counter. This is, of course, an obvious and intentional efford by Defendants to make it difficult if not impossible to access the materials Plaintiffs seek. This ongoing infringement warrants an interim remedy precisely because the harm is ongoing and irreparable.

### 3. Balance of Equities and Public Interest

As to the last two factors, Defendants once again insist that the balance of equities and public interest cannot support an injunction because Plaintiffs have not, will not, and could not have suffered constitutional harm. This Court found otherwise. "[I]njunctions protecting First Amendment freedoms are always in the public interest." *Texans for Free Enter.*, 732 F.3d at 539 (quoting *Christian Legal Society v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). As Plaintiffs request an injunction protecting their First Amendment Freedoms, and there is no evidence that the equities tilt in Defendants favor, the Court finds Plaintiffs have clearly shown these factors are in their favor.

### 4. Remedy

Although Plaintiffs have demonstrated they are entitled to a preliminary injunction, their evidence cannot sustain some of the remedies they seek. The evidence demonstrates that, without an injunction, Defendants will continue to make access to the subject books difficult or impossible. Defendants must therefore be prevented from removing the books, and the books at issue be made available for checkout through the Library System's catalogs. (Proposed Ord., Dkt. 22-12[9]).

However, Plaintiffs focused on book removals, not on relocations. Therefore, the Court cannot find that they are entitled to their request to return the physical books to their original locations. The Court will not invade the prerogative of the Library with regard to proper placement of books or restrictions on access.

Although Plaintiffs originally requested a preliminary injunction regarding access to OverDrive, the Court will not grant the relief because it has dismissed those claims. Finally, Plaintiffs requested relief related to their Due Process claim but did not actually present any arguments or evidence on the issue. Accordingly, the Court will deny the motion as to their request for access to the library board meetings.

---

[9] Librarian Milum testified at the hearing that the Library System does not plan to weed or add any books to the Library for the pendency of this litigation; therefore, an injunction preventing book removals is unlikely to be burdensome. (Hr'g Tr. Vol. 1, at 130:5–15).

## IV. CONCLUSION

For the reasons given above, **IT IS ORDERED** that Defendants' motion to dismiss, (Dkt. 42), is **GRANTED. IN PART** and **DENIED IN PART.** Plaintiffs' OverDrive related claims are dismissed **WITHOUT PREJUDICE**. Defendants' motion is denied as to all other claims.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Preliminary Injunction, (Dkt. 22), is **PARTIALLY GRANTED**. **IT IS ORDERED THAT**:

1. Within twenty-four hours of the issuance of this Order, Defendants shall return all print books that were removed because of their viewpoint or content, including the following print books, to the Llano County Libraries:

    a. *Caste: The Origins of Our Discontent* by Isabel Wilkerson;

    b. *Called Themselves the K.K.K: The Birth of an American Terrorist Group* by Susan Campbell Bartoletti;

    c. *Spinning* by Tillie Walden;

    d. *In the Night Kitchen* by Maurice Sendak;

    e. *It's Perfectly Normal: Changing Bodies, Growing Up, Sex and Sexual Health* by Robie Harris;

    f. *My Butt is So Noisy!*, *I Broke My Butt!*, and *I Need a New Butt!* by Dawn McMillan;

    g. *Larry the Farting Leprechaun*, *Gary the Goose and His Gas on the Loose*, *Freddie the Farting Snowman*, and *Harvey the Heart Has Too Many Farts* by Jane Bexley;

    h. *Being Jazz: My Life as a (Transgender) Teen* by Jazz Jennings;

    i. *Shine* by Lauren Myracle;

    j. *Under the Moon: A Catwoman Tale* by Lauren Myracle;

k.   *Gabi, a Girl in Pieces* by Isabel Quintero; and

l.   *Freakboy* by Kristin Elizabeth Clark.

2.   Immediately after returning the books to the Libraries as ordered in (1) above, Defendants shall update all Llano County Library Service's catalogs to reflect that these books are available for checkout.

3.   Defendants are hereby enjoined from removing any books from the Llano County Library Service's catalog for any reason during the pendency of this action.

**SIGNED** on March 30, 2023.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE