**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| Leila Green Little, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 1:22-cv-00424-RP |
| | § | |
| Llano County, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## PLAINTIFFS' OPPOSED MOTION TO COMPEL

Plaintiffs, by and through their undersigned counsel, hereby move to compel Defendants to produce non-party and Defendants' counsel Jonathan Mitchell for a second deposition because he refused to answer questions during his first deposition based on improper claims of attorney-client privilege.

Plaintiffs sought to question Mr. Mitchell concerning his admitted "donation" of certain books to the Llano County Library, which comprise a secret repository of copies of books removed from the Library's shelves (the "Banned Books"), referred to as the "in-house checkout system." The existence of and circumstances surrounding the secret library are highly relevant to issues Defendants have raised in this case: for example, Defendants argue that the purported availability of the Banned Books through the in-house checkout system "eliminate[s] any possibility of 'irreparable harm' or violation of the plaintiffs' First Amendment rights[.]" (ECF No. 117 at 5.) In so doing, Defendants placed the donation and Mr. Mitchell's reasons for donating the books in issue, and waived attorney-client privilege as to communications concerning the donation. Mr. Mitchell should not be permitted to refuse to testify regarding these matters when Defendants have already waived the privilege he asserted. Moreover, the Court already overruled Defendants' privilege objections as to Mr. Mitchell's testimony concerning his donation of the Banned Books.[1] The Court should order Mr. Mitchell to testify on these topics.

Mr. Mitchell also improperly refused to testify regarding library-related legislation he has drafted and is promoting in Texas and elsewhere. Mr. Mitchell's legislation and his

---

[1] On similar grounds, Defendants refused to produce documents reflecting contemporaneous communications between Mr. Mitchell and Defendants regarding Mr. Mitchell's book donation. Plaintiffs separately moved to compel production of documents based on Defendants' waiver of privilege and the Court's prior rulings as to Mr. Mitchell's testimony. For similar reasons, the Court should also compel Mr. Mitchell to reappear for deposition and order that he must provide testimony regarding this central issue.

communications about it reveal antipathy toward libraries, the American Library Association, the Texas Library Association, and LGBTQ rights—topics directly relevant to his motivations in donating the banned books to the secret library. Nonetheless, Mr. Mitchell asserted blanket privilege objections and refused to answer numerous questions about the legislation, his communications about the legislation, whether he actually has an attorney-client relationship with the people involved in those communications, and even whether he has engagement letters with these individuals or has received any compensation for his legal services. This information is relevant to and probative of Mr. Mitchell's motivations in donating physical copies of the Banned Books to the Llano County Library's secret library and is not protected by either attorney-client or legislative privilege. The Court should order Mr. Mitchell to testify regarding these topics.

## BACKGROUND

### A.     Mr. Mitchell Donates the Banned Books to the Secret Library

On July 15, 2022, Defendant Amber Milum, the Director of the Llano County Library System, signed a declaration stating that physical copies of the Banned Books would be donated to the library by "a donor who wishes to remain anonymous . . . for inclusion in Llano County's 'in-house checkout' if those books are not already available for checkout through that in-house checkout system." (ECF No. 49-1 at ¶ 11.) Defendants relied on Defendant Milum's assertion to argue that the "donation of the disputed books to the in-house checkout system . . . eliminate[s] any possibility of 'irreparable harm' or violation of the plaintiffs' First Amendment rights[.]" (ECF No. 117 at 5; *see also* ECF No. 63 at 4, 10, 14 (arguing that Plaintiffs have not been harmed because "each of the disputed books remains available for the plaintiffs to check out[.]").) At the Hearing, Mr. Mitchell made this explicit: "All we're trying to say is this

[donation] arrangement is that you haven't met your burden to show irreparable harm and maybe not even a violation of First Amendment." (Hr'g Tr. Vol. 2 at 85:7-9.)

As Plaintiffs have explained previously, Defendants contrived access to the Banned Books through the secret library *after this lawsuit was filed* through the calculated donation of the Banned Books by Mr. Mitchell. (*E.g.*, ECF No. 59, at 1, 7-10; ECF No. 91, at 1, 20-23.) In ruling on Plaintiffs' Motion for Preliminary Injunction, the Court specifically held that "Defendants' creation of an 'in-house checkout system' comprises precisely the type of posturing the voluntary cessation exception is meant to prevent," because the books were donated by Mr. Mitchell and "not . . . by a neutral benefactor with the intent of making them available to library patrons." (ECF No. 133 ("PI Order") at 12.) The Court further found that Mr. Mitchell's actions relating to the book donation were "clearly designed [for] his clients' litigation position" and "calculated to promote his clients' litigation position." (*Id.*)

### B.    The Court Overrules Defendants' Privilege Objections Regarding Mr. Mitchell's Donation of Banned Books

Defendants initially hid the identity of the anonymous donor. (ECF No. 49-1 ¶ 11 (referring to "a donor who wishes to remain anonymous"); ECF No. 53 ¶ 3.) It was only at the Hearing that Defendants revealed that their counsel, Mr. Mitchell, is the "anonymous donor." Mr. Mitchell objected that this fact was protected by the attorney-client privilege, but the Court repeatedly overruled the objection and permitted Ms. Milum and Mr. Mitchell to testify about the donor. (Hr'g Tr. Vol. 1 at 116:12-117:9, 122:10-22; Hr'g Tr. Vol. 2 at 182:10-13.)

During a sidebar, the Court observed that with respect to the donation of books, Mr. Mitchell was a fact witness:

> My understanding from the evidence reading between the lines, no pun intended, is that Mr. Mitchell donated certain books for the purpose of making them available and then when I heard that, frankly, it concerned me that that would have potentially made you a fact witness. So I can't say that that was surprise that at some point, they would want to ask a little more about the circumstances.

(Hr'g Tr. Vol. 2 at 88:4-11.) The Court then overruled Defendants' counsel's objections on

relevance and attorney-client privilege grounds and permitted Plaintiffs to question Mr. Mitchell.

(*Id*. at 181:11-185:10). Mr. Mitchell admitted that he had donated the books, but he would not

provide a substantive response to a key issue relevant to Defendants' defense—whether he had

proposed making the donations in the first instance.

> Q. (BY MR. BOTKIN) It was you who proposed the books that you donated be
> made available pursuant to the – to the system described in Amber Milum's
> testimony that plaintiffs have described as the secret library and that the
> defendants have characterized as the inhouse checkout system? You would agree–
>
> A. Really hard to answer that without disclosing communications with my client.
> Do you want me to answer?
>
> MR. BOTKIN: This was the resolution that we discussed last time we were up
> here.
>
> THE COURT: I think you should answer the question. Yes, sir.
>
> A. I honestly don't remember who proposed it.

(*Id*. at 184:22-185:9.)

### C.    Mr. Mitchell Refuses to Testify Regarding Multiple Deposition Topics on Privilege Grounds

On March 31, 2023, Plaintiffs took the deposition of Jonathan Mitchell pursuant to

Federal Rule of Civil Procedure 45. At that deposition, Mr. Mitchell invoked the attorney-client

privilege to refuse to answer questions concerning two primary deposition topics: (1) his

communications with Defendants concerning his donation of the Banned Books to the Llano

Public Library; and (2) legislative work regarding libraries that Mr. Mitchell is performing in

Texas and elsewhere.

### 1.    Testimony Concerning Mr. Mitchell's Donation of the Banned Books

At the outset of Mr. Mitchell's deposition, Mr. Mitchell and Dwain Rogers, another

attorney for Defendants, stated a "blanket objection" to the deposition altogether, "on the

grounds of attorney/client privilege[] [and] attorney work product." (Decl. of Ellen Leonida Ex.

1 at 6:14-16, 10:12-16.) Defendants' counsel agreed that the Court's prior rulings at the Hearing overruled their privilege objections to some extent, but stated that they "may have disagreements over just how far he went in overruling our privilege[] objections." (*Id.* at 8:19-21.) Plaintiffs' counsel reiterated Plaintiffs' position that the Court's rulings extended to all questions concerning Mr. Mitchell's donation of the Banned Books, but agreed on the record that any responses provided by Mr. Mitchell would not constitute a broad privilege waiver or prevent Defendants from later asserting privilege. (*Id.* at 7:10-17; 9:23-25.)

Mr. Mitchell provided answers to a limited set of questions concerning his donation of the Banned Books, but shortly after the deposition commenced, he began refusing to answer on privilege grounds. Mr. Mitchell refused to answer questions relating to his donation of the Banned Books, including the following questions:

- "Who was on that call [concerning donation of the Banned Books]?"
- "How many people were on this call?"
- "Were any of the defendants on that call?"
- "Did you take any notes during the conversation where you were first thinking about donating books to the in-house checkout system?"
- "So tell me about that conversation [with Defendants concerning donation of the Banned Books]."
- "How did you learn of the existence of an in-house checkout system in the Llano County library?"
- "Did you speak with [Defendants] about donating books to the in-house checkout system?"
- "Did you speak with [Defendants] on the phone about donating books to the in-house checkout system?"
- "Did you communicat[e] with [Defendants] via E-mail regarding donating books to the in-house checkout system?"
- "Did you communicate with [Defendants] via text message regarding books to the in-house checkout system?"
- "Did you talk to Ms. Milum to confirm whether [the donated Banned Books] had arrived at her residence?"
- "Before donating books to the in-house checkout system, did you make any effort to determine the legality of donating books to the public library?"
- "Did you discuss donating books to the library at any of the Commissioners' Court meetings that you attended?"

- "Why did Amber Milum not say in her declaration about the books being donated to in-house checkout that she got them from you?"
- "Are you aware that Ron Cunningham told Bonnie Wallace that he would shut the library if the plaintiffs won this case?"
- "What is your hourly rate in this case?"

(*Id.* at 16:22-17:21, 18:11-17, 19:24-20:4, 21:8-19, 24:5-32:14, 49:17-25, 52:12-17, 56:23-57-11, 109:24-110:12, 112:5-113-7.)

## 2.    Testimony Concerning Mr. Mitchell's Legislative Work

Mr. Mitchell also—nearly categorically—refused to answer questions relating to legislation he drafted in the Texas state legislature and elsewhere. While claiming this information was protected by attorney-client privilege, Mr. Mitchell refused to answer questions as to the nature of his attorney-client relationships, including how or when the attorney-client relationships were formed, whether he was on retainer, whether he had written engagement letters with these individuals, whether he had received payment for legal services for certain clients, how he keeps track of his clients, and similar questions. (*Id.* at 68:16-72:5, 93:4-20, 95:5-96:2, 106:7-24, 117:7-12.) Mr. Mitchell also refused to testify as to the nature of any legislation he was drafting, or even whether he was or was not drafting legislation at all. (*Id.* at 70:22-71:20; 77:9-80:18, 94:8-15, 107:7-12.) When publicly available documents relating to these issues were placed before him, Mr. Mitchell also refused to answer questions about them on privilege grounds. (*E.g.*, *id.* at 81:20-83:7 & Mitchell Dep. Ex. 112.) Similarly, when documents Defendants themselves produced in discovery were placed before him, Mr. Mitchell refused to answer questions about them on privilege grounds. (*E.g.*, *id.* at 90:2-93:20 & Mitchell Dep. Exs. 102, 103.)

## D.    Plaintiffs' Meet and Confer Attempts

On April 14, 2023, Plaintiffs e-mailed Defendants' counsel, including Mr. Mitchell, contesting Mr. Mitchell's refusal to answer questions relating to certain deposition topics on the

basis of attorney-client privilege and requesting confirmation as to whether Defendants would oppose this Motion. (Leonida Decl. Ex. 2.) Mr. Mitchell responded the same day informing Plaintiffs' counsel that Defendants would oppose it. (*Id.*)

## ARGUMENT

### I. LEGAL STANDARD

Under Federal Rule of Civil Procedure 30(a)(2)(A)(ii), "[a] party must obtain leave of court, and *the court must grant leave to the extent consistent with Rule 26(b)(1) and (2)*: (A) if the parties have not stipulated to the deposition and: . . . (ii) the deponent has already been deposed in the case" (emphasis added). Rule 26(b)(1) sets out the broad scope of discovery available to parties litigating in federal court, permitting:

> discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Consistent with Rule 26's broad scope of discovery, second depositions are routinely ordered in Texas federal courts when additional deposition testimony is needed and plaintiffs were previously unable to obtain that testimony. *E.g.*, *Cornejo v. EMJB, Inc.*, No. SA-19-CV-01265-ESC, 2021 WL 3134263, at *1 (W.D. Tex. July 23, 2021) (ordering second deposition of defendant on limited issue of newly produced documents); *Burns v. Goodman*, 3:99-CV-00313-L, 2001 WL 498231, at *1 (N.D. Tex. May 8, 2001), *aff'd*, 31 F. App'x 835 (5th Cir. 2002) (ordering "that a second deposition be held during which Goodman would respond to all relevant questions").

## II.   PLAINTIFFS ARE ENTITLED TO ADDITIONAL DEPOSITION TESTIMONY FROM MR. MITCHELL

### A.   Mr. Mitchell Should Be Compelled to Testify as to the Creation of the In-House Checkout System and His Communications Regarding the Same

Mr. Mitchell's refusal to testify regarding the circumstances and communications surrounding his donation of the Banned Books on privilege grounds is improper for two reasons. First, as Plaintiffs have previously explained, Defendants put those circumstances and communications in issue in this case by relying on them to support their central defenses and arguments. It would be inequitable to permit them to rely on the existence of the secret library—which was engineered by Defendants' counsel to further Defendants' litigation positions, and stocked by Mr. Mitchell himself—"as both a sword and a shield" in this case. *Flashmark Techs. LLC v. GTECH Corp.*, No. 2:06-CV-205, 2007 WL 9724333, at *3 (E.D. Tex. Aug. 1, 2007). Yet Mr. Mitchell's evasive and obstructive answers during his deposition use the attorney-client privilege as just such an improper "shield."

Additionally, the Court has already overruled Defendants' privilege objections regarding Mr. Mitchell's donation of the Banned Books. (Hr'g Tr. Vol. 2 at 184:22-185:9.) The Court's prior rulings included privilege objections to a question that Mr. Mitchell himself characterized as calling for testimony that would likely require "disclosing communications with [his] client"; the Court squarely ruled that Mr. Mitchell must answer the question anyway. (*Id.*) This ruling should—and does—extend to a number of the questions that Mr. Mitchell refused to answer during his first deposition.

For example, questions about the conversation during which the idea of creating the secret library was proposed are plainly relevant to the genesis of and motivations behind its creation. As the Court has observed, this type of information is highly relevant to the good faith—or lack thereof—of Defendants, a factor that is central to consider when evaluating "voluntary governmental cessation" of wrongful conduct. (PI Order at 11 (citations omitted).) So, too, are the answers to questions relating to the research or preparation undertaken by Mr. Mitchell and Defendants in anticipation of his donation of the Banned Books, or Defendants'

strategy of closing the library after they were ordered to make the Banned Books available in the general catalog as opposed to only in the secret library. This information is critically relevant to Defendants' motivation and intent, and Mr. Mitchell should be ordered to testify on these topics.

**B.     Mr. Mitchell Should Be Compelled to Testify as to the Nature of His Legislative Work and Related Topics**

Mr. Mitchell's categorical refusal to answer questions on legislative work he is doing is also improper. First, the nature of Mr. Mitchell's work and the characteristics of the relationships he has with individuals about legislation he drafts is not privileged information. Texas Rule of Evidence 503(a)(1)(B) extends the attorney-client privilege only to communications made to an attorney "with a view to obtaining professional legal services" from that attorney. Information about his engagement, including the existence or contents of an engagement letter or the fees Mr. Mitchell is receiving, are not communications made for such a purpose, but simply incidental to the attorney-client relationships he purportedly has. *E.g.*, *Duval Cnty. Ranch Co. v. Alamo Lumber Co.*, 663 S.W.2d 627, 634 (Tex. App.—Amarillo 1983, writ ref. n.r.e.) ("[T]he attorney-client privilege does not encompass such nonconfidential matters as the terms and conditions of an attorney's employment, the purpose for which an attorney has been engaged, or any of the other external trappings of the relationship between the parties.").

Additionally, "[f]or a communication to be privileged, it must appear that the communication was made by a client seeking legal advice from a lawyer in her capacity as such." *State v. Martinez*, 116 S.W.3d 385, 393 (Tex. App.—El Paso 2003, no pet.). "[T]he privilege does not apply if the attorney is acting in a capacity other than that of an attorney." *In re Texas Farmers Ins. Exch.*, 990 S.W.2d 337, 340 (Tex. App.—Texarkana 1999, reh'g overruled). Texas courts have further ruled that the elements of attorney-client privilege should be "narrowly construed." *Duval Cnty. Ranch Co.*, 663 S.W.2d at 634. The legislative work

performed by Mr. Mitchell is outside the scope of communications that would be protected by the attorney-client privilege under these principles. His outright refusal to answer any of Plaintiffs' questions on this point—even questions as to whether he is drafting legislation at all—is a plainly improper assertion of attorney-client privilege.[2] This is particularly true with respect to the deposition exhibits Mr. Mitchell outright refused to discuss (Mitchell Dep. Exs. 102, 103, 112), none of which have been held in confidence or which "indicate the client's desire for confidence and secrecy," *Martinez*, 116 S.W.3d at 393. No basis exists for Mr. Mitchell to assert attorney-client privilege in response to Plaintiffs' questions on these topics or documents. He should be compelled to testify on these topics, too.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion, order Defendants to produce non-party and Defendants' counsel Jonathan Mitchell for a second deposition, and order Mr. Mitchell to fully respond to all relevant questions, including questions concerning information over which Defendants have previously improperly asserted the attorney-client privilege.

Dated: April 14, 2023                    Respectfully submitted,

                                         /s/ *Ellen Leonida*
                                         Ellen V. Leonida (CA Bar No. 184194)
                                         Matthew Borden (CA Bar No. 214323)
                                         J. Noah Hagey (CA Bar No. 262331)
                                         Max Bernstein (NY Bar No. 5609037)
                                         Ellis E. Herington (CA Bar No. 343085)

---

[2] To the extent Mr. Mitchell will attempt to claim a legislative privilege over this information, Texas does not recognize a legislative privilege for private citizens or non-legislative local officials discussing potential legislation. Only legislators speaking in their official capacity are afforded that privilege, as derived from the federal and state Speech and Debate Clauses. *Cunningham v. Chapel Hill, ISD*, 438 F. Supp. 2d 718, 722 (E.D. Tex. 2006); *Clear Lake City Water Auth. v. Salazar*, 781 S.W.2d 347, 349-50 (Tex. App.—Houston [14th Dist.] 1989, mandamus overruled).

**BraunHagey & Borden LLP**
351 California Street, 10th Floor
San Francisco, CA 94104
Tel:  415-599-0210
Fax: 415-276-1808
leonida@braunhagey.com
borden@braunhagey.com
hagey@braunhagey.com
bernstein@braunhagey.com
herington@braunhagey.com

Ryan A. Botkin (TX Bar No. 00793366)
Katherine P. Chiarello (TX Bar No. 24006994)
María Amelia Calaf (TX Bar No. 24081915)
Kayna Stavast Levy (TX Bar No. 24079388)
**Wittliff | Cutter PLLC**
1209 Nueces Street
Austin, Texas 78701
Tel: 512-960-4730
Fax: 512-960-4869
ryan@wittliffcutter.com
katherine@wittliffcutter.com
mac@wittliffcutter.com
kayna@wittliffcutter.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2023, a true and correct copy of the foregoing document was served on all counsel of record who have appeared in this case using the Court's CM/ECF system as a Filing User.

*/s/ Ellen Leonida*
Ellen V. Leonida
