IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| Leila Green Little, *et al.*, | § § § |
| Plaintiffs, | § § |
| v. | §  Civil Action No. 1:22-cv-00424-RP |
| Llano County, *et al.*, | § § § |
| Defendants. | § § § |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION FOR STAY PENDING APPEAL**

  Plaintiffs Leila Green Little, Jeanne Puryear, Kathy Kennedy, Rebecca Jones, Richard Day, Cynthia Waring, and Diane Moster ("Plaintiffs") respectfully submit their response in opposition to Defendants' Motion For Stay Pending Appeal (the "Motion," ECF No. 146).

# **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 2

I.  DEFENDANTS ARE UNLIKELY TO SUCCEED ON THE MERITS .......................... 2

    A.  The Court Correctly Found that Defendants Engaged in Impermissible Viewpoint and Content-Based Discrimination ............................................................. 3

    B.  The Court's Factual Findings Show Defendants' Conduct Violated the First Amendment Under Binding Supreme Court and Fifth Circuit Precedent .............. 5

        1.  The Court's factual findings of impermissible discrimination trigger strict scrutiny of Defendants' book removal decisions ......................................... 5

        2.  Removing materials from public libraries based on viewpoint and content discrimination violates the First Amendment ............................................. 6

    C.  The Court Properly Determined that Defendants' Voluntary Cessation Does Not Obviate Plaintiffs' First Amendment Claims ........................................................... 8

    D.  The Context of the Court's Order Clearly Establishes Its Reasonable Scope ........ 8

II.  DEFENDANTS HAVE NOT SUFFERED AND WILL NOT SUFFER ANY INJURY FROM THE PRELIMINARY INJUNCTION ......................................... 9

III.  PLAINTIFFS WILL SUFFER AN IRREPARABLE DEPRIVATION OF THEIR FIRST AMENDMENT RIGHTS IF A STAY IS GRANTED ............................ 10

IV.  THE PUBLIC INTEREST WEIGHS HEAVILY TOWARDS KEEPING AN INJUNCTION THAT PROTECTS FIRST AMENDMENT FREEDOMS .................................................................................................................. 11

CONCLUSION ..................................................................................................................... 12

CERTIFICATE OF SERVICE ............................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**                      **Page(s)**

*Barber v. Bryant*,
   833 F.3d 510 (5th Cir. 2016) ................................................................................................. 2

*Board of Education v. Pico*,
   457 U.S. 853 (1982) ............................................................................................................ 6, 7

*Bell v. Itawamba Cnty. Sch. Bd.*,
   799 F.3d 379 (5th Cir. 2015) ................................................................................................. 6

*Campbell v. St. Tammany Parish School Board*,
   64 F.3d 184 (5th Cir. 1995) ............................................................................................... 6, 7

*Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*,
   704 F.3d 413 (5th Cir. 2013) ................................................................................................. 8

*Hilton v. Braunskill*,
   481 U.S. 770 (1987) ............................................................................................................... 2

*Morse v. Frederick*,
   551 U.S. 393 (2007) ............................................................................................................... 6

*NetChoice, L.L.C. v. Paxton*,
   49 F.4th 439 (5th Cir. 2022) ............................................................................................... 6, 7

*Nken v. Holder*,
   556 U.S. 418 (2009) ............................................................................................................ 1, 2

*Sund v. City of Wichita Falls*,
   121 F. Supp. 2d 530 (N.D. Tex. 2000) ............................................................................... 7, 8

*Texans for Free Enter. v. Texas Ethics Comm'n*,
   732 F.3d 535 (5th Cir. 2013) ............................................................................................... 11

*Texas v. United States*,
   40 F.4th 205 (5th Cir. 2022) .................................................................................................. 2

*United States v. Fluitt*,
   No. 22-30316, 2022 WL 3098734 (5th Cir. Aug. 4, 2022) ................................................. 10

*W. Virginia State Bd. of Educ. v. Barnette*,
   319 U.S. 624 (1943) ............................................................................................................... 7

**Other Authorities**

*Fed. Prac. & Proc. Civ.* § 2949 (3d ed. 2023) ............................................................................ 4

## INTRODUCTION

Defendants' motion to stay the Court's Preliminary Injunction (the "Order," ECF No. 133) should be denied. Defendants cannot meet any of the requirements for a stay as set forth in *Nken v. Holder*, 556 U.S. 418, 433-34 (2009): they cannot show they are likely to succeed on appeal; they suffer no irreparable injury from temporarily putting the Banned Books back in the library catalog; they will cause Plaintiffs irreparable deprivations of their First Amendment rights if they are granted a stay; and their request conflicts with the public interest.[1]

The merits overwhelmingly favor Plaintiffs. The Court issued the Preliminary Injunction after conducting a two-day hearing, reviewing hundreds of documents, evaluating the credibility of numerous witnesses, and considering seven briefs. Defendants' attacks on the Injunction (Mot. at 3, 6-7) ignore the Court's factual determinations and ask the Court to credit post hoc declarations written by Defendants' lawyers, instead of live witness testimony and documents Defendants wrote before this case was filed. Defendants also seek to re-hash legal theories the Court has rejected based on controlling Fifth Circuit and Supreme Court precedent. (Mot. at 3-6.) These arguments fail for the reasons this Court already has given.

The other *Nken* factors similarly weigh against Defendants. Defendants' assertion that complying with the Injunction threatens closure of the libraries (Mot. at 8) has proven untrue; the libraries remain open. Defendants also claim that the Injunction requires them to restore every book they have ever weeded to the shelves. (Mot. at 7.) This theory—which Defendants have made no effort to comply with—misinterprets the Injunction, which is based on the books that Defendants attempted to censor in this case. Now that Defendants have replaced the Banned

---

[1] Plaintiffs understand Defendants seek only a stay of the Court's preliminary injunction, not the ongoing trial proceedings in the District Court. Defendants refer to a "stay of proceedings" once, in the final paragraph of their brief, (Mot. at 9), and context suggests this too refers to the preliminary injunction.

Books, the status quo is that Plaintiffs and the public are free to access books of their choosing. Staying such relief would cause the same irreparable injury to Plaintiffs and harm to the public interest that warranted the Injunction in the first place.

## **ARGUMENT**

"A stay [pending appeal] is an extraordinary remedy." *Texas v. United States*, 40 F.4th 205, 215 (5th Cir. 2022) (quotation omitted) (per curiam) (denying federal agency's request to stay vacatur of agency rule). It is "an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken*, 556 U.S. at 427 (internal citations omitted). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [the court's] discretion." *Id*. at 433–34. In deciding whether to stay a preliminary injunction pending appeal, federal courts consider four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Barber v. Bryant*, 833 F.3d 510, 511 (5th Cir. 2016) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). The first two factors of this standard carry the greatest weight. *Id*. at 511.

## I.     DEFENDANTS ARE UNLIKELY TO SUCCEED ON THE MERITS

Defendants cannot satisfy the requisite "strong showing" of likelihood of success on their appeal. *Nken*, 556 U.S. at 433. None of the infirmities they allege of the Court's Order have merit. First, the Court has already weighed and rejected Defendants' post-hoc explanation for their discriminatory conduct. Second, Defendants cannot point to any legitimate flaws in the Court's legal conclusions. Third, as the Court explained, Defendants' efforts to moot this case

2

through voluntary cessation does not negate Plaintiffs' First Amendment claims. And last, the Court's Order is properly limited in scope.

      **A.**    **The Court Correctly Found that Defendants Engaged in Impermissible Viewpoint and Content-Based Discrimination**

After a two-day evidentiary hearing, the Court found that "Plaintiffs have clearly shown that Defendants' decisions were likely motivated by a desire to limit access to the viewpoints to which Wallace and Wells objected," including views on LGBTQ and racial equity. (Order at 19.) "[T]here is no real question that [Defendant Milum's] targeted review [of the Banned Books] was directly prompted by complaints from patrons and county officials over the content of these titles." (*Id*. at 21; *see generally id.* at 18-21 (collecting record evidence of viewpoint and content-based discrimination motivating weeding).)

Defendants do not challenge the Court's finding that county official Defendants Cunningham and Moss directed Milum to remove the Books based on their own discriminatory views, or the record on which its findings were based. Nor do Defendants identify any substantial evidence to the contrary. Defendants point only to Milum's contradictory and self-serving declarations, then demand that the Court "explain why it thinks Milum is lying." (Mot. at 7.) But the Court already explained its basis for rejecting Milum's narrative as a "pretextual" and "post-hoc justification." (Order at 20.) The Injunction identifies the robust evidentiary record that contradicts Milum's statements, including: communications from Defendants Wallace and Wells to Defendants Cunningham, Moss, and Milum complaining about the Banned Books as "pornographic filth" and "CRT and LGBTQ books," (Order at 18 (citing emails, call logs, and complaint logs)); communications from Defendants Cunningham and Moss to Milum directing her to remove the Banned Books from the shelves, (*id.* (citing emails and meeting logs)); emails and hearing testimony confirming Milum closed the library to check for "inappropriate books" at

3

the direction of the Commissioners Court (*id.*); and testimony from Milum that "the books that she pulled were books that Wallace, Wells, or the Commissioners identified as 'inappropriate'" (*id.*). The Court was entitled to credit Milum's live testimony, subject to the crucible of cross-examination, over post-hoc declarations written by her lawyer who was, himself, a participant in the underlying book banning. *See* 11A Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 2949 (3d ed. 2023) ("When the outcome of a Rule 65(a) application depends on resolving a factual conflict by assessing the credibility of opposing witnesses, it seems desirable to require that the determination be made on the basis of their demeanor during direct and cross-examination, rather than on the respective plausibility of their affidavits."). Further, the Court underscored the additional direct and circumstantial evidence showing Defendants' dislike of the Banned Books, including that the Banned Books did not meet the standards for weeding but were removed anyway. (Order at 18-21.)

Each of these findings, whether taken individually or together, provides overwhelming support for the Court's determination that Milum acted to enforce Defendants' unconstitutional discrimination against books they disliked. Indeed, Defendants' attacks on the Court's factual findings are particularly inappropriate in light of their repeated discovery violations, including withholding critical discovery until after the Preliminary Injunction hearing.[2] (*See generally* Pls.' Mot. Compel Disc. Responses and for Sanctions (ECF No. 114).)

---

[2] In a March 28, 2022 message, for example, Defendant Moss states "I gripped [sic] at Amber and Tina yesterday at the library and let them know that anything the commissioners court decide to do that's the way it is and that[']s what they need to do and go by or they should probably find a job they were happy at." (Decl. of Ellen Leonida ("Leonida Decl.") Ex. 1.) This evidence, **which was not produced until March 16, 2023**, directly contradicts Moss's hearing testimony, including that he did not instruct Milum to remove the Books and "wanted to make sure that she understood I wasn't her boss." (Hr'g Tr. Vol. 2 at 165:16-17.)

### B. The Court's Factual Findings Show Defendants' Conduct Violated the First Amendment Under Binding Supreme Court and Fifth Circuit Precedent

Defendants' attacks on the Court's legal conclusions fail for two reasons: first, the Court correctly applied strict scrutiny to its finding that Defendants were motivated by improper viewpoint and content-based discrimination; and second, the Court correctly identified binding precedent that does not allow Defendants to remove books based on that discrimination simply because they operate a public library.

#### 1. The Court's factual findings of impermissible discrimination trigger strict scrutiny of Defendants' book removal decisions

Defendants argue that the Court ruled that "'viewpoint discrimination' is categorically forbidden in a public library's weeding decisions, and that any content-based weeding decision must satisfy the strict-scrutiny standard." (Mot. at 3.) The Court's actual ruling was substantially narrower, and addressed only whether the evidence of Defendants' specific discriminatory motivations was sufficient to impose strict scrutiny.

As the Court correctly determined, Plaintiffs made "a clear showing that the substantial motivation for Defendants['] actions appears to be discrimination," which triggers strict scrutiny. (Order at 22 (internal quotation marks omitted).) On review of the record, the Court found, *inter alia*, that Defendants' motivations in instructing Milum to weed the Banned Books bypassed permissible "cull[ing] and curat[ing]," (Order at 21), and crossed into prohibited viewpoint and content-based discrimination (*see id.* at 18 ("Here, the evidence shows Defendants targeted and removed books, including well-regarded, prize-winning books, based on complaints that the books were inappropriate."), 20 ("[E]ach of the books in question were slated for review (and ultimately removal) precisely because certain patrons and county officials complained that their contents were objectionable.")). As the Court found, Defendants' censorship of books they found "inappropriate" or "objectionable" is a direct violation of the First Amendment. "[S]peech that

5

'might be perceived as offensive to some . . . is at the core of what the First Amendment is designed to protect.'" *Bell v. Itawamba Cnty. Sch. Bd.*, 799 F.3d 379, 402 (5th Cir. 2015) (citing *Morse v. Frederick*, 551 U.S. 393, 403, 409 (2007)). Therefore the Court's application of strict scrutiny was appropriate.

### 2. Removing materials from public libraries based on viewpoint and content discrimination violates the First Amendment

Defendants challenge the Court's determination that discriminatory content removal gives rise to a First Amendment violation under *Board of Education v. Pico*, 457 U.S. 853 (1982) (plurality opinion) and *Campbell v. St. Tammany Parish School Board*, 64 F.3d 184 (5th Cir. 1995). Their disagreements with the Court's analysis are unavailing.

Both the Court and the parties have repeatedly addressed the applicability of *Pico* and *Campbell* to book removal. As the Court rightly found, *Pico* holds that "the First Amendment prohibits the removal of books from libraries based on either viewpoint or content discrimination," (Order at 17 (citing *Pico*, 457 U.S. at 871)), and *Campbell* similarly holds that "the 'decision to remove [books] must withstand greater scrutiny within the context of the First Amendment than would a decision involving a curricular matter'" (Order at 19 (quoting *Campbell*, 64 F.3d at 189-90)). "To hold otherwise" that removal is not subject to heightened scrutiny "would be to entirely disregard *Campbell*." (Order at 20.) *See Pico*, 457 U.S. at 871-72 ("[O]ur holding today affects only the discretion to *remove* books . . . simply because they dislike the ideas contained in those books . . . ." (emphasis in original)).

The Fifth Circuit recently reiterated this principle in an analogous context. In *NetChoice, L.L.C. v. Paxton*, 49 F.4th 439 (5th Cir. 2022), the Circuit Court considered the validity of a Texas law that would prohibit social media platforms from removing posted user content that they dislike. The social media companies argued that they have equal editorial discretion to

6

select what content may be made available and to remove content after it has already been posted. The Fifth Circuit rejected this argument, stating there is no authority "even remotely suggesting that *ex post* censorship constitutes editorial discretion akin to *ex ante* selection." *Id.* at 465. It held that removal of content already made accessible to the public was subject to greater scrutiny than the editorial "selection and presentation of content *before* that content is . . . disseminated." *Id.* at 464 (emphasis in original).

Defendants do not try to disprove that discriminatory motivations for removing books in public libraries face strict scrutiny. Instead, they argue that *Pico* and *Campbell* hold that schools may engage in discriminatory book removal. (Mot. at 3-6.) This is inapposite. Public schools, unlike public libraries, are recognized "vehicles for inculcating fundamental values," *Pico*, 457 U.S. at 864. Federal courts therefore permit school officials to remove books they determine to be "pervasively vulgar" or lacking "educational suitability." *Id.* at 871. But even then, "local school boards may not remove books from school library shelves simply because they dislike the ideas contained in those books and seek by their removal to 'prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion.'" *Pico*, 457 U.S. at 871 (*quoting W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943)); *see also Campbell*, 64 F.3d at 189 (*Pico's* most narrow concurrence "does not reject the plurality's assessment of the constitutional limitations on school officials' discretion to remove books from a school library").

These limited exceptions for school officials—none of which would permit Defendants' removal of the censored books here—do not restrict public access to the "freewheeling inquiry" facilitated by public libraries. *Sund v. City of Wichita Falls*, 121 F. Supp. 2d 530, 548 (N.D. Tex. 2000). "The [First Amendment] principles set forth in *Pico*—a school library case—have even greater force when applied to public libraries." *Id.* Strict scrutiny therefore applies.

### C. The Court Properly Determined that Defendants' Voluntary Cessation Does Not Obviate Plaintiffs' First Amendment Claims

As the Court has already found, Defendants cannot moot the need for injunctive relief by having their lawyer purchase the banned books and then donate them to the library to be kept in a secret, although theoretically accessible, location. (Order at 22-23.) The Court determined that "Defendants' creation of an 'in-house checkout system' comprises precisely the type of posturing the voluntary cessation exception is meant to prevent." (Order at 12); *see also Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 425 (5th Cir. 2013) (defendants cannot "evade sanction by predictable protestations of repentance and reform after a lawsuit is filed"). Allowing that system to resume would place "a significant burden on [Plaintiffs'] ability to gain access to those books." *Sund*, 121 F. Supp. 2d at 534. Under the secret library system, Plaintiffs have no reliable way of knowing whether and when the Books are actually available. Instead, they must repeatedly visit the library and request the status of any Book they wish to check out. Plaintiffs thus would face a heightened burden on their ability to access these Books solely as a result of Defendants' impermissible discrimination.

Defendants also acknowledge that Plaintiffs "remain 'injured' by the continued absence of those books from the library shelves." (Mot. at 2.) While they inexplicably characterize denying Plaintiffs' constitutional rights as a mere "trifle," (Mot. at 2), the Court's Order found that Defendants' original book removal and their secret library system are both intended to obstruct Plaintiffs' exercise of their fundamental right to access information. (Order at 13.) This is a First Amendment injury.

### D. The Context of the Court's Order Clearly Establishes Its Reasonable Scope

Defendants posit an overbroad interpretation of Court's Order to restore to the library system all "books that were removed because of their viewpoint or content." (Mot. at 7-9.) The

Injunction, however, only includes those books that Defendants removed or ordered removed based on their viewpoint and content-based discrimination since the initiation of the events that gave rise to Plaintiffs' claims. Defendants' interpretation, that the Court has ordered them to locate and interrogate every librarian in the history of the Llano County Library System for the identity of all books ever weeded, strains credulity, particularly within the circumstances of this litigation, and Defendants offer no evidence with their moving papers that they have made any effort to comply with this contrived interpretation of the Court's Injunction.

None of the alleged defects in the Court's reasoning pass muster. As Defendants have not met their burden to show likelihood of success on appeal, this factor counsels in favor of denial.

## II.  DEFENDANTS HAVE NOT SUFFERED AND WILL NOT SUFFER ANY INJURY FROM THE PRELIMINARY INJUNCTION

Defendants have not identified any irreparable injury they would suffer absent a stay. Their first alleged injury—closing the Llano County Library System—has been eliminated by the people of Llano County. On April 13, 2023, after holding a public hearing for members of the Llano County community, the Llano County Commissioners' Court voted to remove the proposed closure of the library system from consideration.[3] Even if the Commissioners' Court had closed the library system, it would not be an injury to Defendants as much as a circumstance of their own making. Defendants previously planned to close the Llano County Library System in the event of an injunction, not from fear of "expos[ing] its librarians and county officials to lawsuits," (Mot. at 8), but to continue their unconstitutional censorship. (*See* Leonida Decl. Ex. 2 (Feb. 2, 2023 text message from Defendant Wallace to M. Goodson stating "Llano's County

---

[3] *See Commissioner Court Minutes*, Llano County Texas, Apr. 13, 2023, https://www.co.llano.tx.us/upload/page/0961/2023%20Minutes/11LCCC%20SPECIAL%20CALLED%20MINUTES%2004-13-2023.pdf

leaders are amazing!! The judge had said, if we lose the injunction, he will CLOSE the library because he WILL NOT put the porn back into the kid's section!").)

Defendants' second alleged harm, that librarians will not be able to remove books if they are damaged, is neither concrete nor an actual injury. "Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant [for a stay]." *United States v. Fluitt*, No. 22-30316, 2022 WL 3098734, at *2 (5th Cir. Aug. 4, 2022).

Last, Defendants argue that the Court's Order asks them to complete an impossible task. *See supra* Section I.D. That is certainly the case under Defendants' interpretation of the Order, but that is not what the Order requires. *See id.* Defendants appear to know this too, as they have made the 17 Banned Books available as part of the library catalog since entry of the Order.[4] Defendants have suffered and will suffer no harm from following the Order.

Because Defendants cannot show any harm to them under the injunction, this factor weighs in favor of denial as well.

### III. PLAINTIFFS WILL SUFFER AN IRREPARABLE DEPRIVATION OF THEIR FIRST AMENDMENT RIGHTS IF A STAY IS GRANTED

A stay of the injunction would allow Defendants to inflict irreparable harm on Plaintiffs. The preliminary injunction proceedings and later events have made clear that Defendants intend to keep the Banned Books from Plaintiffs' access however possible, despite Defendants' protestations to the contrary. Defendants have engaged in a range of tactics to slow Plaintiffs' ability to vindicate their rights, including (i) delaying the production of crucial discovery, in some instances producing text messages of deponents during the deponent's testimony, (ii) failing to respond at all to numerous discovery requests, (iii) withholding information (*e.g.*, the

---

[4] *See* Llano County Library System Catalog, https://llano.biblionix.com/catalog/, in which the Banned Books now appear.

Yahoo! Email accounts used by Llano County librarians), and (iv) refusing to produce witnesses for deposition after failing to object to their deposition notices. (*See generally* Pls.' Mot. Extend Discovery, ECF No. 136.)

Defendants' "in-house checkout system" is just one more example of their efforts to deny Plaintiffs legal recourse. But as the Court determined, "the library system's in-house checkout system [does not] mitigate the constitutional harm Plaintiffs are suffering," (Order at 22), as it is merely a form of voluntary cessation. Further, it would impermissibly burden Plaintiffs' access to information. *See supra* Section I.C.

Finally, upon entry of the Preliminary Injunction, Defendants initiated planned proceedings to close the Llano Library System rather than comply with the Court's Order. (*See* Leonida Decl. Ex. 2.) These efforts show Defendants' true intent to keep the Banned Books inaccessible to Plaintiffs and the Llano County community and to perpetuate deprivation of Plaintiffs' First Amendment rights. This immediate and irreparable harm to Plaintiffs weighs towards denying the stay.

**IV.    THE PUBLIC INTEREST WEIGHS HEAVILY TOWARDS KEEPING AN INJUNCTION THAT PROTECTS FIRST AMENDMENT FREEDOMS**

As the Court found, "injunctions protecting First Amendment freedoms are always in the public interest." (Order at 24 (quoting *Texans for Free Enter. v. Texas Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013)).) Defendants offer no countervailing interest that would be served by a stay. There is no risk of library closure—the Llano County Commissioners' Court has already rejected that proposal. Contrary to Defendants' arguments (Mot. at 9), there also is no public interest in using a stay to deter other library patrons from enforcing their First Amendment rights against similar censorship elsewhere. Such an effect would injure, not protect, the public.

Because a stay would not serve any cognizable public interest, this factor weighs entirely in favor of denial.

## CONCLUSION

For the reasons stated above, the Court should deny Defendants' Motion.

Dated: April 25, 2023                    Respectfully submitted,

/s/ *Ellen Leonida*
Ellen V. Leonida (CA Bar No. 184194)
Matthew Borden (CA Bar No. 214323
J. Noah Hagey (CA Bar No. 262331)
Max Bernstein (NY Bar No. 5609037)
Ellis E. Herington (CA Bar No. 343085)
Marissa R. Benavides (NY Bar. No. 5796891)
**BraunHagey & Borden LLP**
351 California Street, 10th Floor
San Francisco, CA 94104
Tel:  415-599-0210
Fax: 415-276-1808
leonida@braunhagey.com
borden@braunhagey.com
hagey@braunhagey.com
bernstein@braunhagey.com
herington@braunhagey.com
benavides@braunhagey.com

Ryan A. Botkin (TX Bar No. 00793366)
Katherine P. Chiarello (TX Bar No. 24006994)
María Amelia Calaf (TX Bar No. 24081915)
Kayna Stavast Levy (TX Bar No. 24079388)
**Wittliff | Cutter PLLC**
1209 Nueces Street
Austin, Texas 78701
Tel: 512-960-4730
Fax: 512-960-4869
ryan@wittliffcutter.com
katherine@wittliffcutter.com
mac@wittliffcutter.com
kayna@wittliffcutter.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

    I hereby certify that on April 25, 2023, a true and correct copy of the foregoing document was served on all counsel of record who have appeared in this case using the Court's CM/ECF system as a Filing User.

                                                 */s/ Ellen Leonida*
                                                 Ellen V. Leonida