IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| Leila Green Little, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 1:22-cv-00424-RP |
| Llano County, *et al.*, | § § § | |
| Defendants. | § § § | |

**PLAINTIFFS' REPLY**
**IN SUPPORT OF THEIR MOTION TO COMPEL**

Plaintiffs respectfully submit this Reply in further support of their Motion to Compel Defendants to produce Jonathan Mitchell to provide deposition testimony (ECF No. 151 ("Mot."), and in response to Defendants' Opposition thereto, (ECF No. 161 ("Opp.")).

## ARGUMENT

In April 2022, Plaintiffs sued Defendants for unlawfully removing books from the Llano County Library. Three months later, Defendants' counsel, Mr. Mitchell, donated those same books back to the Library in an attempt to "eliminate" Plaintiffs' First Amendment claim. (ECF No. 117 at 5.) Mr. Mitchell's donation goes to the very heart of his clients' defenses, yet Defendants now seek to block all discovery into the facts and circumstances regarding that donation under the guise of the attorney-client privilege. Their efforts must be rebuked. Once Mr. Mitchell inserted himself as a fact witness in this case, he and Defendants waived any claim of attorney-client privilege regarding his donation and the facts and motivations underlying it. That is why the Court permitted Plaintiffs to question Mr. Mitchell as a witness at the preliminary injunction hearing and take his deposition as the "attorney for Defendants and "anonymous donor"' of Banned Books to Llano County Library System." (Hr'g Tr. Vol. 1 at 116:12-117:9, 122:10-22; Hr'g Tr. Vol. 2 at 182:10-13; ECF No. 128.)[1] Defendants cannot rely on their attorney's conduct to "eliminate" Plaintiffs' claim, but then prevent any discovery into the issue. Accordingly, Mr. Mitchell should be compelled to sit for another deposition.

**I.   PLAINTIFFS ARE ENTITLED TO DEPOSE MR. MITCHELL**

As established in Plaintiffs' Motion, once Defendants put Mr. Mitchell's donation of the Banned Books at issue by relying on it to support their defenses, Defendants waived any claim of privilege over communications regarding that donation. (Mot. at 8.) Defendants assert that they

---

[1] Defendants' mischaracterization and attempt to narrow the Court's previous rulings regarding Defendants' assertion of privilege are flatly contradicted by the record in this case. (Opp. at 2-3.)

did not waive the privilege because they did not "reveal[] the contents of any attorney-client communication" regarding the donation. (Opp. at 3.) But this argument miscomprehends the waiver doctrine. Publicly disclosing the contents of privileged communications constitutes a waiver, but it is just one of many ways a party can waive the privilege. *See Doe 1 v. Baylor Univ.*, 320 F.R.D. 430, 440 (W.D. Tex. 2017) (waiver can take many forms and "fairness is the critical consideration when evaluating whether a party has waived the attorney-client privilege").

"The great weight of authority holds that the attorney-client privilege is waived when a litigant places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party." *Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989) (internal quotation marks and alteration omitted); *see Willy v. Admin. Rev. Bd.*, 423 F.3d 483, 497 (5th Cir. 2005) ("[W]hen a party entitled to claim the attorney-client privilege uses confidential information against his adversary (the sword), he implicitly waives its use protectively (the shield) under that privilege.").

Defendants have repeatedly argued that after Mr. Mitchell donated the Banned Books and they were added to the Library's secret in-house checkout system, that "eliminate[d]" Plaintiff's First Amendment claim. (ECF No. 117 at 5; *see* ECF No. 96 at 19 (arguing that Plaintiff's First Amendment claim is "doomed" because of the existence of the in-house checkout program); ECF No. 146 at 1 (arguing that Plaintiffs "are not suffering any violation" of their First Amendment rights because of the in-house checkout program). Defendants are thus using Mr. Mitchell's donation as a sword to defeat Plaintiffs' claim, and they cannot simultaneously use the privilege as a shield and prevent any discovery into the circumstances surrounding the donation. To the extent Defendants argue that only the *existence* of the in-house checkout system is

2

relevant, not the *motivations* behind the creation of the secret lending library, (Opp. at 8-9), the Court already explained that whether the books were "donated by a neutral benefactor with the intent of making them available to library patrons" or to "promote [Defendants'] litigation position" is a legally significant distinction, (ECF No. 133 at 12). Accordingly, Defendants waived the privilege as to communications regarding Mr. Mitchell's donation.

## II.   MR. MITCHELL'S LEGISLATIVE WORK IS NOT PRIVILEGED

In their Motion, Plaintiffs established that the nature of Mr. Mitchell's legislative work and the characteristics of the relationships he has with individuals about legislation he drafts is not privileged information. (Mot. at 9-10.) Defendants admit that "some of [Plaintiffs'] questions" regarding Mr. Mitchell's legislative work did not seek privileged information, yet they *still* assert that Mr. Mitchell was correct to refuse to answer. (Opp. at 7.) Not so. The identity of Mr. Mitchell's purported clients, how and when purported attorney-client relationships were formed, and whether he was paid for his services are not privileged. *See In re Ginther*, 2008 WL 4107487, at *5 (Bankr. S.D. Tex. Aug. 29, 2008) ("Communication between an attorney and client regarding such information as identity of client, terms and conditions of employment, amount of fee, identification of payment by case file name, and the general purpose of the work performed, are not privileged"); *Crum & Forster Specialty Ins. v. Great W. Cas. Co.*, 2016 WL 10459397, at *8 (W.D. Tex. Dec. 28, 2016) ("The Fifth Circuit has long recognized the general rule that matters involving the payment of attorney's fees are not generally privileged." (alterations omitted) (quoting *In re Grand Jury Subpoena*, 913 F.2d 1118, 1123 (5th Cir. 1990)). Accordingly, Mr. Mitchell had no basis to refuse to answer Plaintiffs' questions regarding the characteristics of his relationships with his legislative clients.

Plaintiffs are also entitled to ask about all non-privileged communications Mr. Mitchell had regarding his efforts at keeping certain books out of public and school libraries. Defendants'

3

contention that those communications are categorically privileged is wrong. It is Defendants burden to establish that the communications are privileged, *see EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017), which they have not even attempted to do. Defendants point to two examples of purportedly privileged communications between Mr. Mitchell and his "clients," but those examples prove Plaintiffs' point. Exhibits 102 and 103 are emails between Mr. Mitchell, Defendant Bonnie Wallace, and third-party Gay Patek. (ECF No. 151-2 at 57-62.) Gay Patek is not a Defendant in this case, and communications between an attorney and two clients involved in two different matters are not privileged.[2] By inviting Patek—a third party— into their communications, Mr. Mitchell and Defendant Wallace waived any privilege over them. *See, e.g.*, *Jordan v. Ct. of Appeals for Fourth Supreme Jud. Dist.*, 701 S.W.2d 644, 649 (Tex. 1985) ("It is the rule in Texas that the protections afforded by a privilege are waived by voluntary disclosure of the privileged documents.").

      Finally, Plaintiffs established that Mr. Mitchell's legislative work is not covered by any privilege, yet Mr. Mitchell categorically refused to testify as to the nature of any legislation he was drafting, or even whether he was or was not drafting legislation at all. (Mot. at 6.) Defendants argue that *any* legislation Mr. Mitchell drafts is protected by the attorney-client privilege, but they have fallen far short of carrying their burden of establishing that the privilege applies. (Opp. at 5-7.) Mr. Mitchell refused to even identify his clients, which is of course the threshold question the Court must consider when determining whether privilege applies. On this score, Mr. Mitchell has come nowhere close to proving that the privilege shields him from

---

[2] Neither the "joint client" nor "common interest privilege" apply. The "joint client" doctrine applies when "the same attorney simultaneously represents two or more clients on the *same matter*," and the "common interest rules apply when there has been sharing of information between or among *separately represented* parties," neither of which applies to Wallace and Patek. *In re XL Specialty Ins. Co.*, 373 S.W.3d 46, 50 (Tex. 2012).

answering questions regarding his legislative work, *see BDO*, 876 F.3d at 695, and he should be compelled to answer.[3]

## III. DEFENDANTS' PROPORTIONALITY OBJECTIONS ARE IMPROPER

Defendants' final argument is that Mr. Mitchell should not be forced to sit for another deposition because the testimony Plaintiffs seek is not relevant or proportional to the needs of the case. (Opp. at 7-9.) The testimony Plaintiffs seek is relevant and proportional, (*see* Mot. at 8-10), but in any event, a witness cannot improperly refuse to answer questions during a deposition and then seek to be rewarded for that misconduct by arguing that a second deposition would be "unreasonable and disproportional." *League of United Latin Am. Citizens v. Abbott*, 342 F.R.D. 227, 237 (W.D. Tex. 2022). Courts routinely reject this gamesmanship. *See, e.g.*, *id.* (rejecting argument Defendants make here, and explaining deponent "ran the risk of this prolonged dispute when he asserted attorney-client privilege to question after question").

## CONCLUSION

For the foregoing reasons and those discussed in Plaintiffs' Motion, Plaintiffs respectfully request that the Court (1) grant the Motion, (2) order Defendants to produce Defendant Mitchell for his deposition within ten days of the date of the order granting the Motion, and (3) order Defendant Mitchell and his counsel to pay the reasonable expenses, including attorney's fees, caused by Defendant Moss's failure to attend his deposition.[4]

---

[3] Defendants argue that Exhibit 112—a draft ordinance written by Mr. Mitchell—is privileged because Plaintiffs have not "show[n] that Mr. Mitchell or his clients waived the attorney-client privilege by voluntarily disclosing this document." (Opp. at 6.) Not only was the draft ordinance released by the City of Abilene in response to a public records request, (Ex. A Declaration of Ellen Leonida Ex. 1), but it is *Defendants'* burden to show that the document is protected by the privilege, *see BDO*, 876 F.3d at 695, which Defendants have not even attempted to do.

[4] Plaintiffs do not object to Defendants' request that any order granting the motion define the scope of permissible questions. To that end, Plaintiffs have attached a new [Proposed] Order, more clearly defining the scope of Mr. Mitchell's second deposition.

5

Dated: May 5, 2023                     Respectfully submitted,

/s/ *Ellen Leonida*
Ellen V. Leonida (CA Bar No. 184194)
Matthew Borden (CA Bar No. 214323)
J. Noah Hagey (CA Bar No. 262331)
Max Bernstein (NY Bar No. 5609037)
Ellis E. Herington (CA Bar No. 343085)
**BraunHagey & Borden LLP**
351 California Street, 10th Floor
San Francisco, CA 94104
Tel:  415-599-0210
Fax: 415-276-1808
leonida@braunhagey.com
borden@braunhagey.com
hagey@braunhagey.com
bernstein@braunhagey.com
herington@braunhagey.com

Ryan A. Botkin (TX Bar No. 00793366)
Katherine P. Chiarello (TX Bar No. 24006994)
María Amelia Calaf (TX Bar No. 24081915)
Kayna Stavast Levy (TX Bar No. 24079388)
**Wittliff | Cutter PLLC**
1209 Nueces Street
Austin, Texas 78701
Tel: 512-960-4730
Fax: 512-960-4869
ryan@wittliffcutter.com
katherine@wittliffcutter.com
mac@wittliffcutter.com
kayna@wittliffcutter.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

    I hereby certify that on May 5, 2023, a true and correct copy of the foregoing document was served on all counsel of record who have appeared in this case using the Court's CM/ECF system as a Filing User.

                                                */s/ Ellen Leonida*
                                                Ellen V. Leonida